

March 21, 2024

The Honorable Gene E.K. Pratter
United States District Court Judge
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

      Re:  *In re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAS) Prods. Liab. Litig.*
            *MDL No. 3094*

Dear Judge Pratter,

      Pursuant to Your Honor's instruction at the March 14, 2024 Conference, I am respectfully applying for an executive or steering committee position in this MDL. A copy of my resume is attached hereto.

      I am thankful that the Court has allowed individual attorneys to submit their applications for meaningful positions in this important litigation. *See Guidelines and Best Practices for Large and Mass-Tort MDLs*, DUKE LAW SCHOOL, at 46 (Dec. 19, 2014) ("Some courts still prefer that counsel endeavor to organize a leadership structure themselves . . . [b]ut most courts now insist on a competitive process and require individual applications."). I believe that while an agreed upon leadership structure that incorporates the involvement of all applicants may be suitable for certain litigations, it is also important to have transparency through an open application process.

      I am a young lawyer. Younger than many other—maybe all other—applicants. In the years that I have been practicing, I have been able to meaningfully participate in high level product liability ligation against large corporations and have successfully represented my clients in all stages of litigation. I will bring youthful exuberance to this case along with a level of experience that I do not believe any other applicant with my background can match.

      I have practiced law at Schlesinger Law Offices, P.A. since becoming a lawyer (and even before then as a law clerk). During my time at the Schlesinger Firm, I have practiced almost exclusively in mass tort product liability cases, with a particular focus on defective medical devices and pharmaceutical drugs. I have been involved in every aspect of product liability litigation—from case inception and pleading preparation; to propounding and responding to written discovery; to taking and defending plaintiff, fact, and expert depositions; to the preparation of complex and dispositive motions/responses (e.g., *Daubert* and summary judgment); to examining witnesses in federal and state jury trials across the country, including in cases remanded from various MDLs. *See Shears v. Johnson & Johnson*, No. 1:20-cv-264-IMK (N.D. W. Va.) (pelvic mesh trial wherein I examined the plaintiff and a polymer expert witness and discussed how polypropylene mesh

could degrade in the body and cause pelvic and abdominal injuries); *Benestad v. Johnson & Johnson*, No. 0:20-cv-60496-AHS (S.D. Fla.) (pelvic mesh trial wherein I examined the plaintiff and a treating physician); *Swintelski v. American Medical Systems, Inc.*, No. 20-cv-60410-AMC (S.D. Fla.) (pelvic mesh trial wherein I examined a fact witness); *Moore v. Monsanto Co.*, No. 20SL-CC03678 (Mo. Cir. Ct. 2022) (Roundup herbicide trial wherein I examined multiple fact witnesses); *see also Nicholson v. Biomet Inc.*, No. 3:18-cv-03057-CJW (N.D. Iowa) (metal-on-metal hip trial in which $3.6 Million verdict upheld by the Eighth Circuit Court of Appeals, No. 21-2263, 2022 WL 3642917 (8th Cir. Aug. 24, 2022)); *Bayless v. Boston Scientific & Coloplast*, No. 6:20-cv-831-RBD (M.D. Fla.) (pelvic mesh trial). In addition to my trial experience, I have also taken and defended both expert and treating physician depositions in medical device product liability cases.

I am backed by a dedicated team of lawyers who have more than one hundred years of combined experience advocating for those who have been wrongfully injured by large corporations. The Schlesinger Firm has helped shape tort law through trials and appellate arguments at every judicial level, including the United States Supreme Court. Since the 1950s, my firm has been at the forefront of litigating difficult and costly product liability cases. Some notable achievements include obtaining the nation's first plaintiff's verdict against Toyota, and recovering a $90 million judgment against General Motors, for knowingly failing to fix their vehicles susceptibility to fuel-fed fires. Most notable is the Schlesinger Firm's work against the tobacco industry, which led to an $11 billion settlement for the State of Florida. That settlement served as a catalyst and template for the Master Settlement Agreement later obtained and utilized by other states' attorneys general. The Schlesinger Firm has also tried numerous *Engle* progeny tobacco cases, obtaining millions of dollars in compensatory and punitive damages (e.g., *Grossman*, $38 Million verdict; *Boatright*, $35 Million verdict; *Landi*, $20 Million verdict).

Both the Schlesinger Firm and I have extensive experience in MDLs and complex consolidated proceedings. For example, Scott Schlesinger, the principal of the firm, was appointed Lead Counsel in *In re: Santa Fe Natural Prod. Liab. Litig.*, MDL No. 2695 (D.N.M.). During that time, I actively participated in, and supplied the first draft of, numerous lengthy *Daubert* motions and responses briefed at the class certification stage and continued to collaborate with the *In re: Santa Fe* leadership committee regarding said briefings. In addition, Jonathan Gdanski from the Schlesinger Firm was appointed to the *In re: JUUL Labs, Inc. Marketing, Sales Pract. & Prods. Liab. Litig.*, MDL No. 2913 (N.D. Cal.) Plaintiffs' Steering Committee ("PSC"). I similarly provided assistance in the PSC's preparation for important expert depositions and gave presentations to PSC and Executive Committee members regarding electronically-stored document discovery. A complete list of MDLs I have worked on, including remand cases, is included in my resume.

All cases—but especially product liability cases—require significant time, resources, and patience. This is not a case or subject matter for those seeking a quick settlement. A meaningful settlement occurs only after a great deal of hard work. My career has afforded me a unique knowledge and appreciation of these realities. For example, as it relates to the pelvic mesh litigation, my firm tried a number of cases against defendants that had previously settled large inventories. The prosecution of these cases to jury verdicts ultimately led to settlements of a substantially higher value as a result of our firm's willingness to proceed to trial.

      I am also mindful of the significant expense required to effectively manage this MDL. The Schlesinger Firm has the financial resources to commit to this litigation. At present, my firm has been retained by dozens of clients who used the drugs at issue in this litigation. Before the formation of this MDL, I and others at my firm conducted extensive research into the nature of the drugs involved and mechanism(s) of injury being reported. Put simply, I work alongside a talented and dedicated group of lawyers who are not only passionate about this subject but are ready and willing to commit themselves—both financially and by dedicating time—to this litigation. Moreover, I personally have the ability to fully dedicate myself to this litigation as I am not overwhelmed by, or inundated with, separate litigations or MDLs.

      I also have an appreciation for the fact that Plaintiffs' counsel must be able to work cooperatively in complex multi-party litigations such as this one. The Schlesinger Firm would not have the success it enjoys without its demonstrated willingness and ability to work well with both co-counsel and opposing counsel. My firm enjoys a close working relationship with the Kline & Specter law firm and Tom Kline supports my firm's participation in a leadership capacity in this litigation. I also encourage the Court to contact some on the *opposing* side, such as Traci McKee from Faegre Drinker Biddle & Reath LLP (239-286-6910), about my efforts and ability to cooperate with others. I also invite the Court to contact the Hon. Raag Singhal (954-769-5430), who presided over a transvaginal mesh product liability that I tried with others at my firm.

      As Your Honor noted, equally important is a focus on opportunities for attorneys at different levels in their respective careers. I recognize that, while I have already gained unique and extensive MDL experience, I have not yet been appointed to any Steering or Executive committees in an MDL. I have also not yet applied. But we all must start somewhere. *See* Best Practice 4E of the *Guidelines and Best Practices for Large and Mass-Tort MDLs*; *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, PTO #20, at 2 (S.D. Fla. May 8, 2020) ("The Court also sought to appoint a diverse leadership team that is representative of the inevitable diversity of the Plaintiffs in this case, and a team that affords younger and slightly less experienced attorneys an opportunity to participate in a leadership role in an MDL."). As a 30-year-old woman—like many of the plaintiffs in this litigation—my selection here would be consistent with the goals of fostering diversity and inclusion.

      Respectfully submitted,

*/s/ Sarah J. Foster*
Sarah J. Foster, Esq.
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue
Fort Lauderdale, FL 33316
(954) 467-8800
sarah@schlesingerlaw.com