**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION** | : : : : | **CIVIL ACTION** |
| **THIS DOCUMENT RELATES TO:** | : : : | |
| **ALL ACTIONS/ALL CASES** | : : | **MDL No. 3094 24-md-3094** |

**PROPOSED CO-LEAD COUNSEL'S REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR APPOINTMENT OF PLAINTIFF LEADERSHIP
AND IN RESPONSE TO THE OPPOSITION FILED THERETO**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND OF THE COURT'S LEADERSHIP APPLICATION PROCESS .............. 2

II.   PRIVATE ORDERING IS COMMONLY UTILIZED TO SELECT LEADERSHIP ............ 3

III.  THE PROPOSED LEADERSHIP GROUP FOLLOWED THE PROCESS ESTABLISHED
      BY THE COURT .................................................................................................................... 6

IV.   CONCLUSION ...................................................................................................................... 9

The undersigned counsel ("Counsel") file this reply in further support of their Motion for Appointment of Leadership (ECF No. 61) (the "Consensus Motion"), in response to the Opposition filed by Schlesinger Law Offices, P.A. (the "Schlesinger Firm") (ECF No. 74) ("Opposition"), and with respect to the three additional Plaintiff leadership submissions filed: the "Foster Motion" (ECF No. 64), the "Susen Motion" (filed *in camera*), and the "Williamson Motion" (ECF No. 76).

At the initial Case Management Conference ("CMC"), the Court put in place a process for submitting applications for leadership. Tr. at 18:8-19:21.[1] As part of that process, any counsel who wished to apply for a leadership position had an opportunity to do so (*id.*), and four such applications were filed. *See* the Consensus Motion submitted by the undersigned Counsel (ECF No. 61); the Foster Motion (ECF No. 64); the Susen Motion (filed *in camera*); and the Williamson Motion (ECF No. 76). After the filing of the first three leadership applications, the Schlesinger Firm also filed its Opposition to the Consensus Motion filed by Counsel. *See* ECF No. 74. The Opposition, however, is simply an unfounded attack on a well-accepted, fair, and transparent process that allowed every interested attorney an opportunity to be considered. *See* Opp. at 5-9.

Counsel's Consensus Motion puts forth a proposed leadership that was assembled considering, among other things, the experience and resources required to litigate a case of this magnitude with an eye toward the overarching, "duty to the litigants to move the case along in a way that is efficient and economical." Tr. at 13:5-8. In their Consensus Motion, Counsel also proposed an informal Leadership Development Committee ("LDC") pursuant to the Court's suggestion that less experienced lawyers be afforded, "the benefit of learning from [counsel] who are experienced." *Id*. at 8-13. This slate has been opposed by only a single firm involved in this

---

[1] References to "Tr." are to the transcript of the March 14, 2024 Case Management Conference, which is attached hereto as Exhibit "A."

multidistrict litigation, with only two additional attorneys seeking to be added to the slate but not opposing it.

Not all counsel who wish to be involved at a leadership level in this litigation will have the opportunity to do so, and that is true in every large MDL. Any leadership committee taking on a case of this magnitude needs experienced and committed members who are team players. Upon review of the three additional leadership submissions, it is Counsel's position that only Mr. Williamson has shown active participation in this litigation and a team approach consistent with the needs of this large, complex litigation.

Mr. Williamson's work in this case is in stark contrast to the remaining applicants. Here, in consideration of Ms. Foster's limited legal experience and admitted lack of any prior leadership experience, she was offered a position as part of the LDC in the agreed-upon leadership slate. Ms. Foster did not respond to this offer and has not participated in any way in the litigation. Mr. Susen chose to apply individually, made no effort to work collaboratively with Counsel, did not attend the JPML hearing, and has not attended or offered to assist with any of the longstanding plaintiff working groups.

Accordingly, Counsel respectfully request that the Court reject the applications of Ms. Foster and Mr. Susen and enter an Order appointing the leadership group identified in the Consensus Motion and include Mr. Williamson as a member of the Plaintiffs' Steering Committee ("PSC")).

## I.     BACKGROUND OF THE COURT'S LEADERSHIP APPLICATION PROCESS

At the March 14, 2024 CMC, Counsel speaking on behalf of the Plaintiffs explained they had "met and conferred and have agreed to a process to bring together a strong, experienced and cohesive group of leaders," Tr. At 11:20-23, and that after "a lot of extensive negotiations and discussions," they intended to submit a leadership slate that represented a "consensus" among

counsel involved. *Id*. at 12:10-15. During the CMC, Plaintiffs' Counsel explained, among other things, the structure of the proposed leadership and the need to have extensive experience in this type of complex MDL litigation, to ensure that those in leadership had the resources needed to prosecute the litigation and the diversity of experience and the ability to work together cooperatively. *Id*. at 14:1-9. Plaintiffs' Counsel also explained that there was a group of counsel who had been working together for some time on these cases, which allowed them to ascertain each respective individual's skill set and how each counsel could be best utilized to move the cases forward efficiently. *Id*. at 16:12-19; *see also id*. at 17:9-15 (the Court: "A big challenge is going to be the avoidance of duplicative effort . . . .").

While the Court seemed pleased that Plaintiffs' Counsel had "begun to organize [them]selves," Tr. at 9:9-11, the Court also expressed awareness that there may be some counsel "who feel[] that they have been overlooked in some substantive way." *Id*. at 17-20. To ensure that those individuals could be heard, the Court encouraged them to apply at the same time the Court received an application from the Consensus Group. *Id*. at 18:17-22. In fact, Mr. Susen addressed the Court at the CMC seeking an opportunity to apply for leadership, and the Court instructed him to submit an application. *Id*. at 20:2-20. This was the process established by the Court.

## II.    <u>PRIVATE ORDERING IS COMMONLY UTILIZED TO SELECT LEADERSHIP</u>

Simply put, the process ordered by the Court gave an opportunity for anyone wishing to apply for leadership, whether it be part of an agreed-upon structure or individually, to submit an application. Four such applications were filed: Counsel's Consensus Motion, Mr. Susen's Motion, the Foster Motion, and the Williamson Motion. These Motions are pending.

Contrary to the position of the Schlesinger Firm, the private-ordering process is fully consistent with longstanding best practices in MDLs. The proposed Consensus Motion is the result of a process that occurred fairly, transparently, and in full consideration of everyone interested in

contributing. *See* Consensus Motion at 5 (describing efforts to speak with over 100 counsel); Tr. at 12:10-12 (discussing extensive negotiations and discussions among counsel); *id*. at 18:23-19:1 (noting that Counsel would be happy to discuss inclusion in the proposed consensus slate with anyone who felt they had been overlooked).

The Schlesinger Firm's Opposition fails to acknowledge that private ordering is endorsed by both the Manual for Complex Litigation § 21.272 (4th ed. 2022) ("By far the most common [method] is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests"), and the Third Circuit Task Force on the Selection of Class Counsel, 208 F.R.D. 340, 388 (2002) ("We believe that class recovery generally can be maximized more effectively by using the traditional methods of appointing counsel: private ordering where that is possible . . . .").

Not only are private ordering and consensus applications encouraged, but they are also commonly utilized in practice, as evidenced by the large number of MDLs using this method to form leadership structures. *See, e.g.*, *In Re: Tepezza Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3079, Case No. 1:23-cv-03568, at ECF 10 (N.D. Ill. June 29, 2023); *In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation,* MDL No. 3060, Case No. 1:23-cv-00818, at ECF 28 (N.D. Ill. Mar. 2, 2023); *In Re: Exactech Polyethylene Orthopedic Products Liability Litigation,* 1:22-md-03044, Case No. 1:22-md-0344 (E.D.N.Y. Dec. 12, 2022); *In Re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation,* MDL 2973, Case No. 2:20-md-02973, at ECF 9 (D.N.J. Jan. 22, 2021); *In re: Recalled Abbott Infant Formula Products Liability Litigation,* MDL 3037, Case No. 1:22-cv-04148, at ECF No. 23 (N.D.

Ill. Sept. 8, 2022).[2]

Private ordering is also consistent with prior counsel appointment orders in this District, including *In re Vanguard Chester Funds Litig.,* 625 F. Supp. 3d 362, 370 (E.D. Pa. 2022) ("[B]ecause the Court will respect the private ordering of plaintiffs where there are no obvious cartel-like red flags, *see In re Third Cir. Task Force on the Selection of Class Counsel*, 208 F.R.D. at 348, and because cooperation among plaintiffs is critical at this stage in the litigation, the Court will weigh this factor in favor of Rosen Law."); *see also Nelson v. Connexin Software, Inc.,* 2023 WL 2721657, at *1 (E.D. Pa. March 30, 2023) (appointing as lead counsel the firms that had garnered the most support among plaintiffs' counsel, emphasizing that, "the ability of a large group of lawyers to organize themselves and cooperate warrants their appointment as interim lead counsel."). These consensus slates often are the best means to achieve the goals of inclusivity, diversity in the broadest sense, and skilled and effective leadership to the benefit of all plaintiffs. They also avoid acrimonious leadership fights that unnecessarily burden the Court and impair the cohesiveness and cooperative spirit necessary to effectively litigate on behalf of plaintiffs against major corporate defendants with vast resources and highly-experienced defense counsel.

The Court's request for a written application from the proposed consensus leadership group, while also allowing anyone to apply individually, is consistent with the above best practices. The alternative proposed by the Schlesinger Firm in its Opposition would require a separate application from each firm or counsel that wishes to be considered, resulting in anywhere from 30 to 50 separate applications, which would be redundant of the current Consensus Motion. *See* Opp. at 8 (asking the Court to "insist on written applications from any attorney seeking a leadership, steering or executive committee position."). This process would be unnecessarily duplicative and

---

[2] The relevant orders are attached hereto as Exhibit "B."

result in undue delay. Counsel has separately filed the *curriculum vitaes* of all individuals on the proposed consensus leadership slate, enabling the Court to review their experience and qualifications. ECF No. 73.

### III.   THE PROPOSED LEADERSHIP GROUP FOLLOWED THE PROCESS ESTABLISHED BY THE COURT

Pursuant to Plaintiffs' Counsel representations to the Court during the March 14, 2024 CMC (Tr. at 11:19-23, 12:10-12), the undersigned Counsel began putting together the Consensus Motion. As part of this process, an email was sent to all known interested counsel requesting specific background information and materials concerning their qualifications and experience. *See* Opp. at 2-3 (quoting from March 15, 2024 email). In addition to the extensive organizational efforts undertaken prior to the CMC, this information allowed Counsel to finalize a proposed consensus leadership structure that included attorneys at each level that, among other things, had diverse experiences and backgrounds; were experienced and accomplished in MDLs and other complex litigation of this magnitude; had sufficient resources to litigate the case through to the end; included the appropriate number of counsel necessary to effectively and efficiently litigate the case without duplication of effort; and, as the Court requested, included younger attorneys on an LDC who could benefit from the experience. Most importantly, the primary goal was to organize a final structure that ensured all litigation needs were met (*i.e.*, sufficient members for various litigation tasks), and that had demonstrated the commitment, experience, skills, resources, cooperativeness, and time to litigate the case, while above all prioritizing the needs and best interests of the clients. Contrary to the argument by the Schlesinger Firm, Counsel did not usurp the role of the Court by requesting applicants to furnish information concerning their leadership

qualifications.[3] *See* Opp. at 1. Instead, consistent with standard practices, the information was requested to assist in finalizing a qualified consensus leadership slate that met the needs of this MDL as described above. The undersigned Counsel believe the proposed consensus leadership structure accomplishes these important goals.

Pursuant to the Court's instructions, Counsel filed their Consensus Motion on March 21, 2024. The proposed consensus leadership structure reflects the agreement of virtually all of the lawyers involved in the MDL and was opposed only by Ms. Foster and her firm. The leadership structure that has been proposed in the Consensus Motion represents a group of highly experienced lawyers with the necessary skills, resources, and demonstrated commitment to best represent the interests of the plaintiffs. The proposed leadership group has a proven track record of achieving successful results and working together cohesively and efficiently.

On March 18, 2024, attorney Marcus J. Susen filed his leadership application *in camera*, seeking a position as either a Data Liaison (to keep track of all relevant data and dual representation issues with defense), a member of the Discovery Committee, or a member of the Settlement Committee (a position that requires the highest level of connection to the litigation and the clients who comprise it). Consistent with our representations to the Court, Counsel reached out to Mr. Susen to offer inclusion as part of the leadership slate that was being proposed, but he demurred, preferring to file an application separately. In our view, Mr. Susen's insistence on positions such as a member of the Settlement Committee simultaneously reflects both a total lack of understanding of the prerequisites for leading any settlement efforts and an overt effort by an attorney with limited MDL experience to obtain control of a critical lever in a massive litigation.

---

[3] Undersigned Counsel disagree with the characterization and completeness of events listed in the Opposition by the Schlesinger Firm. However, Counsel has chosen not to respond since it is not necessary to the Court's inquiry.

And Mr. Susen does so despite having essentially no involvement with the case to this point, let alone engagement with those who have been leading the matter and together represent 95% of the individuals injured. Curiously, Mr. Susen also seeks appointment to a "Discovery Committee," even though almost *all of the charge* that a plaintiff's leadership group has in an MDL *is discovery*; in other words, the entire PSC *is* the discovery committee. For these reasons, Counsel believes another litigation would be a better fit for Mr. Susen.

On March 21, 2024, attorney Sarah J. Foster of the Schlesinger Firm submitted a letter seeking a position on the Executive Committee or Steering Committee. *See* Foster Mot. at 3. Ms. Foster has been practicing law only since 2019 and acknowledges she is a 30-year-old lawyer who has "not yet been appointed to any Steering or Executive committees in an MDL," or even applied before. *Id.*; *see also* ECF No. 64-1 at 1. There is also no indication that Ms. Foster has ever been appointed to a Leadership Development Committee in other MDLs. Such a role would have been an excellent opportunity for her to gain experience in a complex MDL, such as this one, while at the same time being mentored by experienced attorneys. Counsel offered Ms. Foster a position on the LDC in this litigation[4] (*see* ECF No. 74-4), but she chose instead to seek a role on the Executive Committee or Steering Committee, which are leadership roles that are traditionally occupied by counsel with far more experience than Ms. Foster. Notwithstanding the fact that the Schlesinger Firm had not previously been a part of the discussions related to formation of a consensus leadership slate and did not file a case until after the JPML hearing, nor had been present in Philadelphia at the initial hearing or a part of the proceedings before the JPML, it was asked to submit background information for consideration. Given what seems to be its total rejection of the

---

[4] Counsel's invitation to Ms. Foster to participate on the LDC made clear that she would not be required to make a capital contribution, which often can impede participation by younger lawyers.

consensus leadership group that has been working together on this matter since 2023, we feel that the Schlesinger Firm is not a good fit for the already cohesive team that has come together.

On April 2, 2024, attorney George Williamson filed his leadership application seeking a position on the plaintiff's leadership team. *See* Williamson Mot. at 2. Mr. Williamson demonstrates in his brief a desire to continue collaborative work in this MDL. *Id.* He also cites specific examples of involvement in this litigation to date, including filing cases and arguing in support of consolidation at the JPML hearing. *Id.* Counsel would welcome the participation of Mr. Williamson on the PSC and believe his approach to date demonstrates his ability to work cooperatively.

## IV.   <u>CONCLUSION</u>

For the reasons set forth in Counsel's Consensus Motion and further set forth herein, Counsel respectfully submit that their Consensus Motion should be granted with the sole addition of Mr. Williamson as a member of the Plaintiffs' Steering Committee.

Dated: April 3, 2024

Respectfully submitted,

/s/ Parvin K. Aminolroaya
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Email: paminolroaya@seegerweiss.com

/s/ Jonathan Orent
Jonathan Orent
**MOTLEY RICE LLC**
40 Westminster St., 5th Floor
Providence, RI 02903
Telephone: (401) 457-7700
Email: jorent@motleyrice.com

*/s/ Sarah Ruane*
Sarah Ruane
**WAGSTAFF & CARTMELL**
4740 Grand Avenue Suite 300
Kansas City, MO 64112
Telephone: (816) 701-1123
Email: sruane@wcllp.com

*/s/ Paul Pennock*
Paul Pennock
**MORGAN & MORGAN**
350 Fifth Avenue, Suite 6705
New York, NY 10118
Telephone: (212) 738-6299
Email: ppennock@forthepeople.com

*Proposed Co-Lead Counsel*