IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSLYVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | : CIVIL ACTION :  :  :  : |
| THIS DOCUMENT RELATES TO: | : MDL No. 3094 : 24-md-3094 |
| *Marissa Wrubel v. Eli Lilly and Company*, 2:24-cv-00841 | : : : |

**RESPONSE IN OPPOSITION TO THE AMENDED MOTION FOR APPOINTMENT OF PLAINTIFF LEADERSHIP (Doc. 81)**

The undersigned counsel respectfully submits this Response in Opposition to the Amended Motion for Appointment of Plaintiff Leadership that was filed on April 4, 2024. (Doc. 81) ("the Amended Motion"). This response deals only with the amendments to the motion for appointment, but incorporates by reference all arguments raised in the previously filed Opposition. (Doc. 74).

The purpose behind the filing of the initial Opposition to the Motion for Appointment of Plaintiff Leadership (Doc. 74) was not to say that a private self-ordering is per se a bad thing, but that this particular self-ordering was severely lacking in substance and transparency. The newly Amended Motion only further illustrates this point. Taken as a whole, the brief history of the leadership election process in this case is a perfect example of why an open application process ensures fairness and objectivity.

Instead, the exact opposite has happened. Proposed leadership complains that they have already undertaken significant efforts to advance the litigation, but the case workup and discovery actually completed to date appears minimal at best. Proposed leadership alleged that the undersigned has not actively "participated in any way in the litigation" (Doc. 77, at 4), yet fails to mention the times the undersigned asked to participate and assist the group but was ignored. *See* 3/5/2024 Email

to J. Sedgh (attached hereto as "**Exhibit A**").  Proposed leadership was called out for the lack of transparency in their initial application, so they were forced to supplement it.  Proposed leadership then assured undersigned counsel it did not oppose her application, only to reverse course and oppose it.  Proposed leadership filed a reply to which they did an about face the very next day.  The record reflects that proposed leadership, simply put, is losing control of the very litigation they attempted to seize control of.  The reason for that is their control was assumed and not earned through a fair and objective process.

The Reply cites to five other multi-district litigations ("MDLs") claiming that those MDLs utilized the private ordering method to form their leadership structures.  (Doc. 77, at 4).[1]  However, in three of those MDLs—*In Re: Tepezza*, *In Re: Hair Relaxer*, and *In Re: Recalled Abbott Infant Formula*—formal declarations were submitted to the Court along with the motion for leadership appointment.  *See In Re: Tepezza*, No. 1:23-cv-03568, at ECF 3; *In Re: Hair Relaxer*, No. 1:23-cv-00818, at ECF 14; *In Re: Recalled Abbott Infant Formula*, No. 1:22-cv-04148, at ECF 16.  Similarly, in the *In Re: Elmiron* MDL, a combination of declarations and resumes accompanied the motion for appointment.  *See In Re: Elmiron*, No. 2:20-md-02973, at ECF 7.  The only MDL cited in the Reply where the proposed leadership committee submitted only resumes along with the motion for appointment is *In Re: Exactech*.  However, in the *Exactech* MDL, the resumes of the proposed steering committee members were provided along with the motion at the outset, not after an objection had been raised.

---

[1] Citing *In Re: Tepezza Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3079, Case No. 1:23-cv-03568, at ECF 10 (N.D. Ill. June 29, 2023); *In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation,* MDL No. 3060, Case No. 1:23-cv-00818, at ECF 28 (N.D. Ill. Mar. 2, 2023); *In Re: Exactech Polyethylene Orthopedic Products Liability Litigation,* 1:22-md-03044, Case No. 1:22-md-0344 (E.D.N.Y. Dec. 12, 2022); *In Re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation,* MDL 2973, Case No. 2:20-md-02973, at ECF 9 (D.N.J. Jan. 22, 2021); *In re: Recalled Abbott Infant Formula Products Liability Litigation,* MDL 3037, Case No. 1:22-cv-04148, at ECF No. 23 (N.D. Ill Sept. 8, 2022).

Moreover, in the Amended Motion, proposed leadership states that "[a]s of the time of the original filing, the Proposed Co-Leads had confirmed active support from counsel in 68 of the 76 complaints on file." (Doc. 81, at 3 n.1). However, there is substantial overlap in the counsel who filed the complaints that are currently in the MDL. For example, of the 53 cases currently on file in the MDL,[2] 41 of those cases were filed by individuals on the proposed slate. In other words, *more than 75%* of the proposed leadership supports themselves. Interestingly, 12 of the 32 individuals on the proposed slate do not appear to have a single case on file in the MDL.[3] The reality is that the proposed leadership consists of the same repeat players that have been involved in MDL leadership for the past five years. Burch, E., *Mass Tort Deals: Backroom Bargaining in Multidistrict Litigation*, CAMBRIDGE UNIV. PRESS (May 16, 2019). By way of example, the four proposed Co-Leads come from firms that were specifically mentioned as "repeat players" in Professor Burch's book.

Perhaps most troubling is the complete turn about the proposed leadership demonstrates from one day to the next regarding their newly permitted member. Despite vigorously opposing attorney Marcus Susen's leadership application in the April 3, 2024 Reply ("Reply"), on April 4, 2024—*only twenty-four (24) hours later*—the Amended Motion extends a warm welcome to Mr. Susen onto the proposed Consensus slate as a Plaintiffs' Steering Committee ("PSC") member. (Doc. 81, at 4). The following quotes from the two filings speak for themselves:

| **The April 3rd Reply** | **The April 4th Amended Motion** |
|---|---|
| "Mr. Susen chose to apply individually, made no effort to work collaboratively with Counsel, did not attend the JPML hearing, and has not attended or offered to assist with any of the longstanding plaintiff working groups. Accordingly, Counsel respectfully request that the Court reject the applications of Ms. Foster and Mr. Susen and enter an Order appointing the leadership group identified in the Consensus Motion and include Mr. Williamson as a member of the Plaintiffs' Steering Committee ("PSC"))." (Doc. 77, at 2). | "Proposed Co-Lead Counsel file this amended motion to apprise the Court of new events. Specifically, Proposed Co-leads now seek to include Mr. Marcus Susen and Mr. George T. Williamson as members of the proposed PSC." (Doc. 81, at 3 n.1). |

---

[2] While the proposed Co-Leads stated there are 76 complaints on file in the MDL, undersigned counsel went to the MDL docket and only counted 53 complaints.

[3] This information was collected via a search of the MDL docket filings to date.

| | |
|---|---|
| "On March 18, 2024, attorney Marcus J. Susen filed his leadership application *in camera*, seeking a position as either a Data Liaison (to keep track of all relevant data and dual representation issues with defense), a member of the Discovery Committee, or a member of the Settlement Committee (a position that requires the highest level of connection to the litigation and the clients who comprise it). Consistent with our representations to the Court, Counsel reached out to Mr. Susen to offer inclusion as part of the leadership slate that was being proposed, but he demurred, preferring to file an application separately. In our view, Mr. Susen's insistence on positions such as a member of the Settlement Committee simultaneously reflects both a total lack of understanding of the prerequisites for leading any settlement efforts and an overt effort by an attorney with limited MDL experience to obtain control of a critical lever in a massive litigation. And Mr. Susen does so despite having essentially no involvement with the case to this point, let alone engagement with those who have been leading the matter and together represent 95% of the individuals injured. Curiously, Mr. Susen also seeks appointment to a "Discovery Committee," even though almost *all of the charge* that a plaintiff's leadership group has in an MDL *is discovery*; in other words, the entire PSC *is* the discovery committee. For these reasons, Counsel believes another litigation would be a better fit for Mr. Susen." (Doc. 77, at 7–8). | "Based on further outreach by Mr. Marcus J. Susen to Proposed Co-lead Counsel since the filing of their Motion for Appointment of Plaintiff Leadership on March 21, 2024, including Mr. Susen's assurances that he is committed to working collaboratively with Counsel on this litigation, assisting with any needed discovery tasks, and in light of his legal experience, Proposed Co-lead Counsel propose including Mr. Susen as a member of the Consensus slate on the PSC." (Doc. 81, at 4). |

In the April 3rd Reply, the proposed Co-Leads state Mr. Susen is "an attorney with limited MDL experience" who would "be a better fit" for "another litigation." (Doc. 77, at 7). Yet the very next day, they state that "in light of his legal experience, Proposed Co-Lead Counsel propose including Mr. Susen as a member of the Consensus slate on the PSC." (Doc. 81, at 4). These two positions run in stark contrast to one another. One cannot help but wonder what caused the drastic change in position in such a short amount of time. But, as they say in Hamilton, 'no one else was in the room where it happened.' The nimbleness with which proposed leadership can navigate between drastically opposing positions demonstrates the fragility of the alliance they have created. Given this erratic, inconsistent behavior, the Court cannot have confidence in this process or in proposed leadership's ever-changing slate.

Aside from any back-room deals, the Reply also referred to positions on the Executive and Steering Committees are "leadership roles that are traditionally occupied by counsel with far more

experience than Ms. Foster." (Doc. 77, at 8). Nevertheless, there is at least one individual on the proposed Executive Committee slate who has just two extra years of experience and far less objective experience in products liability litigation. Relatedly, the Reply points out that the undersigned has "not yet been appointed to any Steering or Executive committees in an MDL." *Id.* Yet again, there are at least six other lawyers on the proposed Executive and Steering Committees who have also never been appointed to any Steering or Executive Committees an in an MDL before. In short, the very arguments the proposed Co-Leads used against the undersigned are at odds with their own slate. This all reinforces the position the undersigned has taken from the start: that it is for the Court to decide who is or is not qualified to serve on this plaintiffs' leadership after a transparent process that includes submissions of relevant information to the Court from each applicant.

Dated: April 5, 2024                                Respectfully submitted,

/s/ *Sarah J. Foster*
Sarah J. Foster (*pro hac vice*)
Jeffrey L. Haberman (*pro hac vice forthcoming*)
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33316
Tel. (954) 467-8800
sarah@schlesingerlaw.com
jhaberman@schlesingerlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5, 2024, a copy of the foregoing was filed on the Clerk of Court by CM/ECF, which will provide notice to all parties and counsel of record.

By: /s/ *Jeffrey L. Haberman*
Jeffrey L. Haberman