IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: GLUGAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | : : : : : : | CIVIL ACTION  MDL No. 3094  24-md-3094 |
| THIS DOCUMENT RELATES TO:  *ALL ACTIONS/ALL CASES* | : : : | HON. KAREN SPENCER MARSTON |

## CASE MANAGEMENT ORDER NO. 15

### ESI PROTOCOL

**AND NOW**, this 31st day of July, 2024, with respect to the production of documents[1] in discovery in this MDL No. 3094, it is **ORDERED**[2] as follows:

**I.    IDENTIFICATION OF DOCUMENTS**

    **A.    Cooperation**

The Parties shall conduct discovery in a cooperative manner, including without limitation, by meeting and conferring in good faith on any preservation, collection, review, and production issues that arise during the course of discovery; by discussing reasonable limitations on discovery; and by collaboratively identifying and discussing search and culling methodologies (such as the use of searches or Technology-Assisted Review ("TAR")) if any such methodologies will be used in the above-captioned action or any related GLP-1 RA litigation that is, at the time this Order is entered or thereafter, (1) consolidated with the above-captioned action, (2) remanded out of the above-

---

[1] For clarity, the terms "document" or "documents" include Electronically Stored Information ("ESI").

[2] To the extent any Parties are subject to other production obligations as set forth in other agreements or Court Orders, such as orders regarding fact sheets, nothing in this Order is intended to alter or amend those obligations.

captioned action, or (3) filed in any state court or foreign tribunal and similarly alleges injuries arising from use of GLP-1 RAs (collectively this "Action").

### B. Sources of Discoverable Information

In order to facilitate discussions on the potential application of search terms, TAR, or other search and culling technologies, each Defendant shall provide in writing a list of custodians and/or data sources within that Defendant's control likely to contain or possess responsive documents. Plaintiffs' identification in writing of custodians and/or data sources likely to contain or possess responsive documents shall be governed by a later agreement of the Parties or ordered by the Court.

Notwithstanding the foregoing language, the Parties shall begin discussions on potential search and culling technologies through the meet and confer process prior to providing any written list. The Parties shall also meet and confer if any Party reasonably believes that there are additional custodians or data sources likely to contain or possess unique, responsive information that should be subject to discovery in this matter.

### C. Filtering Technologies and Methodologies

If a Producing Party elects to use search terms to identify potentially responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI, and the Parties will meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party. That meet and confer shall include, when requested, an exchange of information that includes, where relevant, semantic synonyms, code words, acronyms, abbreviations, nonlanguage alphanumeric associational references to relevant ESI, any hit count reports, and any other information agreed to by the Parties. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

In addition, to the extent a Party intends to apply TAR to exclude potentially responsive documents from human review, that Party shall meet and confer in advance, regardless of when the Party intends to apply TAR. That meet and confer shall include a discussion of the document population to which the Producing Party intends to apply TAR and the appropriateness of applying TAR to that population. To the extent the Parties cannot reach agreement on the application of, or procedures for, any TAR process used to exclude potentially responsive documents from human review, the Parties may raise such issues for resolution by the Court or its designee.

## II.   ANALYSIS OF DOCUMENTS

### A.   De-Duplication

Parties can de-duplicate exact copies on a family level (e.g., an email and all attachments) based on hash values (e.g., MD5, SHA1, etc.). Documents will be de-duplicated using MD5 or SHA1 hash values, or an agreed upon de-duplication method that accounts for all potentially relevant metadata fields, including BCC. For each document family produced, the names of other custodians who possessed that document family shall be indicated in the "All Custodians" metadata field, and the names and file paths associated with the de-duplicated document shall be indicated in the "All File Names" and "All File Paths" metadata fields, in accord with paragraph III.B.11. For hard copy documents, if there are any handwritten notes, or any other markings or additions, on a document including but not limited to electronic notes/tabs, edits, highlighting or redlining, it shall not be considered a duplicate of the underlying document. If such markings/alterations are made in color, the document must be produced in color.

### B.   Email Threading

Due to the importance of metadata in review and analysis of produced discovery material, and in order to facilitate reasonable evidentiary use of emails, production of a "last-in-time message" does not entitle the Producing Party to withhold all earlier-in-time messages and their

metadata. Defendants may not withhold a responsive communication and its metadata from production solely on the basis that part of another, longer communication also contains language from the body of the withheld communication. Defendants may, at their discretion, elect to review only the last-in-time communication in determining the responsiveness of the prior communications or for any other internal purpose.

### C.    Hyperlinked Documents

#### 1.    Collection of Hyperlinked Documents

Except as required in this section, this Order imposes no obligation on a Party to manually locate, collect, or associate a hyperlinked document with the message[3] containing the hyperlink.

For document collections conducted using Microsoft's Purview tool, Defendants shall use Purview Premium and use the necessary settings to attempt to automatically collect the current, available version of non-public hyperlinked documents stored within the Microsoft 365 environment for potential searching and/or review along with the message containing the hyperlink.[4] To the extent that either the message containing the hyperlink or any hyperlinked documents or physically attached documents are responsive, all such documents shall be produced as otherwise required by this Order.

---

[3] For clarity, the terms "message" or "messages" refer to email or Teams messages.

[4] For defendant Eli Lilly & Company, the Parties acknowledge that Microsoft's Purview tool will not be used to collect documents from Lilly's email archive, including emails transmitted prior to February 13, 2023. For Novo Nordisk, the Parties acknowledge that Microsoft's Purview tool will not be used to collect documents from Novo's email archive, which includes email for inactive employees that were on legal hold between September 1, 2019 and December 31, 2019, when Novo transitioned to Microsoft 365.

2.  Requests for Contemporaneous Versions

A Receiving Party[5] may request a manual search for contemporaneous versions of hyperlinked documents that are likely to be material to the Party's preparation of its case. Any such reasonable and particularized request shall provide a list of requested individual hyperlinks (with the Beginning Bates and Bates pages on which the individual hyperlinks appear) by email to the Producing Party's counsel, capped at 40 individual hyperlinks per Defendant being open for inquiry at any one time. A Receiving Party shall be limited to 400 individual hyperlink requests directed to Novo and 600 individual hyperlink requests directed to Eli Lilly over the course of the litigation and prior to the close of fact discovery, absent a showing of good cause to expand such limits.

Subject to the above limitations, the Producing Party shall within 30 days of its litigation counsel's receipt of a Receiving Party's email: (1) produce the version of the hyperlinked document closest in time that predates the message with the identified hyperlink, or (2) provide an explanation of any inability to produce a hyperlinked document referenced in a message (e.g., the link no longer points to an existing document, the Party no longer has access to the document, etc.), or (3) object to the request with an explanation for the objection. If the Producing Party is unable to produce a hyperlinked document in response to a Receiving Party's request under this paragraph, the request for that hyperlinked document shall not count against the limitations upon total requests per Producing Party described herein. However, for good cause shown, Producing Parties may request that a total cap on the number of manual searches be imposed. In addition, upon good cause such as an upcoming deposition, motion, litigation deadline, or other reasonable basis, Plaintiffs may seek an expedited review of up to ten (10) hyperlinked documents per Defendant at any one time.

---

[5] For purposes of this provision, all MDL Plaintiffs shall be treated as a single Receiving Party, represented by Plaintiffs' Leadership.

       3.     <u>No artificial families</u>

The production of a hyperlinked document shall not constitute an admission by the Producing Party that the produced hyperlinked document is substantively identical to the version of the hyperlinked document that existed at the time the message with the hyperlink was sent or received, or that the produced version of the hyperlinked document was viewed by the sender or recipient of the message. For the avoidance of doubt, produced hyperlinked documents shall not be construed to be the "as-sent" version of the hyperlinked document solely by virtue of the hyperlink reference in the document containing the hyperlink. The Parties will agree to a protocol for branding of any hyperlinked documents, either the contemporaneous version or current version, produced with the message that contained the hyperlink to that document.

    **D.**    **Password Protected or Encrypted Files**

With respect to any password-protected or encrypted documents that are encountered during processing, the Producing Party will take reasonable and proportional steps to resolve the protection so that the documents can be reviewed and produced if appropriate.

## III. PRODUCTION FORMAT

    **A.**    **Plaintiffs' Productions**

The Parties shall meet and confer regarding the production format requirements that shall apply to Plaintiffs' productions from data sources, including, but not limited to, text messages, documents stored within messaging platforms (including email, chat, and short form messaging), social media, and hard copy documents. Such requirements, including any limitations that would apply to account for the individual circumstances of particular Plaintiffs, will be reduced to a writing that will be entered by the Court as a separate order governing Plaintiffs' productions.

B.   **Defendants' Productions**

1.   Electronically Stored Information

    a.   *TIFF file productions.*

Defendants shall produce all documents that are deemed responsive and not privileged in 300 DPI Group IV black and white Tagged Image File Format (.TIFF or .TIF) files. The TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). Upon written request, Defendants shall produce color images, if available, for a reasonable number of selected documents. In certain circumstances, variations to the production format specified in this Order may be necessary. In such circumstances, the Parties will meet and confer regarding the production format. Any document that is not reviewable, but is otherwise part of a produced document family, shall be represented in the production with a placeholder TIFF image that bears the legend "Technical Issue," along with its corresponding metadata in the Concordance DAT file. To the extent the technical issue is not apparent (e.g., file extension is .EXE), the Parties will meet and confer. During the process of converting a document from the electronic format of the application in which the document is normally created, viewed, and/or modified to TIFF, metadata values should be extracted and produced in the database/metadata load file. The metadata values that are to be extracted and produced in the database load files are those maintained in the usual course of business and are identified in section III.B.11 below.

    b.   *Native File Productions.*

Defendants shall produce word-processing documents (e.g., Microsoft Word, etc.), PDFs, spreadsheets (e.g., Microsoft Excel, etc.), presentations (e.g., Microsoft PowerPoint, etc.), and audio and video files to the extent practicable, in native format, unless redacted, with the applicable metadata specified in this Order. Although native production of these file types is required, a Defendant is permitted to also produce a Bates-stamped TIFF image of the document to the extent

they believe the TIFF image accurately captures the substance of the document. To the extent a document cannot be converted to TIFF for this purpose (e.g., video files), a Defendant may represent that document in the image production with a placeholder that bears the legend, "Document Produced in Native Format." To the extent native files are redacted, production shall be made in TIFF format, as described in Section III.B.1.a, except for redactions of spreadsheets, which shall be contained in near-native files. Defendants shall use the Bates-stamped TIFF version of a document to the extent it exists in depositions, in submissions to the Court, and at hearings and in trial. If a Receiving Party does not believe a Bates-stamped TIFF image accurately reflects the substance of a document, the Receiving Party shall meet and confer with the Producing Party regarding the production of a revised Bates-stamped TIFF image. Prior to a Receiving Party's use of a natively produced document in a deposition, in a submission to the Court, or at a hearing or trial, the Receiving Party shall meet and confer with the Producing Party regarding the identification of and any conversion of the native file into an alternative format for use and labelling for tracking as exhibits.

        2.      Hard Copy Documents

Unless a hard copy document is rendered less intelligible by use of black and white images, all hard copy documents should be scanned and produced as single-page, Group IV, 300 DPI black and white TIFF images with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). If a hard copy document is scanned in color or rendered less intelligible by use of black and white images, then that document shall be produced in color as set forth below. All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The OCR software should maximize text quality over process speed. All image files and text files shall be named the same as the starting

Bates number for each document. Each TIFF image shall be endorsed with Bates numbers that increment by one for each page. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks.

Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting 75% or higher. Plaintiffs may also request, in writing, that a Defendant produce color images for a reasonable number of selected documents that were originally produced in black and white. Each such color document image file shall be named with the unique Bates number of the first page of the document in question followed by the file extension JPG or PDF. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

      3.     <u>Families</u>

Parent-child relationships (i.e., the association between emails and their attachments) will be maintained in the collection and production process to the extent practicable. Attachments will be consecutively produced with the parent email record. If an attachment is privileged, not responsive, or has a technical issue, a slip sheet may be inserted in the production.

      4.     <u>Embedded Documents and Objects</u>

Embedded documents (e.g., a spreadsheet embedded within a word processing document) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (e.g., standalone file, email message, etc.). Embedded objects within documents that are fully visible while viewing the documents (other than photographs), such as logos, icons, emoticons, and footers, may be excluded from a document family and need not be produced as separate documents (i.e., such embedded objects will be treated as produced within the

document itself, rather than as separate documents). A Receiving Party may inquire in writing whether embedded objects were excluded in connection with any individual produced document, and the Producing Party shall respond to such written inquiries within 14 days. Plaintiffs may reasonably request a Defendant to produce a document with the embedded objects extracted as separate files if material to the understanding of the document.

      5.      <u>Collaboration Platforms and Short Form Messages</u>

The Parties shall meet and confer as necessary to identify proportional mechanisms and parameters for collection, review, and production of responsive text or other types of short message formats or chats, and shall document such mechanisms.

      6.      <u>Structured Data</u>

To the extent that Plaintiffs request production of unique, responsive fielded information that is stored in a structured database or database management system and not subject to an objection to production, the Parties shall meet and confer prior to production to identify mechanisms for production of such information, including regarding the accessibility of such information (such as database queries, fields, or other filters within the database), and the form of any production from that data source (such as standard or custom reports).

      7.      <u>Social Media</u>

The Parties shall meet and confer as necessary to identify proportional mechanisms for production of the Defendants' unique, responsive documents stored within social media websites or applications, and shall document such mechanisms.

      8.      <u>Dynamic Fields</u>

Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

9. <u>Time Zone</u>

Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Eastern Standard Time with a daylight savings offset. The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the load file formats, below.

10. <u>Bates Numbering</u>

Each page of a document produced in image format by a Defendant will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. Each file produced in native format will be named according to the next consecutive Bates number. The Bates number will:

- be consistent across the production;
- contain no special characters other than a hyphen or underscore;
- identify the Producing Party; and
- be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.

11. <u>Metadata to be Produced</u>

The following metadata fields will be produced by each Defendant for each document to the extent that such information is available at the time of collection and processing:

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
| --- | --- | --- | --- |
| BEGINDOC | Start Bates (including prefix) | Hard Copy, Email, EDocs, Text and Instant Messages | ABC000001 |
| ENDDOC | End Bates (including prefix) | Hard Copy, Email, EDocs, Text and Instant Messages | ABC000008 |
| BEGATTACH | Parent Start Bates (including prefix) | Hard Copy, Email, EDocs, Text and Instant Messages | ABC000009 |
| ENDATTACH | Last Attachment End Bates (including prefix) | Hard Copy, Email, EDocs, Text and Instant Messages | ABC000015 |
| VOLUMENAME | Production volume number | Hard Copy, Email, EDocs, Text and Instant Messages | VOL001 |
| PAGECOUNT | Number of pages in document using Bates numbers. | Hard Copy, Email, EDocs, Text and Instant Messages | 8 |
| CUSTODIAN | Source of document (i.e., individual custodian name, database or archive name, shared area, etc.) | Hard Copy, Email, EDocs, Text and Instant Messages | Smith, John |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document. | Email, EDocs, Text and Instant Messages | Smith, John; Jones, Tom; Brown, Julie |
| FILEEXTENSION | File extension of electronic document | Email, EDocs | DOC |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| FILENAME | File name of electronic document | EDocs | October Agenda.doc |
| ALLFILENAMES | When global deduplication has been employed, all file names of an identical electronic document | EDocs | October Agenda.doc |
| ALLFILEPATHS | When global deduplication has been employed, all file paths to native files as they existed in original environment | EDocs | C:\My Documents\Agenda |
| PRIORITY | Priority status of an email (i.e., low, normal, high) | Email | |
| DATETIMESENT | Sent date of an email, text, or electronic message (mm/dd/yyyy format) / Time email, text, or electronic message was sent (hh:mm:ss) | Email, Text and Instant Messages | 02/08/2008 08:59 EST |
| DATETIMERECEIVED | Received date of an email, text, or electronic message (mm/dd/yyyy format) / Time email, text, or electronic message was received (hh:mm:ss format) | Email, Text and Instant Messages | 02/08/2008 08:59 EST |
| DATETIMECREATED | Date that a non-email electronic file was created (mm/dd/yyyy format) / Time that a non-email electronic file was created (hh:mm:ss format) | EDocs | 02/08/2008 08:59 EST |
| DATELASTMODIFIED | Date that a non-email electronic file was last modified (mm/dd/yyyy format) / Time that a non-email electronic file was last modified (hh:mm:ss format) | EDocs | 02/08/2008 08:59 EST |

14

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| AUTHOR | Author | Hard Copy, EDocs, Text and Instant Messages | John Smith |
| TO | Addressee/Recipient | Email, Text and Instant Messages | Jones, Tom; Brown, Julie |
| FROM | From | Email, Text and Instant Messages | Smith, John |
| CC | CC Field | Email | Cain, John |
| BCC | BCC Field | Email | Stevens, Lisa |
| SUBJECT | Email Subject | Email | Meeting Minutes |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | Hard Copy, Email, EDocs, Text and Instant Messages | Confidential |
| REDACTED | Does the document contain redactions (Y/N)? | Hard Copy, Email, EDocs, Text and Instant Messages | N |
| OBJECTREASON | If the document contains redactions, the reason(s) for those redactions. | Hard Copy, Email, EDocs, Text and Instant Messages | Redacted - PHI |
| HASHCODE | Document MD5 or SHA1 hash value (used for de-duplication or other processing) | Email, EDocs, Text and Instant Messages | dl3ldd02c5e6eec5694d0698aff85c2fsch58762I7eab40045733b8fb789 |
| TEXTLINK | Link to full text or OCR text | Hard Copy, Email, EDocs, Text and Instant Messages | D:\001\RET000005.txt |
| NATIVELINK | Link to associated native file (if produced) | Email, EDocs, Text and Instant Messages | D:\001\ABC000005.xis |

15

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| IND/NDA/BLA DATESUBMISSION | Submission date for Regulatory submissions (mm/dd/yyyy format) | Hard Copy, Email, EDocs | 02/08/2008 |
| IND/NDA/BLA NO. | IND/NDA/BLA Number | Hard Copy, EDocs | |
| IND/NDA/BLA SEQUENCE NO. | IND/NDA/BLA Sequence | Hard Copy, EDocs | |
| IND/NDA/BLA SUPPLEMENT NO. | IND/NDA/BLA Supplement | Hard Copy, EDocs | |
| IND/NDA/BLA ABSTRACT | IND/NDA/BLA Abstract | Hard Copy, EDocs | |

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of documents, that do not exist as part of the original metadata of the document, or would be unduly burdensome or costly to obtain. To the extent that objective metadata (e.g., dates, titles, authors) is coded at the time hardcopy documents are processed, that objective metadata shall be produced with the hardcopy document. Where a Producing Party produces more than one production volume, whether in a single delivery or on a rolling basis over time, that Producing Party shall provide periodic overlays on a reasonable cadence to update the metadata fields ALLCUSTODIANS, ALLFILENAMES, and ALLFILEPATHS to account for records in later volumes. If there is a dispute as to the frequency of such overlays, the Parties shall meet and confer to arrive at an agreed resolution.

12. <u>Production Media</u>

The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible, computer or electronic media. Each piece of Production Media will be assigned a production number, volume name or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production.

13. <u>Encryption</u>

To maximize the security of information in transit, any media on which documents are produced may be encrypted by a Defendant. In such cases, the Defendant shall transmit the encryption key or password to the Plaintiffs, under separate cover, contemporaneously with sending the encrypted media.

C. **<u>Non-Party Productions</u>**

The Parties may provide a copy of this Order to each recipient of a Rule 45 Subpoena seeking the production of documents in this matter and request that the non-party agree to follow the various provisions as to format set forth in this section. Non-parties may elect to follow these provisions, or may otherwise meet and confer with the Requesting Party as to the format of any document productions.

IV. **MISCELLANEOUS**

A. **<u>Modification</u>**

Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate. Any Party that seeks to deviate from the procedures and requirements set forth herein must obtain leave of the Court to do so, unless all Parties otherwise consent in writing as to the deviations agreed upon between the Parties, and the deviations agreed upon comport with required Court approvals and Court authority relating to enforcement of same.

B. **<u>Known Responsive Material Must Be Produced</u>**

Documents that are known to Parties or Parties' Counsel to be non-privileged and responsive to a discovery request in this matter, and not otherwise subject to a Rule 34 objection by the Producing Party or excluded by virtue of a Court order limiting discovery, shall not be withheld from production because they were not indicated for inclusion in the review population

by a search term or another search technique, except that privileged documents in such a collection may be withheld and listed in a privilege log.  These provisions do not affect the Parties' respective obligations with respect to supplementation under Fed. R. Civ. P. 26(g)

### C. Discrete Document Collections

Taking into consideration the Parties' objections under Rule 34 and any applicable Court orders, those portions of a Defendant's documents that represent discrete document collections, such as folders of ESI specifically segregated by Defendants or Defendants' employees, that are (1) otherwise within the scope of discovery, taking into consideration the Parties' objections under Rule 34 and any applicable Court orders, and (2) known to Defendants' counsel, shall be reviewed for responsiveness (subject to appropriate claims of privilege) in their entirety without regard to whether each document in the collection is responsive to a search term or otherwise flagged as potentially responsive by another search technique or classification algorithm or process. If during the course of discovery Plaintiffs believe that they have identified a "discrete document collection" that is within the scope of discovery, taking into consideration the Parties' objections under Rule 34 and any applicable Court orders, the Parties shall meet and confer regarding the folder or other location that Plaintiffs identify as a discrete document collection.

### D. Non-English Documents

To the extent that documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. This Protocol creates no obligation on any Party to create a translation of the documents or any portion thereof. A Producing Party shall provide any known translations of the documents or any portion thereof except in the context of work product prepared in anticipation of litigation. The Parties will meet and confer as necessary concerning procedures for standardizing and using translations in this litigation.  In the event the

Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

### E. Dispute Resolution

The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

### F. Court Intervention

The Court retains the right to allow, *sua sponte* or upon written motion, disclosure of any subject covered by this Order or to modify this Order at any time in the interests of justice.

**IT IS SO ORDERED.**

*/s/ Karen Spencer Marston*
**KAREN SPENCER MARSTON, J.**