**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GLUCAGON-LIKE | : | CIVIL ACTION |
| PEPTIDE-1 RECEPTOR AGONISTS | : | |
| (GLP-1 RAS) PRODUCTS | : | |
| LIABILITY LITIGATION | : | |
| _____ | : | MDL No. 3094 |
| | : | 24-md-3094 |
| THIS DOCUMENT RELATES TO: | : | |
| | : | HON. KAREN SPENCER MARSTON |
| *ALL ACTIONS/ALL CASES* | : | |
| _____ | : | |

<u>CASE MANAGEMENT ORDER NO. 26</u>

**Order Governing Plaintiffs' Production of Electronically Stored Information**

Case Management Order No. 12, which is entitled Plaintiff Fact Sheets, states that "Any other documents [produced pursuant to the order] shall be produced in the format set forth in the Court's forthcoming case management order governing ESI." Case Management Order No. 15, which is entitled ESI Protocol, states that "[t]he Parties shall meet and confer regarding the production format requirements that shall apply to Plaintiffs' productions from data sources . . . . Such requirements, including any limitations that would apply to account for the individual circumstances of particular Plaintiffs, will be reduced to a writing that will be entered by the Court as a separate order governing Plaintiffs' productions." **AND NOW**, this 16th day of April, 2025, with respect to Plaintiffs' production of documents[1] in discovery in this MDL No. 3094, it is **ORDERED** as follows:

**I.      APPLICABILITY OF CASE MANAGEMENT ORDER NO. 15**

To the extent any of the provisions in Case Management Order No. 15 apply to all Parties, this Order does not affect those provisions, and those provisions remain applicable to Plaintiffs.

_____

[1] For clarity, the terms "document" or "documents" include Electronically Stored Information ("ESI").

## II.     DOCUMENT TYPES EXCLUDED FROM THIS ORDER

Case Management Order No. 12, which is entitled "Plaintiff Fact Sheets," states that "[m]edical, pharmacy, and insurance records shall be produced as searchable PDFs with each facility's or provider's records contained in a separate PDF. Any other documents shall be produced in the format set forth in the Court's forthcoming case management order governing ESI." Nothing in this current Order, Case Management Order No. 26, is intended to modify the production format requirements in Case Management Order No. 12, including with regard to medical, pharmacy, and insurance records. Instead, this Order addresses the production format that shall govern Plaintiffs' productions of "any other documents."

## III.    DISCOVERY IN INDIVIDUAL CASES

This Order is intended to govern Plaintiffs' general production format obligations. To the extent specific discovery is sought in the future in individual cases, including, but not limited to, Bellwether cases, the Parties shall meet and confer regarding the data sources, search terms, and search, collection, and review obligations that apply to Plaintiffs in those cases.

## IV.    PLAINTIFFS' PRODUCTION FORMAT ONE

A.     <u>Preamble</u>

If a Plaintiff has three hundred (300) or more responsive documents in their possession, custody, or control, the documents shall be produced in accordance with Section V below. If a Plaintiff has fewer than 300 responsive documents in their possession, custody, or control, then the Plaintiff may produce the documents in accordance with this Section IV. For purposes of calculating the 300-document threshold, every self-contained text or chat exchange between two or more individuals without a break of at least 15 minutes between individual messages shall be considered a "document."

The provisions of Section V herein shall not apply to productions under Section IV. If Defendants claim that technical deficiencies in a Plaintiff's productions under Section IV impact their reasonable useability, Defendants and Plaintiff Leadership shall confer on such issues with the goal of providing metadata that can be collected and processed proportionally, and standardizing other aspects of production, to the extent necessary.

B.      Documents

Responsive documents may be produced in native format or other reasonably useable formats, such as searchable PDFs, that retain the relevant characteristics of the original document.[2] To the extent reasonably practicable, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., documents should be logically unitized). Plaintiffs' counsel will make reasonable efforts to have Plaintiffs' documents unitized correctly. If supplementation is needed, Plaintiffs shall append text to each relevant file name showing that it is a supplement and the supplement Bates number.

C.      Emails

Plaintiffs may produce responsive emails and attachments in searchable PDF format with reasonably identifiable information about the senders, recipients, subject, and time of the communication), or in native format. In either case, Plaintiffs shall preserve all familial relationships and metadata pursuant to Section VI.A below.

---

[2] In order to retain reasonable useability, responsive hard copy documents will be scanned prior to production consistent with Section VI.E. While JPEGs are not a reasonably useable format in all circumstances, JPEGs may constitute a reasonably useable format under this provision depending on a particular Plaintiff's circumstances, including, but not limited to, the type and volume of responsive information being produced. For example, if a particular Plaintiff is only in possession, custody, or control of three responsive text messages, JPEG screenshots might be a reasonably useable format for production of those text messages.

**V.    PLAINTIFFS' PRODUCTION FORMAT TWO**

A.    Preamble

As set forth above in Section IV.A, if a Plaintiff has three hundred (300) or more responsive documents in their possession, custody, or control, the documents shall be produced in accordance with this Section V. For purposes of calculating the 300-document threshold, every self-contained text or chat exchange between two or more individuals without a break of at least 15 minutes between individual messages shall be considered a "document." The provisions of Section IV shall not apply to productions under Section V.

B.    Electronically Stored Information

Plaintiffs who produce under this Section V shall produce all responsive documents, including word-processing documents (e.g., Microsoft Word, etc.), PDFs, spreadsheets (e.g., Microsoft Excel, etc.), presentations (e.g., Microsoft PowerPoint, etc.), and audio and video files to the extent practicable, in native format, unless redacted, with the applicable metadata specified in this Order. Prior to use of a natively produced document in a deposition, in a submission to the Court, or at a hearing or trial, the Parties shall meet and confer regarding the identification of and any conversion of the native file into an alternative format for use and labelling for tracking as exhibits.

C.    Email Threading

Production of a "last-in-time message" does not entitle Plaintiffs to withhold all earlier-in-time messages and their metadata. Plaintiffs may not withhold a responsive communication and its metadata from production solely on the basis that part of another, longer communication also contains language from the body of the withheld communication. Plaintiffs may, at their discretion, elect to review only the last-in-time communication in determining the responsiveness of the prior communications or for any other internal purpose.

D.      Collaboration Platforms and Short Form Messages

The Parties shall meet and confer as necessary to identify proportional mechanisms and parameters for collection, review, and production of responsive text or other types of short message formats or chats, and shall document such mechanisms.

E.      Time Zone

Plaintiffs shall disclose the time zone, including any offsets for daylight savings, that will be used for all dynamic date and time fields, where such fields are processed to contain a value (including conversion of emails or text messages to PDFs), and all metadata pertaining to dates and times. To the extent that the required time zone is not produced as metadata required in Section J, Plaintiffs are required to disclose the relevant time zone information required by this provision at the time of each production.

F.      Metadata to be Produced

The following metadata fields will be produced by each Plaintiff producing under this Section V for each document to the extent that such information is reasonably accessible at the time of collection and any processing:

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
| --- | --- | --- | --- |
| BEGINDOC | Start Bates (including prefix) | Hard Copy, Email, EDocs, Text and Instant Messages | ABC000001 |
| ENDDOC | End Bates (including prefix) | Hard Copy, Email, Edocs, Text and Instant Messages | ABC000008 |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| BEGATTACH | Parent Start Bates (including prefix) | Hard Copy, Email, Edocs, Text and Instant Messages | ABC000009 |
| ENDATTACH | Last Attachment End Bates (including prefix) | Hard Copy, Email, Edocs, Text and Instant Messages | ABC000015 |
| VOLUMENAME | Production volume number | Hard Copy, Email, Edocs, Text and Instant Messages | VOL001 |
| CUSTODIAN | Source of document (i.e., individual custodian name, database or archive name, shared area, etc.) | Hard Copy, Email, Edocs, Text and Instant Messages | Smith, John |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document. | Email, Edocs, Text and Instant Messages | Smith, John; Jones, Tom; Brown, Julie |
| FILENAME | File name of electronic document | Edocs | October Agenda.doc |
| ALLFILEPATHS | When global deduplication has been employed, all file paths to native files as they existed in original environment | Edocs | C:\My Documents\Agenda |
| PRIORITY | Priority status of an email (i.e., low, normal, high) | Email | |
| TIMEZONE | Indicates the Time Zone used for all Date/Time fields. | Email, Edocs, Text and Instant Messages | Eastern Standard Time (EST) |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| DATETIMESENT | Sent date of an email, text, or electronic message (mm/dd/yyyy format) / Time email, text, or electronic message was sent (hh:mm:ss) | Email, Text and Instant Messages | 02/08/2008 08:59 EST |
| DATETIMERECEIVED | Received date of an email, text, or electronic message (mm/dd/yyyy format) / Time email, text, or electronic message was received (hh:mm:ss format) | Email, Text and Instant Messages | 02/08/2008 08:59 EST |
| DATETIMECREATED | Date that a non-email electronic file was created (mm/dd/yyyy format) / Time that a non-email electronic file was created (hh:mm:ss format) | Edocs | 02/08/2008 08:59 EST |
| DATELASTMODIFIED | Date that a non-email electronic file was last modified (mm/dd/yyyy format) / Time that a non-email electronic file was last modified (hh:mm:ss format) | Edocs | 02/08/2008 08:59 EST |
| AUTHOR | Author | Hard Copy, Edocs, Text and Instant Messages | John Smith |
| TO | Addressee/Recipient | Email, Text and Instant Messages | Jones, Tom; Brown, Julie |
| FROM | From | Email, Text and Instant Messages | Smith, John |
| CC | CC Field | Email | Cain, John |
| BCC | BCC Field | Email | Stevens, Lisa |
| SUBJECT | Email Subject | Email | Meeting Minutes |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE | SAMPLE DATA |
|---|---|---|---|
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | Hard Copy, Email, Edocs, Text and Instant Messages | Confidential |
| REDACTED | Does the document contain redactions (Y/N)? | Hard Copy, Email, Edocs, Text and Instant Messages | N |
| OBJECTREASON | If the document contains redactions, the reason(s) for those redactions. | Hard Copy, Email, Edocs, Text and Instant Messages | Redacted – PHI |
| HASHCODE | Document MD5 or SHA1 hash value (used for de-duplication or other processing) | Email, EDocs, Text and Instant Messages | dl3ldd02c5e6eec5 694d0698aff85c2fs ch58762I7eab4004 5733b8fb789 |
| TEXTLINK | Link to full text or OCR text | Hard Copy, Email, Edocs, Text and Instant Messages | D:\001\RET000005.txt |
| NATIVELINK | Link to associated native file (if produced) | Email, Edocs, Text and Instant Messages | D:\001\ABC000005.xis |

This list of fields does not create any obligation to create or manually code listed fields that are not automatically generated by the processing of documents, that do not exist as part of the original metadata of the document, or would be unduly burdensome or costly to obtain. To the extent that objective metadata (e.g., dates, titles, authors) is coded at the time hardcopy documents are processed, that objective metadata shall be produced with the hardcopy document. Where a Producing Party produces more than one production volume, whether in a single delivery or on a rolling basis over time, that Producing Party shall provide periodic overlays on a reasonable cadence to update the metadata fields ALLCUSTODIANS, ALLFILENAMES, and

ALLFILEPATHS to account for records in later volumes.  If there is a dispute as to the frequency of such overlays, the Parties shall meet and confer to arrive at an agreed resolution.

## VI.    PROVISIONS APPLICABLE TO ALL PLAINTIFFS' PRODUCTIONS[3]

### A.    Production of Metadata and Preservation of Originals

The Parties acknowledge that there are circumstances in which production of metadata or original files for certain documents may be proportional. Where Defendants articulate a need for the re-production of a specific document in an alternative format, or the production of a document's metadata, such re-production and metadata requests to Plaintiffs will not be unreasonably refused. For the avoidance of doubt, to the extent a Party makes a production under Section IV, the Party's preservation obligations with regard to the original underlying documents shall continue.

### B.    Bates Numbering

Each page of a document produced by a Plaintiff will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image or, if produced via PDF, on each page of the document at a location that does not obliterate, conceal, or interfere with any information from the source document. Each file produced in native format will be named according to the next consecutive Bates number. The Bates number will:

- include a prefix that is consistent across the production;
- contain no special characters other than a hyphen or underscore;
- identify the Producing Party; and
- be numerically sequential within a given document.

---

[3] For the avoidance of doubt, all Plaintiffs' productions shall comply with the provisions in this section regardless of whether the productions are made under Section IV (Plaintiffs' Production Format One) or Section V (Plaintiffs' Production Format Two).

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.

C.    Families

Parent-child relationships (e.g., the association between emails and their attachments) will be maintained in the collection and production process to the extent practicable. Attachments will be consecutively produced with the parent email record. If an attachment is privileged, not responsive, or has a technical issue, a slip sheet may be inserted in the production.

D.    Hyperlinked Documents

Except as required in this section, this Order imposes no obligation on a Party to manually locate, collect, or associate a hyperlinked document with the message containing the hyperlink.

A Receiving Party may request a manual search for contemporaneous versions of hyperlinked documents that are likely to be material to the Party's preparation of its case. Any such reasonable and particularized request shall provide a list of requested individual hyperlinks or sufficient information to identify requested hyperlinks (with the Beginning Bates and Bates pages on which the individual hyperlinks appear) by email to the Producing Party's counsel, capped at 300 individual hyperlinks being open for inquiry at any one time, absent a showing of good cause and extenuating circumstances that require additional hyperlink inquiries to be opened and resolved on an expedited basis. A Receiving Party shall be limited to 25 individual hyperlink requests directed to each Plaintiff over the course of the litigation and prior to the close of fact discovery for the Plaintiff's case, absent a showing of good cause to expand such limits.

Subject to the above limitations, the Plaintiff shall within 30 days of its litigation counsel's receipt of a Receiving Party's email: (1) produce the version of the hyperlinked document closest

in time that predates the message with the identified hyperlink, or (2) provide an explanation of any inability to produce a hyperlinked document referenced in a message (e.g., the link no longer points to an existing document, the Party no longer has access to the document, etc.), or (3) object to the request with an explanation for the objection. If the Plaintiff is unable to produce a hyperlinked document in response to a Receiving Party's request under this paragraph, the request for that hyperlinked document shall not count against the limitations upon total requests per Producing Party described herein. However, for good cause shown, Plaintiffs may request that a total cap on the number of manual searches be imposed. In addition, upon good cause such as an upcoming deposition, motion, litigation deadline, or other reasonable basis, Defendants may seek an expedited review of up to five (5) hyperlinked documents per Plaintiff at any one time.

E.    Hard Copy Documents

Unless a hard copy document is rendered less intelligible by use of black and white images, all hard copy documents should be scanned as single-page, 300 DPI black and white images and produced as individual, Bates-stamped, searchable PDFs, with each hard copy document being produced as a separate PDF document (i.e., scans of separate hard copy documents shall not be combined in the same PDF).  In the alternative, hard copy documents may be scanned and produced as single-page, Group IV, 300 DPI black and white TIFF images with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). If a hard copy document is scanned in color or rendered less intelligible by use of black and white images, then that document shall be produced in color as set forth below. Documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The OCR software should maximize text quality over process speed. The documents should be logically

unitized (i.e., distinct documents should not be merged into a single record and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks.

Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting 75% or higher. Defendants may also request, in writing, that a Plaintiff produce color images for a reasonable number of selected documents that were originally produced in black and white. Each such color document image file shall be named with the unique Bates number of the first page of the document in question followed by the file extension JPG or PDF. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

F.     Social Media

Plaintiffs may produce responsive social media account records and/or data (e.g., Facebook, Instagram, Parler, LinkedIn, Twitter, MySpace, etc.) in searchable PDF or other fixed-image format.[4] All multimedia, including video or voice recordings, must be produced in native format where reasonably accessible.

G.     Involvement of Plaintiffs' Counsel

Lead Counsel for Plaintiffs and the members of the Plaintiffs' Steering Committee agree to direct all Plaintiffs' counsel to take reasonable steps to direct each individual Plaintiff to comply with this Order when collecting, reviewing, and producing documents. Plaintiffs' counsel agrees to promptly alert Defendants concerning any technical problems associated with any individual Plaintiff's compliance with this Order.

---

[4] While JPEGs are not a reasonably useable format in all circumstances, JPEGs may constitute a reasonably useable format under this provision depending on a particular Plaintiff's circumstances, including, but not limited to, the type and volume of responsive information being produced.

H.      Production Media

Plaintiffs shall produce documents responsive to the document requests contained in Section VI of Case Management Order No. 12 via the Rubris CrossLink platform.

For other document requests, Plaintiffs shall produce documents via a secure file transfer mechanism to be identified by the Parties.

For documents not produced via CrossLink, each piece of Production Media will be assigned a production number, volume name or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production. To maximize the security of information in transit, any media on which documents are produced may be encrypted by a Plaintiff. In such cases, the Plaintiff shall transmit the encryption key or password to the Defendants, under separate cover, contemporaneously with sending the encrypted media.

VII.    MISCELLANEOUS

A.      Modification

Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate. Any Party that seeks to deviate from the procedures and requirements set forth herein must obtain leave of the Court to do so, unless all Parties otherwise consent in writing as to the deviations agreed upon between the Parties, and the deviations agreed upon comport with required Court approvals and Court authority relating to enforcement of same.

B.      Dispute Resolution

The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties should raise the dispute with Special Discovery Master

Stengel. If the parties are unable to resolve the dispute with the assistance of the Special Master, they may seek Court intervention in accordance with the Court's procedures.

      C.      <u>Court Intervention</u>

The Court retains the right to allow, *sua sponte* or upon written motion, disclosure of any subject covered by this Order or to modify this Order at any time in the interests of justice.

**IT IS SO ORDERED**.

/s/*Karen Spencer Marston*

_____
**KAREN SPENCER MARSTON, J.**