IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>MDL No. 3094 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS / ALL CASES* | 2:24-md-03094<br><br>HON. KAREN SPENCER MARSTON |

### SUGGESTIONS FOR SEPTEMBER 3, 2025 CONFERENCE AGENDA

Pursuant to this Court's Order on November 26, 2024 (Doc. No. 298), undersigned counsel met and conferred in anticipation of the September 3, 2025 Conference and jointly suggest the following topics for inclusion on the Court's agenda:

1. **MDL docket overview and update**

2. **Update on state court litigations and other coordination**

3. **Agenda items raised by Plaintiffs' Counsel**

    (a)   **Update on related litigations and discovery.**

Plaintiff Position

Notice of Texas Attorney General's lawsuit filed August 11, 2025, alleging Eli Lilly's violation of Anti-Kickback Statute. Plaintiffs request that Eli Lilly identify treating physicians in the MDL based on the information provided through CMO 12 and the Plaintiff Fact Sheet process that may be subject to the Texas Attorney General claims related to Mounjaro and Zepbound.

Lilly Position

In this new lawsuit, the Texas Attorney General joined with a corporate relator in a 5-year-old case that is part of a larger series of lawsuits brought over a decade that challenge routine medicine support services that Lilly (and more than 30 other pharmaceutical companies) offer to patients. The same relator previously brought nearly identical claims against Lilly in the Eastern District of Texas and the New Jersey Superior Court. Those courts dismissed relator's same claims

under the federal False Claims Act and New Jersey law with prejudice, and both cases were affirmed on appeal.[1] The Eastern District of Texas case against Lilly was dismissed after the United States government took the extraordinary step of requesting dismissal, explaining that "federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication."[2] Relator's 5-year-old case against Lilly (now joined by the Texas Attorney General) relates to the same types of programs, but under Texas state law

Plaintiffs' new request (made for the first time on August 27) for discovery related to the Texas litigation is improper. While the Texas lawsuit now adds allegations about Zepbound and Mounjaro, the proposed discovery is outside the scope of Issue 2 and 3. T. The Texas AG and Relator's case focuses on practices by Lilly "sales reps."[3] This Court has repeatedly "reject[ed] Plaintiffs' assertion that marketing discovery of any kind (whether directed at consumers or physicians) is relevant to early discovery and motion practice on the narrow issues presented at this stage." *See In re GLP-1 RAs Prods. Liab. Litig.*, 2024 WL 4520117, at *7 (E.D. Pa. Oct. 17, 2024); *see also* CMO No. 18 (ECF No. 235) at 9-10 & n.9.

(b)     **Amendment to CMO 16 regarding Communication Process.**

Plaintiff Position

CMO 16 allows each party to submit a three-page letter to Judge Stengel related to discovery matters. During a recent discovery dispute, Plaintiffs supplemented the record with relevant material during the meet and confer process with Judge Stengel prior to his ruling.  Given the complex issues being raised with Judge

---

[1]   *United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 268 (5th Cir. 2021); *U.S. ex rel. HCA v. Eli Lilly & Co., Inc.*, 2018 WL 4026986, at *45 (E.D. Tex. July 25, 2018), report and recommendation adopted, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018); *The State of New Jersey ex rel. Health Choice Grp., LLC v. Bayer Corp.*, 312 A.3d 894, 904 (N.J. Super. Ct. App. Div. 2024).

[2]   *State of New Jersey ex rel. Health Choice Alliance, LLC v.  v. Eli Lilly & Co. Inc.*, (Sup Ct. of N.J. App. Div. No. A-2733-20 N.J. March 1, 2024) Order Affirming Dismissal; *U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co., Inc.*, 2018 WL 4026986 (E.D. Tex. July 25, 2018), *r&r adopted*, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018) Dkt. 8 United States Notice of Election to Decline Intervention.

[3]   *State of Texas ex. rel. Health Choice Alliance, LLC v. Eli Lilly & Co. Inc.*, (Travis County NO. D-1-GN-19-007484 October 10, 2019), Pet. at ¶ 6.; *State of Texas ex. rel. Health Choice Alliance, LLC v. Eli Lilly & Co. Inc.*, (Harrison County NO. 25-0720 August 18, 2025), Pet. at ¶ 17.

2

Stengel, neither party should be limited to a three-page letter submission.

Defendant Position

The parties negotiated the briefing limitations in CMO 16 (ECF 213), including page limitations and a prohibition on replies and sur-replies, that have applied to both parties. With respect to the issue identified by Plaintiffs, Plaintiffs had submitted to Judge Stengel briefing on the issue in December 2024 and early July 2025. Judge Stengel then heard argument on the issue and agreed to allow the parties to submit post-argument briefs. More than ten days after that post-argument briefing was completed, Plaintiffs then sought permission to supplement the record with a declaration from an expert to support their original motion.

Defendants believe that such attempts to continue litigating after briefing is closed are not consistent with CMO 16's prohibition on reply and sur-reply briefs, and delay resolution of discovery issues. Additional evidence or argument submitted after CMO No. 16 briefing is completed should be limited to those situations where the supplementing party has shown good cause why such material could not have been previously submitted.

(c)     **Addressing Documents Filed Under Seal.**

Plaintiff Position

CMO 11 outlines the process in which confidential documents shall be filed on the public docket and the parameters in which they should remain sealed. While Plaintiffs have been accommodating to Defendants' requests to deviate from CMO 11 in the past, Plaintiffs intend to follow the agreed to terms of CMO 11 moving forward in the MDL.

Defendant Position

Many of the documents produced in this litigation contain confidential or highly confidential information, including Defendants' information regarding relatively new medicines in a highly competitive market, and personally identifying health information of Plaintiffs and third parties. Defendants believe it is imperative and fair that all parties take care to appropriately limit the submission of documents marked confidential or highly confidential in connection with motions or other filings. This is consistent with the Court's Sealing Order, which requires the parties to "explore all reasonable alternatives to filing documents under seal…" CMO 11, Exhibit B (ECF 187-2), at ¶ 1. Thus far, to the extent the parties have included lengthy exhibits in filings that would require sealing, they have agreed to replace those filings with excerpts that are relevant to the issue before the Court and would avoid sealing.

Taking this reasonable excerpting approach to the filing of confidential materials is consistent with the Sealing Order and Third Circuit jurisprudence. These

procedures will facilitate prompt public access to documents while balancing the confidential and sensitive nature of the materials in this litigation. It also avoids the risk that this litigation becomes a tool to publicize confidential materials that are not part of the Court's decision-making process.

(d)     **483 Discovery Update.**

Plaintiffs and Novo have been working to efficiently have documents produced using the TAR process and coordinating depositions related to the 483 issue.

(e)     **Marketing Discovery.**

Plaintiff Position

Throughout the course of discovery Plaintiffs have learned that certain individuals working in the marketing departments of Eli Lilly and Novo Nordisk have essential factual information related to issues 2 and 3. In particular, Plaintiffs identified two individuals working for Novo Nordisk that were active members of the company's safety committee at the time it concluded that "Delayed Gastric Emptying" should be included as an adverse event on the worldwide labels of Novo's GLP-1RA drugs containing Semaglutide. Plaintiffs have asked for the custodial files and deposition dates for these individuals.

Likewise, Plaintiffs learned in the recent Bailey deposition that unidentified individuals in Marketing were involved in the creation of the labels at issue in this case. Plaintiffs have requested the names and custodial files for these individuals. Plaintiffs expect that they may ultimately seek the deposition of these individuals once their documents are reviewed.

Plaintiffs base both of these requests on the Court's Order on Marketing Discovery notwithstanding the titles of the individual employees or the department where they work. See ECF. 276 at 19-20, October 17, 2024. Plaintiffs are not seeking traditional marketing discovery. The custodians at issue are members of safety committees with various roles and duties related to issues 2 and 3 (i.e., voting whether or not to identify certain injuries as risks of GLP-1 drugs) who happen to have marketing titles.

Lilly Position

Lilly opposes Plaintiffs' attempt to re-open negotiations regarding the identification of custodians.

First, Plaintiffs mischaracterize Ms. Bailey's deposition testimony. She did not testify that "individuals in Marketing were involved in the creation of the labels at issue in this case." Instead, she testified that members of the marketing team were consulted regarding labeling so that they had awareness of what was going to be in the label. Plaintiffs then showed the witness specific communications related

4

to Canadian safety labeling, for different products Lilly co-promoted with another pharmaceutical company, from 2010—years before the products at issue in this litigation were approved or marketed. Neither Bailey's testimony nor the documents Plaintiffs referred to show that anyone from Lilly's marketing team made decisions about or were involved in creating the safety labels for the products at issue in this case. Plaintiffs' request thus is not likely to benefit resolution of Issues 2 or 3 and so is not proportional to the needs of the case.

Second, over the last year, Lilly has produced significant volumes of materials related to labeling for the relevant products, including from the safety and regulatory custodians and labeling committees that had decision-making authority over those labels. Lilly's productions have also included hundreds of thousands of pages of marketing-related documents. To the extent Plaintiffs want to request custodial files from any of the individuals involved in the labeling process—whether marketing or otherwise—Plaintiffs have had access to the materials showing that involvement for up to a year and long ago could have made specific requests to add those custodians, up to the parties' agreed upon custodian limit, if they believe they are relevant to this phase of this litigation.

Third, the parties spent months during the fall of 2024 discussing relevant categories of potential document custodians related to the cross-cutting issues. In addition, in December 2024, Lilly informed Plaintiffs that it takes 60-90 days from the time Plaintiffs request a custodian to when Lilly can produce that custodian's data. With fewer than 60 days until the extended close of fact discovery, Plaintiffs' new request for Lilly to first identify and then produce the custodial files for an entirely new category of custodian is untimely, and there is no good reason Plaintiffs failed to raise it earlier, especially given Lilly's production of documents related to these issues months ago. Ultimately, Plaintiffs' open-ended, eleventh-hour request to start the process of identifying a new category of potential custodians appears to be little more than an attempt to further delay the close of fact discovery.

<u>Novo Position</u>

Novo has already made a substantial production of materials pertaining to the safety committees, including 29,234 documents that reference "safety committee" and safety committee meeting minutes and ad hoc decisions dating from April 2001 through November 2024. In addition, Plaintiffs have already deposed individuals who also attended safety committee meetings and are scheduled to depose voting members of "safety committees." Further, any discovery related to Novo's marketing of GLP-1 medications exceeds the scope of issues identified by Case Management Order No. 18 ("CMO 18"). The marketing-related work of the requested custodians is not relevant to Issues 2 or 3. Marketing of the medications at issue has no connection with the adequacy of warning labels, the applicability of the preemption doctrine or general causation.

5

Finally, Plaintiffs' request for marketing-related discovery is not timely – coming just eight weeks before the October 24 discovery cut-off.  Indeed, it may not be possible to collect, review and produce additional data before the October 24, 2025 deadline, let alone allow time for the depositions Plaintiffs purportedly want to take. Moreover, documents identifying the two "newly identified" marketing custodians as members of safety committees were produced no later than February 22, 2025. Plaintiffs offer no excuse for why it took so long to identify these two individuals or how their documents or testimony would be unique. Accordingly, Plaintiffs last-hour request for additional discovery on "safety committees" is unnecessary, untimely and runs afoul of Case Management Order No. 18.

(f)     **Document Retention Policies.**

Plaintiff Position

Eli Lilly has informed Plaintiffs that their retention policies outside of the United States automatically deleted relevant discovery material prior to a litigation hold being put in place, which has resulted in certain custodial files missing documents.  Plaintiffs requested a copy of Eli Lilly's retention policy for the affected custodians and whether or not the deleted discovery material is accessible.  Plaintiffs are awaiting further information from Novo regarding this issue.

Lilly Position

Plaintiffs' position mischaracterizes the issue.  In connection with one potential deponent, Lilly informed Plaintiffs that the deponent has been on legal hold since prior to the start of the litigation and all of her data that existed at that the time the ligation started and since then has been preserved and searched consistent with the parties' discovery agreements.  This corpus of data searched for the witness includes hundreds of thousands of documents, including substantival volumes of email, going back to prior to 2006.  To be transparent, Lilly acknowledged that in the years prior to the start of this litigation (and any preservation obligation related to this litigation arose), some of the deponent's email would have been automatically deleted in connection with Lilly's standard retention policies. However, this acknowledgment does not indicate that any data subject to a preservation obligation is missing.

On August 22, Lilly confirmed that no additional data exists for the deponent (whether accessible or inaccessible) and objected to Plaintiffs' request for the outside-the-United States retention policies as impermissible discovery-on-discovery.

Novo Position

Novo is preparing a response to Plaintiffs' recent inquiry, reminding Plaintiffs

6

that they have not suggested Novo failed to comply with its duty to preserve evidence, but, instead, seem to be signaling that they would like to obtain discovery on whether unidentified documents from unidentified sources on unidentified subjects may have been deleted in the ordinary course of business before the duty to preserve even arose. Plaintiffs are well aware of the steps Novo has taken to preserve relevant evidence. Novo is not aware of any loss of potentially relevant data that is associated with the 51 custodians that the parties have agreed on or any potentially relevant non-custodial data sources, nor have Plaintiffs identified or alleged any such loss.

(g)     **Update on Depositions.**

| Deponent<br>*Lilly in Italics*<br>**Novo in Bold** | Date/Location |
|---|---|
| **Soren Lilleore** | June 6<br>Copenhagen |
| *Brad Woodward* | June 13<br>Indianapolis |
| **Marco Bo Hansen** | June 13<br>Copenhagen |
| *Jennie Walgren* | July 24<br>Indianapolis |
| **Jason Brett** | July 29<br>NYC |
| *Anthony Beardsworth* | July 30<br>Indianapolis |
| **Michael Radin** | July 31<br>NJ |
| *Ricardo Fonseca Martins* | New date pending |
| *Jeff Emmick* | August 13<br>Indianapolis |
| *Francene Bailey* | August 14<br>Toronto |
| **Rubdeep Bindra Singh** | August 15<br>NYC |
| *Sue Sutton* | August 21<br>Indianapolis |
| *Ingrid Hensley* | August 22<br>Indianapolis |
| *Sherry Martin* | August 26<br>Indianapolis |
| *Jacek Kiljanski* | August 28<br>Indianapolis |
| *Laura Fernandez Lando* | September 5<br>Indianapolis |
| *Omalara Adentunji* | September 10<br>Indianapolis |

| | |
|---|---|
| *Syed Hassan* | September 17<br>London |
| *Elvis Twum* | September 19<br>London |
| **Lotte Knudsen** | September 26<br>Boston |
| **Trine Kruse** | October 9<br>Copenhagen |
| **Karsten Lollike** | October 10<br>Copenhagen |
| **Afsaneh Abbariki** | October 17<br>Copenhagen |
| **Stephanie DeChiaro** | October 21<br>NJ |
| **Milos Marinkovic** | October 23<br>Copenhagen |
| **Lise Grimmeshave** | October 24<br>Copenhagen |

Dated: August 28, 2025                           Respectfully submitted,

*/s/ Loren H. Brown*
Loren H. Brown (admitted *pro hac vice*)
Lucas P. Przymusinski (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4846
Facsimile: (212) 335-4501
loren.brown@us.dlapiper.com
lucas.przymusinski@us.dlapiper.com

Ilana H. Eisenstein (PA Bar No. 94907)
Raymond M. Williams (PA Bar No. 90771)
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 606-3301
ilana.eisenstein@us.dlapiper.com
raymond.williams@us.dlapiper.com

Matthew A. Holian (admitted *pro hac vice*)
Katherine W. Insogna (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110

Telephone: (617) 406-6000
Facsimile: (617) 406-6100
matt.holian@us.dlapiper.com
katie.insogna@us.dlapiper.com

*Attorneys for Defendants*
*Novo Nordisk A/S and Novo Nordisk Inc.*

*/s/ Samuel W. Silver*
Samuel W. Silver (PA Bar No. 56596)
Catherine M. Recker (PA Bar No. 56813)
Bruce P. Merenstein (PA Bar No. 82609)
Abigail T. Burton (PA Bar No. 334450)
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
ssilver@welshrecker.com
cmrecker@welshrecker.com
bmerenstein@welshrecker.com
aburton@welshrecker.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Renee D. Smith (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Mark Premo-Hopkins (admitted *pro hac vice*)
**KIRKLAND & ELLIS**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.hurst@kirkland.com
renee.smith@kirkland.com
diana.watral@kirkland.com
mark.premohopkins@kirkland.com

Jonathan M. Redgrave (admitted *pro hac vice*)
Erica B. Zolner (admitted *pro hac vice*)
**REDGRAVE LLP**
4800 Westfields Blvd. | Suite 250
Chantilly, VA 20151
(703) 592-1155
jredgrave@redgravellp.com
ezolner@redgravellp.com

*Attorneys for Defendant Eli Lilly & Company*

9

/s/ Parvin K. Aminolroaya
Parvin K. Aminolroaya (admitted *pro hac vice*)
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
paminolroaya@seegerweiss.com

/s/ Jonathan Orent
Jonathan Orent (admitted *pro hac vice*)
**MOTLEY RICE LLC**
40 Westminster Street, 5th Floor
Providence, RI 02903
Telephone: (401) 457-7700
jorent@motleyrice.com

/s/ Sarah Ruane
Sarah Ruane (admitted *pro hac vice*)
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: (813) 701-1123
sruane@wcllp.com

/s/ Paul Pennock
Paul Pennock (admitted *pro hac vice*)
**MORGAN & MORGAN**
199 Water Street, Suite 1500
New York, NY 10038
Telephone: (212) 738-6299
ppennock@forthepeople.com

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, a true and correct copy of the foregoing Suggestions for September 3, 2025 Conference Agenda was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

                                                    */s/ Loren H. Brown*
                                                    Loren H. Brown