# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION | : : : : | CIVIL ACTION<br><br>MDL No. 3094<br>2:24-md-03094-KSM |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS / ALL CASES* | : : : : : | HON. KAREN SPENCER MARSTON |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' OBJECTION TO SPECIAL MASTER LAWRENCE STENGEL'S REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION OF ANIMAL HISTOPATHOLOGY SLIDES**

**INTRODUCTION**

After considering nearly a dozen submissions and holding several conferences, Special Master Stengel found that, while animal histopathology slides requested by Plaintiffs (the "Slides") "could hypothetically be relevant," Plaintiffs offered only "theoretical usefulness" here. ECF No. 490. Further, he found that production would pose substantial burdens on both (1) the Defendants—who would need to engage in a painstaking process to produce the Slides, and (2) the MDL—the schedule of which would have to be disrupted. Given the "marginal" relevance and "hypothetical significance," Judge Stengel held the balance of Rule 26 factors require denying Plaintiffs' request.

Plaintiffs' objections to the Report and Recommendation reprise the same arguments they made in earlier briefing regarding (1) relevance and burden, (2) other MDL discovery rulings, and (3) Plaintiffs' delay. Judge Stengel's findings of fact and conclusions of law are correct and consistent with the record, as well as other MDL courts' similar rulings, and this Court should adopt them. *See* Attachment 1, *In re Gardasil*, MDL No. 3036, ECF No. 166, at 55.

**I.    Plaintiffs Failed to Establish Importance and Likely Benefit of Slide Discovery to Overcome the Disproportionate Burden of the Discovery.**

Plaintiffs' failure to establish that the Slides will actually—rather than merely hypothetically—be important to the case should, without more, defeat Plaintiffs' request. Further, any hypothetical importance of the Slides is also greatly outweighed by the burden on Defendants and the current schedule. This is especially true where Defendants have produced tens of millions of pages relating to the safety of the products at issue here, including animal and clinical studies conducted over more than 20 years and more than a decade of real patient use. ECF 490 at 6, 11.

**Plaintiffs have failed to demonstrate the importance of the Slides.**  Plaintiffs generically say animal study slides are important for identifying "possible safety signals" and "evaluation of

causation." Pl. at 2. But they have not identified what they expect the thousands of Slides from 22 studies here to show that has not already been addressed by the hundreds of thousands of pages of materials related to more than 600 animal studies—including protocols, study reports with extensive appendices of specific findings, and communications with FDA about those studies—that Defendants already have produced.

*First*, after allowing Plaintiffs to supplement the record with a new expert declaration well after briefing had closed, Judge Stengel found that Plaintiffs' expert, Dr. O'Brien, did not "lay[] out the relevance of pathology in relation to the injuries at issue." Pl. at 2 n.2.[1] Plaintiffs do not address Judge Stengel's recognition that, while the report may provide some "theoretical usefulness of the Slides," it lacks "sufficient detail as to why the Slides" would "impact the analysis." ECF 490 at 8.

*Second*, Plaintiffs speculate that the Slides *might* show that FDA was not fully informed about the alleged injuries here. Pl. at 2-3. But Plaintiffs' urge to "double-check the Defendants' reports could render almost anything" related to GLP-1 RAs "conceptually relevant," but "[w]hat the Slides will add to the double-checking process other than one more opportunity to capture a potential inconsistency is unknown." ECF 490 at 9. Plaintiffs' conjecture is even more problematic here, where Plaintiffs do not explain what information from the Slides would be material to FDA's analyses. Plaintiffs' argument that they need not show importance yet because they cannot tell what Defendants allegedly "missed or failed to properly interpret" until after their experts "lay eyes on the slides" is backward. Pl. at 3. As the party "claiming that a request is important to

---

[1] *See* Attachment 2, Ex. 27, 8/11/25 Def. Br. at 1-2. Dr. O'Brien does not cite any specific study or tissue type requested by Plaintiffs. It is unclear whether he has read the reports for those studies at all. And his discussion of the theoretical importance of "interstitial cells of Cajal" (ICC) and "Brunner's gland hypertrophy" does not connect those concepts to Plaintiffs' alleged injuries or offer an opinion that the requested scans of any existing pathology slides would show ICC or changes in ICC. For the Court's reference, Defendants are providing a comprehensive compendium of the materials related to this issue. For ease of review, Defendants are providing these materials in chronological order with an index for easy Court referencing.

2

resolve the issues," it is Plaintiffs who "should be able to explain the ways in which the underlying information bears on the issues." Rule 26, Adv. Cmmt. Notes (2015 Amend.).

*Third*, Plaintiffs' cited documents do not suggest misrepresentations. Pl. at 3. Plaintiffs argue these documents show Lilly provided incomplete information and Novo used "contradictory language." Pl. at 3 n.5. Instead, the documents reflect Lilly's productive scientific exchange with FDA regarding the data reported for a particular study, thus confirming FDA's extremely close review of such materials, and Novo's accurate conclusion, that certain findings do not pose a safety concern in humans, is important information for FDA. *See* Attachment 2, Ex. 22, 7/28/25 Ltr. at 2. Ultimately, Plaintiffs have offered nothing "that sets forth why the Slides had any particular importance to FDA's analysis or that suggests they are likely to contain an inconsistency." ECF 490 at 10.

**Undue burden**. While the relevance of the Slides is hypothetical, the burden posed by production is known and substantial. ECF 490 at 10.[2] *First*, Plaintiffs do not dispute that the production of slides "is not simply a matter of handing over digitally collected evidence," and must be made pursuant to a specific agreed-upon protocol that maintains the integrity of the physical animal tissue while using specialized microscopic scanning equipment. ECF 490 at 10; *see also* Attachment 2, Ex. 19, 7/21/25 Ltr. at 3. Given the more than 10,000 estimated Slides at issue, the burden is immense by any measure. And Plaintiffs' fail to show the "likely" (not theoretical) benefit to justify it. *See* Rule 26(b)(1). Ultimately, given the "backdrop of extensive animal and clinical studies and in light of the length of time these medications have been used by patients, the

---

[2] Plaintiffs wrongly suggest that the burden has shifted to Defendants to show that Slide discovery is disproportionate. Pl. at 1, n.1. In this context, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)." *Wright v. City of Philadelphia*, 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017) (J. Pratter). As discussed above, Plaintiffs have failed to show that the Slides are important for or have any likely benefit to the litigation. *See* Rule 26(b)(1). But even if they had, Defendants have shown that the burden of the discovery outweighs any marginal benefit it might have.

3

burden on the Defendants to produce these slides outweighs the theoretical, possible significance of the Slides in the Plaintiffs' inquiry into the validity of the peer reviewed findings based on the animal studies." *See* ECF 490 at 6-7.

*Second*, this burden is "only magnified" here because the Slides cannot be produced "within the remaining timeframe for discovery." ECF 490 at 10-11.[3] Thus, production would require a schedule extension, which Plaintiffs have not requested, s*ee* Pl. at 5 n.11, and which would be contrary to this Court's admonitions regarding further extensions. ECF 490 at 10-11; *see infra* III.

## II. Judge Stengel's Report Is Consistent with *Gardasil* And Other MDL Court Orders.

Plaintiffs attempt to distinguish this case from *Gardasil,* where Plaintiffs offered "very similar nonspecific justification" for slide production, fails. ECF 490 at 8. Contrary to Plaintiffs' argument, Pl. at 4 n.8, the *Gardasil* Plaintiffs did make a relevance argument—saying they needed slides to assess reproductive issues related to Plaintiffs with reproductive injuries. Attachment 1, *Gardasil* Tr. at 47-48. But that argument (like here) was simply "too far afield and too much of a snipe hunt" to justify production. *Id.* at 55.

Plaintiffs' reliance on other MDLs is misplaced. Plaintiffs inaccurately cite to three orders they claim showed slide production was ordered. Pl. at 4. But the cited orders merely note that some slides were produced in those cases without discussing why or what precipitated that production (or if it was even opposed).[4] In the fourth case, the Court ordered production of slides

---

[3] Plaintiffs are wrong to argue they have no information regarding the number of Slides at issue. Pl. at 4 n.7. Each produced animal study report includes details regarding the number of animals in each study and the types of slides that were created for each animal. Defendants have used this information—which has been available to Plaintiffs since the summer of 2024—to estimate the number of Slides at issue in Plaintiffs' request.

[4] *See In re Proton Pump Inhibitor ("PPI") Prods. Liab. Litig.,* 2022 WL 18999830 at *36 (D.N.J. Dec. 5, 2022) (referencing expert review of pathology slides in Rule 702 opinion and noting plaintiffs had disclaimed use of "animal evidence to prove general causation"); *In re Diet Drugs*, 2001 WL 454586, at *12 (E.D. Pa. Feb. 1, 2011) (referencing expert review of animal pathology but excluding methods as unreliable); *In re Accutane Trial*, 2008 WL 5611668 (N.J. Super. Ct.) (testimony of defense expert describing review of pathology slides).

4

for a single tissue type, from a single study referenced in a material regulatory decision, and with a clear explanation of the importance of the slides' showing of tumors or adenomas. *See In Re Roundup Prod. Liab. Lit.*, MDL No. 2741, ECF Nos. 257, 297 (N.D. Cal. 2017).

In short, Plaintiffs "cite to no instance or case in which histopathological slides of this nature and involving this level of burden were ordered to be produced by a court." ECF 490 at 8.

### III. Plaintiffs' Delay Provides Additional, Independent Reasons to Deny the Discovery.

Plaintiffs first raised the Slides back in September 2024, and during the global meet and confer with Judge Stengel in January 2025, Plaintiffs first agreed to provide "an explanation as to why the specific materials requested are relevant to the injuries alleged." Attachment 2, Ex. 8, 1/7/25 Email. When the parties met and conferred in April 2025 to further discuss this issue, Plaintiffs again promised to provide both a more detailed scanning protocol and the explanation of importance of the Slides to Plaintiffs' injuries. Attachment 2, Ex. 17, 7/3/25 Email. Yet Plaintiffs did not provide a more detailed scanning protocol until the end of June, and they never provided the explanations they had promised. Instead, they waited until July 8—after the original close of fact discovery and well after the Court cautioned against future schedule extensions absent "extremely good cause"—to ask Judge Stengel to compel production even without that explanation. Plaintiffs' failure to timely pursue the Slides underscores that they "are not particularly important to the litigation." ECF 490 at 10-11. And their lack of diligence and non-compliance with the Court's scheduling order is an independent reason to deny the discovery. CMO 23 (ECF No. 368); Fed. R. Civ. P. 16(b)(4), 16(f)(1)(C).

### CONCLUSION

For these reasons, Defendants respectfully requests the Court overrule Plaintiffs' Objections and adopt Judge Stengel's Report and Recommendation.

5

Respectfully submitted,

| | |
|---|---|
| */s/ Loren H. Brown* | */s/ Samuel W. Silver* |
| Loren H. Brown | Samuel W. Silver (PA Bar No. 56596) |
| Lucas P. Przymusinski | Catherine M. Recker (PA Bar No. 56813) |
| **DLA Piper LLP (US)** | Bruce P. Merenstein (PA Bar No. 82609) |
| 1251 Avenue of the Americas, 27th Floor | Abigail T. Burton (PA Bar No. 334450) |
| New York, NY 10020 | **Welsh & Recker, P.C.** |
| Telephone: (212) 335-4846 | 306 Walnut Street |
| Facsimile: (212) 335-4501 | Philadelphia, PA 19106 |
| loren.brown@us.dlapiper.com | Telephone: (215) 972-6430 |
| lucas.przymusinski@us.dlapiper.com | Facsimile: (985) 617-1021 |
| | ssilver@welshrecker.com |
| Ilana H. Eisenstein (PA Bar No. 94907) | cmrecker@welshrecker.com |
| Raymond M. Williams (PA Bar No. 90771) | bmerenstein@welshrecker.com |
| Rachel A.H. Horton (PA Bar No. 316482) | aburton@welshrecker.com |
| **DLA Piper LLP (US)** | |
| 1650 Market Street, Suite 5000 | James F. Hurst, P.C. |
| Philadelphia, PA 19103 | Renee D. Smith |
| Telephone: (215) 656-3300 | Diana M. Watral, P.C. |
| Facsimile: (215) 606-3301 | **Kirkland & Ellis LLP** |
| ilana.eisenstein@us.dlapiper.com | 333 West Wolf Point Plaza |
| raymond.williams@us.dlapiper.com | Chicago, IL 60654 |
| rachel.horton@us.dlapiper.com | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| Matthew A. Holian | james.hurst@kirkland.com |
| Katherine W. Insogna | renee.smith@kirkland.com |
| **DLA Piper LLP (US)** | diana.watral@kirkland.com |
| 33 Arch Street, 26th Floor | |
| Boston, MA 02110 | Mark Premo-Hopkins, P.C. |
| Telephone: (617) 406-6000 | **Kirkland & Ellis LLP** |
| Facsimile: (617) 406-6100 | 555 California Street, |
| matt.holian@us.dlapiper.com | San Francisco, CA 94104 |
| katie.insogna@us.dlapiper.com | Telephone: (415) 439-1400 |
| | mark.premohopkins@kirkland.com |
| *Attorneys for Novo Nordisk A/S and* | |
| *Novo Nordisk Inc.* | *Attorneys for Defendant Eli Lilly and Company* |

6

**CERTIFICATE OF SERVICE**

 I hereby certify that on September 23, 2025, a true and correct copy of the foregoing Defendants' Joint Response to Plaintiffs' Objection to Special Master Lawrence Stengel's Report and Recommendation Regarding Plaintiffs' Request for Production Of Animal Histopathology Slides was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

              */s/ Samuel W. Silver*
              Samuel W. Silver