IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | : : : : : : : : : : : | CIVIL ACTION<br><br>MDL No. 3094<br>24-md-3094<br><br>HON. KAREN SPENCER MARSTON |
| THIS DOCUMENT RELATES TO: | | |
| *ALL ACTIONS/ALL CASES* | | |

**ORDER**

**AND NOW**, this 16th day of October, 2025, upon consideration of the letter briefs submitted to Chambers on September 15 and 19, 2025, and the arguments made by counsel at the status conference on September 30, 2025, the Court finds as follows:

1.  Plaintiffs challenge entries on the privilege log submitted by the Eli Lilly Defendants.[1]  Pls.' Letter Br. at 3 (Sept. 15, 2025).  Those entries relate to communications sent to the listserv, "mslillydiabetesteam@publicisgroupe.net" (the "MSL Listserv").  *Id.* at 1.  MSL Group is a public relations firm that is part of the French multinational company Publicis Groupe.  *Id.* at 1 n.1.  Since 2016, Lilly has contracted with MSL Group for PR services, including "drafting, reviewing, revising, and coordinating the legal, medical, and regulatory review of public communications."  Defs.' Letter Br. at 1 (Sept. 19, 2025).  To facilitate this work, MSL Group created the MSL Listserv, using it to circulate draft press releases and when obtaining and implementing legal advice on Lilly's behalf.  *Id.*  Lilly claims 94 of these communications are protected from disclosure by the attorney client privilege.  *Id.*

---

[1] The Eli Lilly Defendants are Eli Lilly and Company and Lilly USA, LLC.  (*See* Doc. No. 294 at ¶¶ 20–21.)  The Court will refers to them collectively as "Lilly" in this Order.

2. "The attorney-client privilege protects communications between attorneys and clients from compelled disclosure." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). The privilege covers: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id.* (quoting Restatement (Third) Governing Lawyers § 68 (2000)).[2] Lilly, as the proponent of the privilege, has the burden of persuasion as to each element. *See Hurt v. Phila. Hous. Auth.*, No. 91-cv-4746, 1994 WL 263714, at *1 (E.D. Pa. June 8, 1994).

3. Courts have long recognized that attorney communications with corporate clients, like those with natural persons, are privileged. *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 360; *see also* Restatement (Third) Governing Lawyers § 73 ("When a client is [an organization], the attorney-client privilege extends to a communication that: (1) otherwise qualifies as privileged . . .; (2) is between an agent of the organization and a privileged person . . . ; (3) concerns a legal matter of interest to the organization; and (4) is disclosed only to: (a) privileged persons . . . ; and (b) other agents of the organization who reasonably need to know of the communication in order to act for the organization."). Such communications, like all privileged discussions, must be made "in confidence," meaning that "if persons other than the client, its attorney, or their agents are present, . . . the privilege does not attach." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 361. A corollary to this principle is that "if a client subsequently

---

[2] Lilly recognizes that "choice-of-law questions regarding attorney-client privilege present a 'thorny issue' in the multidistrict litigation context." Defs.' Letter Br. at 2 n.1 (Sept. 19, 2025). It suggests the court need not decide those questions here, however, because "there are no material differences between Indiana law, which is the law of the state with the most significant relationship to the communications, and the federal common law." *Id.* Given this representation and the lack of meaningful analysis on choice of law by any of the parties, this Court looks to the Third Circuit opinions discussing the privilege, with due consideration to the persuasive authority from courts applying state law.

shares a privileged communication with a third party, then it is no longer confidential, and the privilege ceases to protect it." *Id.*; *see also* Restatement (Third) Governing Lawyers § 79 ("The attorney-client privilege is waived if the client, the client's lawyer, or another authorized agent of the client voluntarily discloses the communication in a nonprivileged communication.").

4. Here, Plaintiffs do not appear to dispute that the 94 challenged communications were made between privileged persons—i.e., "the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation," *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359 (quoting Restatement (Third) Governing Lawyers § 70)—and were made for the purpose of "obtaining or providing legal assistance," *id.* (quoting Restatement (Third) Governing Lawyers § 68). Instead, Plaintiffs challenge Lilly's ability to show that the communications were made "in confidence" and remained confidential given that Lilly cannot identify which individuals were part of the MSL Listserv during the relevant period. *See generally* Pls.' Letter Br. (Sept. 15, 2025).

5. At least one court has held that a litigant cannot prove confidentiality when the communication at issue is sent to a distribution list with unknown members. *See In re Dealer Mgmt. Sys. Antitrust Litig. (Dealer I)*, MDL No. 2817, No. 18-cv-864, 2020 WL 7865912, at *2 (N.D. Ill. June 29, 2020) (finding corporate defendant failed to show attorney client privilege protected 51 entries on its privilege log—entries in which "recipients of the email distribution lists have not been identified" or "the email distribution lists are no longer" active—because if the company could not "even identify who the email went to, then [it was] not going to be able to identify privilege"); *In re Dealer Mgmt. Sys. Antitrust Litig. (Dealer II)*, MDL No. 2817, No. 18-cv-864, 2020 WL 7865913, at *3 (N.D. Ill. Oct. 13, 2020) ("It does not matter whether the

documents transmitted were privileged at one time because Cox cannot establish that any other privilege was maintained when the documents were sent to unknown people.").

6. Here, Lilly argues that this case is distinguishable from cases like *Dealer* because although Lilly cannot identify the "specific names of all members of the MSL List[serv] during the relevant time periods," it can nevertheless show that the communications were made in confidence and that confidentiality was maintained. Defs.' Letter Br. at 1 (Sept. 19, 2025). Lilly notes that regardless of which individual employees were part of the MSL Listserv, MSL Group and its employees are generally barred under the parties' Master Services Agreement ("MSA") from sharing Lilly's "confidential information or data, except with personnel who 'need to know' the information for purposes of their work on behalf of Lilly." *Id.*; *see also id.* at 3 ("In other words, the very nature and purpose of the MSL List[serv] is such that any MSL personnel who would have been on the list were qualified to participate in privileged communications about MSL's work for Lilly.").

7. The Court agrees that Lilly's failure to identify the individual employees on the MSL Listserv does not necessarily foreclose its assertion of privilege. *See Post v. Killington, Ltd.*, 262 F.R.D. 393, 401 (D. Vt. 2009) (finding attorney client privilege covered communications to email listserv—even though the plaintiffs could not identify the identities of all individuals who were members of the listserv at any one time and there was some proof that at least one non-class member joined the listserv before being removed—because the plaintiffs took "reasonable steps to ensure the confidentiality of communications sent via email lists, and their use of such lists is not inconsistent with the preservation of secrecy"); *cf.* Restatement (Third) Governing Lawyers § 71, cmt. c ("Whether the client or other communicating person knew that nonprivileged persons would learn of the communication depends on the specific

4

circumstances. The relevant circumstances are those reasonably evident to the communicating person, not the auditor."). That said, the Court cannot find on the record before us that Lilly has met its burden of showing that the 94 communications at issue were sent in confidence or that confidentiality was maintained.

  8. Although the MSA certainly suggests all communications between employees of MSL Group and Lilly were intended to be confidential, the Court does not find this agreement, which broadly governs the relationship between two multinational companies, is sufficient on its own to show that the specific 94 MSL Listserv communications challenged here were in fact confidential. *See In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 23 (W.D. N.Y. 1997) ("While Plaintiffs have submitted several attorney affidavits in support of their contention that these documents were intended to be confidential, those affidavits do not establish that these communications were kept confidential between only the Plaintiffs and the attorneys."). Unlike the plaintiffs in *Post*, Lilly has not provided any evidence about how the MSL Listserv was created or maintained or even the job titles for the individuals who were likely to be included on it. *Cf. Post*, 262 F.R.D. at 400 (noting that the plaintiffs offered, via affidavit, how subscribers joined and were removed from the listserv and emphasizing that when they joined the listserv they were "instructed to keep communications to the list regarding the litigation confidential and not share the information with non-passholders"). Lilly also has not submitted the communications for *in camera* review, so there is no evidence that, for example, the body of any of the communications stated that they were intended only for privileged persons or that they were to be maintained in confidence. *Cf. id.* at 400 (finding that communications between class members and/or class counsel were "intended to be kept confidential" where the "body of [one] email message itself makes clear that the email was restricted to passholders who were working

5

with counsel to devise a legal strategy," a second email admonished that it was not to be shared with anyone, and the body of a letter noted that it was "only being sent to the members of our legal team").

9. These gaps, when considered in conjunction with Lilly's inability to identify the names of the individuals on the MSL Listserv, show that Lilly has not carried its burden of demonstrating the communications were confidential and that confidentiality was maintained. *See Dealer I*, 2020 WL 7865912, at *2; *Dealer II*, 2020 WL 7865913, at *3; *Hurt*, 1994 WL 263714, at *2 (finding the privilege did not cover documents which were "given to a distribution list of unknown people" and noting that the "documents alone do not provide enough information for the court to determine privilege or to understand the significance or meaning of these cryptic documents").[3, 4]

---

[3] *See also Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 162 F. Supp. 3d 145, 155 (E.D. N.Y. 2016) ("LMI's failure to identify the specific recipients of the logged documents is fatal to LMI's claim of attorney-client privilege . . . ."); *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. at 23 (finding the plaintiffs failed to establish the "confidentiality of the[ challenged] communications has been preserved or maintained" because "[f]or many of these documents there is no indication on the documents as to whom they were distributed"); *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, Civ. No. 3:07-cv-929 (WWE), 2013 WL 6044342, at *6 (D. Conn. Nov. 14, 2013) ("[A]lthough Progressive represents that these documents were sent by IAC counsel to the IAC's members, there is no evidence before the Court as to whom these documents were actually sent. Accordingly, the Court therefore concludes that Progressive has not borne its burden of showing that documents 117 and 119 are protected by the attorney-client privilege."); *In re Pearlman*, No. 6:07–bk–00761 (ABB), 2008 WL 5210838, at *1–2 (Bankr. M.D. Fla. June 9, 2008) (finding attorney failed to establish attorney-client privilege protected email communications that she had with her client because the attorney "provided no explanation of who 'reywal@usa.com'" and similar emails were, and "what relationship, if any, such person[s] or entit[ies] has or had with" the attorney's client).

[4] During oral argument, Lilly suggested that the communications here (i.e., emails sent to a listserv with unknown members) are no different from communications made during a meeting between an attorney and unknown employees of a corporate client. *See* Sept. 30, 2025 Hr'g Tr. at 79:3–80:24. Lilly argued that in the latter situation, "[n]obody would contend [that] by failing to have an attendance list five years ago, and by being unable to say today the people in that room were Tom, Jane, Harry, et cetera, et cetera, that somehow waived the privilege [or] indicated that the privilege never attached in the first place." *Id.* This argument is unpersuasive for two reasons. First, it is not clear that the privilege *would* cover communications made during such a meeting. *See In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. at 23 (finding the privilege did not cover certain documents because Plaintiff had not "supplied

For those reasons, it is **ORDERED** that Plaintiffs' motion is **GRANTED.**  Lilly shall produce the 94 communications by **October 20, 2025.**  The Court makes no ruling on Plaintiffs' request that Lilly also "withdraw all other privilege claims over documents sent to unknown third parties."  Pls.' Letter Br. at 3 (Sept. 15, 2025).  That request is not ripe, and as noted above, whether Lilly can assert privilege over communications "sent to unknown third parties" is a context-specific question.

                                                      **BY THE COURT:**

                                                  */s/ Karen Spencer Marston*
                                                  **KAREN SPENCER MARSTON, J.**

---

any lists as to whom the status reports, newsletters, agendas, and other documents were distributed *nor any attendance sheets* establishing that no one other than the Plaintiffs and their attorneys were present at the various meetings for which the agendas are prepared").  Second, even assuming that the privilege could apply, the case law suggests that—as with communications sent to unknown distribution lists—the question of confidentiality would remain a context-specific endeavor.  *See Doe v. Tippecanoe Sch. Corp.*, No. 4:15-cv-56 (RL) (PRC), 2017 WL 83338, at *2–3 (N.D. Ind. Jan. 10, 2017) (finding the privilege did not apply to documents distributed at a meeting because the "evidence is not clear regarding who was in attendance at the meeting" and there was "no testimony indicating that the audience was restricted . . . or that any measures were taken to keep the meeting or the materials distributed at the meeting confidential").