# KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza
Chicago, IL 60654
United States

Mark W. Premo-Hopkins, P.C.
To Call Writer Directly:
+1 312 862 2706
mark.premohopkins@kirkland.com

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

May 18, 2026

**Re:     MDL 3094—*Eli Lilly and Company and Lilly USA, LLC's Letter Brief Regarding the Scope of Issue 2 Motions.***

Dear Judge Marston:

Since this MDL's inception, the Court has emphasized the need to resolve threshold issues of preemption and warning adequacy: "[I]ssues related to the adequacy of each drug's label and the applicability of the preemption doctrine *are likely to affect most cases, if not every case, in this MDL*."  Dkt. No. 235, Case Management Order ("CMO") 18 at ¶ 14 (emphasis added).  In August 2024, the Court ruled that preemption and labeling adequacy issues—what the Parties and the Court call Issue 2—were "cross cutting" and "worthy of early resolution." *Id*.  In November 2024, Plaintiffs filed an Amended Master Complaint identifying more than a dozen injuries at issue in this MDL.  *See* Dkt. No. 294.  Now, on the eve of the motion deadline, Plaintiffs argue that summary judgment for Issue 2 should be limited to gastroparesis, ileus, small bowel obstruction, and gallbladder injuries, and that Lilly cannot move for summary judgment on other gastrointestinal injuries, pancreatitis, malnutrition, micronutrient deficiencies, Wernicke's Encephalopathy, muscle wasting, dehydration, acute kidney injury, or aspiration.  Plaintiffs are mistaken.

Case Management Order 20 addresses Issue 2 (preemption and warning adequacy) and Issue 3 (general causation) separately.  It limited the *Issue 3* injuries at this stage to gastroparesis, ileus, small bowel obstruction, and gallbladder injuries.  Dkt. No. 282 at 1 n.1.  But it provided no limitation for injuries subject to Issue 2—setting deadlines for fact discovery, expert discovery, and motion practice without any injury-based restriction.  CMO 20 leaves no doubt: Plaintiffs must have developed the evidence now necessary to survive summary judgment on warning adequacy and preemption for *all* injuries, not just the limited set specified for Issue 3.[1]  Lilly respectfully requests that the Court enforce CMO 20 as written—without any injury limitations for Issue 2. *See United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) ("[M]atters of docket control and discovery are committed to the broad discretion of the district court."); Fed. R. Civ. P. 16(f)(1)(C).

---

[1]  During Friday's telephone conference, Plaintiffs incorrectly asserted that Science Day was limited to the Issue 3 injuries.  At Science Day, Plaintiffs made specific reference to warnings or science related to kidney injury, malnutrition, dehydration, and Wernicke's Encephalopathy.

# KIRKLAND & ELLIS LLP

Hon. Karen S. Marston
May 18, 2026
Page 2


*Plaintiffs' Amended Master Complaint Alleges Failure to Warn of Numerous Specific Injuries.* On November 13, 2024, Plaintiffs filed their Amended Master Complaint, which defines the scope of Plaintiffs' failure-to-warn claims. The Table of Contents identifies as separate, specific injuries: gastrointestinal injuries, gastroparesis, ischemic bowel, necrotizing pancreatitis, gallbladder disease, micronutrient deficiencies, Wernicke's encephalopathy,[2] and aspiration of gastric contents. Dkt. No. 294 at i, ¶¶ 41-95 (identifying "Plaintiffs' Injuries" spanning 17 pages). In their Complaint, Plaintiffs concede that many of the gastrointestinal injuries, including malnutrition, arise as sequalae of gastroparesis, which they admit is subject to Issue 2 motion practice. *See, e.g.*, *id.* ¶¶ 434 (identifying conditions such as Wernicke's encephalopathy, malnutrition, dehydration, and micronutrient deficiencies as connected to gastroparesis). But Plaintiffs go on to spend 20 pages emphasizing the contents of Defendants' labeling for each injury, repeatedly alleging that: "at all relevant times, Defendants failed to disclose information regarding the serious risks of" these injuries, that Defendants "knew or should have known there was reasonable evidence of a causal association" for each injury, and that Defendants' "failure to warn of these potential risks prevented patients and doctors from making informed decisions." *See id*. at ¶¶ 463-587; *e.g.*, ¶ 575 ("Had Defendants affirmatively and specifically presented such safety information regarding the risk of Wernicke's with their GLP1-RA drugs to FDA, FDA would have permitted Defendants to add the risk of Wernicke's to the labels of their GLP1-RA drugs.").[3] Plaintiffs' failure-to-warn counts (Counts I and II) further specify the injuries for which Plaintiffs allege Defendants' labels were defective. *See id*. ¶¶ 630, 654 ("gastroparesis; gastroparesis requiring hospitalization or emergency care; refractory gastroparesis potentially leading to debilitating secondary conditions such as Wernicke's encephalopathy; gastroenteritis; micronutrient deficiencies, including but not limited to deficiencies of vitamin C, D, thiamine or B12; hypovitaminosis; cyclical vomiting; bowel/intestinal obstruction/blockage; ileus; DVT and associated pulmonary embolism; gallbladder conditions necessitating surgery; esophageal injury; bowel injury; intraoperative aspiration; acute necrotizing pancreatitis; ischemic bowel; muscle wasting; dehydration and their sequelae").

*The Court's Orders Contradict Plaintiffs' Position.* CMO 18 directed the parties to meet and confer and provide a *joint schedule* for Issue 2 discovery. Dkt. No. 235 ¶ 14. The parties complied, submitting what the Court entered as CMO 20. *See* Dkt. No. 282. CMO 20 makes clear

---

[2] Plaintiffs' Amended Master Complaint defines Wernicke's as a "degenerative brain disorder caused by the lack of vitamin B1" that "is characterized by mental confusion, vision problems, coma, hypothermia, low blood pressure, and ataxia (or lack of muscle coordination)." Dkt. No. 294 ¶ 90.

[3] *See* Dkt. No. 294 ¶ 486 ("gastroparesis and/or harmful delayed gastric emptying"); ¶ 497 ("cyclical vomiting"); ¶ 507 ("gallbladder-related complications"); ¶ 523 ("bowel or intestinal blockage"); ¶ 533 ("ileus"); ¶ 541 ("esophageal injury"); ¶ 548 ("muscle wasting"); ¶ 554 ("dehydration"); ¶ 561 ("ischemic bowel"); ¶ 568 ("necrotizing pancreatitis"); ¶ 575 ("Wernicke's"); ¶ 584 ("pulmonary aspiration").

## KIRKLAND & ELLIS LLP

Hon. Karen S. Marston
May 18, 2026
Page 3

that Issue 3 general causation injuries are limited to gastroparesis, ileus, small bowel obstruction, and gallbladder injuries, *id.* at 1 n.1, but Issue 2 contains no such injury limit.  For ***all injuries as to Lilly***, the fact discovery deadline for Issue 2 was October 24, 2025, expert deadline was January 2, 2026, and the Rule 702 and summary judgment deadlines were May 19, 2026. Dkt. Nos. 508, 566, 610, 658.

*Plaintiffs' Pursuit of Broad Issue 2 Discovery Undermines Their Attempt to Limit Issue 2 at the Motion Stage.*  Plaintiffs pursued broad Issue 2 discovery—far beyond the limited universe identified for Issue 3.  Plaintiffs' document requests sought materials about "gastrointestinal injuries including gastroparesis, intestinal blockage, bowel obstruction, and ileus, and on other injuries caused by or related to gastrointestinal issues, such as malnutrition, dehydration, pulmonary aspiration, pulmonary embolism, deep vein thrombosis, and Wernicke's encephalopathy." Ex. 1, 2024-04-08 Plaintiffs' 1st RFPs to Lilly, No. 18.  Lilly understood and agreed to search and produce documents for "injuries Plaintiffs allege in their complaints." Ex. 2, 2024-05-30 Lilly Resp. to 1st RFPs, No. 2.  The parties then documented search terms demonstrating that injuries alleged in the Amended Master Complaint were part of Issue 2 discovery.  The following terms exemplify the agreed-upon scope—well beyond the Issue 3 injuries:

- "severe gastrointestinal" OR "severe GI" OR ("severe Abdom*" W/5 Pain*) OR ("severe Abdom*" W/5 Discomfort*) OR ("severe Abdom*" W/5 Stasis) OR "severe nausea" OR "severe vomiting" OR "projectile vomiting" OR "severe diarrhea" OR ("Severe gastr*" W/2 Disfunction) OR ("Severe gastr*" W/2 Dysfunction)

- dehydrate* OR "delayed gastric" OR "delays gastric" OR encephalopathy OR epigastric

- thiamin OR thiamine OR Wernicke OR Micronutrient*

Lilly's document productions also included more than 98,000 documents that hit on the term "pancreatitis."  And more than 100,000 documents produced hit on the term "kidney" OR "renal." These results are not surprising given that the labels for Trulicity, Mounjaro, and Zepbound have always included warnings of potential risk of pancreatitis as well as kidney/renal injuries.

The MedDRA dictionary search terms the parties agreed upon for Lilly's safety system further reinforce the scope of injuries subject to Issue 2 discovery.  These included various combinations of Abdominal Pain, Vomiting, and Nausea; Dehydration; Dietary deficiency; Malnutrition; Muscle weakness conditions; Sarcopenia; Unspecified nutritional deficiency; Vitamin related disorders; Wernicke-Korsakoff syndrome; and Wernicke's encephalopathy.

## KIRKLAND & ELLIS LLP

Hon. Karen S. Marston
May 18, 2026
Page 4

Plaintiffs then questioned Lilly and Novo fact witnesses during depositions about injuries outside those specified for Issue 3.  For example, Plaintiffs questioned Lilly's Dr. Anthony Beardsworth about warnings related to Wernicke's and malnutrition.  Ex. 3, Beardsworth Tr. 292:15-23 ("Q: at any time has -- has Lilly with respect to dulaglutide or tirzepatide submitted a warning to the FDA for Wernicke's enceph- -- encephalopathy?"); 349:11-19 (asking whether Lilly did any "cumulative review regarding malnutrition").  Plaintiffs questioned Lilly's Dr. Beardsworth and Dr. Ricardo Martins about regulatory exchanges with FDA concerning aspiration during general anesthesia. *Id*. at 21:9-13; 59:23-60:4; Ex. 4, Martins Tr. 136:25-137:19. Novo fact witnesses were similarly questioned about aspiration warnings. Ex. 5, DeChiaro Tr. 170:2-171:4 (asking "[w]ere you aware, prior to looking at Exhibit 13, that the Ozempic label carries a warning and precaution for pulmonary aspiration during general anesthesia or deep sedation?"); Ex. 6, Radin Tr. 106:19-107:16 (counsel notes "[t]he next area that I do have a fair number of documents where you were on or participated in some discussion, is about a concept that I'll just call pulmonary aspiration.").  Plaintiffs also questioned Lilly and Novo witnesses about pancreatitis and acute kidney injuries.  Ex. 7, Emmick (Lilly) Tr. 309:9-310:24 (questioning whether "reasonable evidence of a causal association" exists "between ingestion of Trulicity and the development of pancreatitis at this point in time" and as to "acute kidney injury"); Ex. 8, Kruse (Novo) Tr. 82:16-83:2 ("Would you agree with me that in 2016, if Novo Nordisk had information about pancreatitis and Ozempic, it had an obligation to warn of pancreatitis?"); Ex. 5, DeChiaro (Novo) Tr. 187:8-12 ("Q. And you see that in Exhibit 13, which is the October 2025 label, there is a warning, 5.6, for acute kidney injury due to volume depletion?").

***Plaintiffs' Expert Disclosures Undermine Their Current Claims***.  Lilly expects Plaintiffs to point to their limited expert disclosures to support their purported confusion about Issue 2's scope. But Plaintiffs' labeling experts did not even issue opinions for all the injuries that Plaintiffs now contend are subject to Issue 2.  Dr. Kessler, for instance, disclosed no opinion about Mounjaro or Zepbound, and no opinion about Section 5 for any Lilly medicine.  Dr. Ross similarly opined only on Trulicity's warnings about gallbladder disease from December 2017 to June 2022 but offered no opinion on the Mounjaro or Zepbound labels.

***Expert Disclosures Do Not Impact Preemption.***  Plaintiffs want to stop Lilly from briefing summary judgment on preemption for injuries other than those identified for Issue 3, but expert disclosures have no bearing on the Court's preemption analysis.  Whether federal law preempts is a "question of law," *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 316 (2019), and it is well established that experts may not offer legal opinions. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (Rule 704 "prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards"); *Grill v. Aversa*, 2014 WL 4784150, at *2 (M.D. Pa. Sept. 22, 2014) ("An expert's 'opinion on a question of law' is not admissible.").  Other MDL courts have excluded expert testimony on the ultimate question of whether FDA would have required or rejected a warning at summary judgment. *In re Gardasil Prods. Liab. Litig.*, 2025 WL 1782576,

## KIRKLAND & ELLIS LLP

Hon. Karen S. Marston
May 18, 2026
Page 5

at *3 (W.D.N.C. Feb. 20, 2025) (excluding expert's opinion on CBE regulation as "outside the scope of proper expert testimony because he is opining on questions of law"); *In re Taxotere (Docetaxel) Eye Injury Prods. Liab. Litig.*, MDL No. 3023, 2025 WL 3442731, at *14 (E.D. La. Dec. 1, 2025) ("[T]he question of whether information is 'newly acquired' is a question for a judge, rather than a jury, to determine. And regardless of the precise nature of that question, to the extent that any expert is opining on the 'ultimate issue' of whether any scientific literature satisfies the standard for 'newly acquired information,' the Court finds such testimony unhelpful and need not consider it."); *Cf. In re Zofran (Ondansetron) Prods. Liab. Litig.*, 57 F.4th 327, 340 (1st Cir. 2023) (granting summary judgment on preemption and noting expert opinion was "likely inadmissible" because experts "provide little, if any, relevant assistance when they opine on the ultimate legal question of whether something is 'newly acquired information'").

***

This sequence of events is entirely expected in pharmaceutical litigation. Plaintiffs alleged failure to warn for specific injuries. Plaintiffs spent the last 18 months pursuing fact and expert discovery on Issue 2 (warning adequacy and preemption) for the injuries alleged in the Amended Master Complaint. Discovery is now closed. Lilly will file summary judgment motions on May 19, 2026, consistent with the Court's orders and Rule 56.

Allowing Plaintiffs to now bar Lilly from seeking summary judgment on labeling or preemption for injuries alleged in the Amended Master Complaint would upend the Court's intended schedule, disregard the discovery Plaintiffs received, and grant Plaintiffs an unfair second bite at the apple. The Court should reject any limitations Plaintiffs propose under Issue 2 and proceed as contemplated by CMO 20.

Sincerely,

Mark W. Premo-Hopkins, P.C.

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE- 1 RECEPTOR AGONISTS (GLP-1-RAS) PRODUCTS LIABILITY LITIGATION | : : : : : : | **CIVIL ACTION** |
| THIS DOCUMENT RELATES TO: | : : | **MDL No. 3094** **24-md-3094** |
| *ALL ACTIONS/ALL CASES* | : : | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO ELI LILLY AND COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs in the above-captioned matter hereby submit the following Requests for Production of Documents to Eli Lilly and Company. These requested materials shall be produced within forty (40) days.

**DEFINITIONS**

1.      "You" or "Your" shall mean Eli Lilly and Company, Defendant in the above-captioned matter, their subsidiaries, divisions, predecessor or successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and/or each of their employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period specified herein/or any person acting on behalf of Eli Lilly and Company.

2.      As used through this Request for Production, the term "document(s)", "documentation" or any similar term as used coextensive with the meaning of the terms "documents" and "tangible things" in Rule 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "documents" and "tangible things" under Rule 34.

1

in branded or unbranded marketing or detailing to healthcare professionals, physicians, hospitals, pharmacy and therapeutics committees, pharmacies, retailers, telehealth providers or payers.

**Request No. 15:**

Exemplars of all materials provided to physicians, medical providers, pharmacy benefit manager, hospitals, telehealth providers, or pharmacies to promote use of GLP-1 RAs including but not limited to notepads, calendars, office supplies, and sample packets.

**Request No. 16:**

All documents and communications relating to or reflecting any contracts, agreements, memoranda, and payment or expense records relating to any attempt by You to retain, engage, or otherwise provide financial support or value to any person in any medical or scientific discipline with regard to any actual or proposed study of any GLP-1 RAs.

**Request No. 17:**

All documents and communications relating to or reflecting financial support, consultation agreements, payment, or other items or services of value provided to or for any physician or health provider that gave instructions, lectures, seminars, or hosted conference calls or web-based presentations to other physicians relating to GLP-1 RAs or the treatment obesity or diabetes, on Your behalf.

**Request No. 18:**

All communications between or among You and any other manufacturer or supplier of GLP-1 RAs on the subject of gastrointestinal injuries including gastroparesis, intestinal blockage, bowel obstruction, and ileus, and on other injuries caused by or related to gastrointestinal issues,

such as malnutrition, dehydration, pulmonary aspiration, pulmonary embolism, deep vein thrombosis, and Wernicke's encephalopathy.

**Request No. 19:**

All documents and communications relating to or reflecting scientific journal articles relating to GLP-1 RAs and submitted to any academic or scientific publication, written or drafted in whole or in part by You, Your employees, or any third party who received funding or other forms of compensation from You.

**Request No. 20:**

All documents and communications relating to or reflecting analyses of the medical efficacy and risks of any Competitor GLP-1 RAs.

**Request No. 21:**

All documents and communications reflecting or relating to risks of gastrointestinal injuries including gastroparesis, intestinal blockage, bowel obstruction, and ileus, and on other injuries caused by or related to gastrointestinal issues, such as such as malnutrition, dehydration, pulmonary aspiration, pulmonary embolism, deep vein thrombosis, and Wernicke's encephalopathy in connection with Your GLP-1 RAs.

**Request No. 22:**

Documents sufficient to identify all corporate employees and third-parties responsible for or involved in the (1) testing, (2) quality assurance, (3) risk assessment, (4) medical and clinical assessments, (5) regulatory activities, (6) communications with regulatory agencies, (7) pharmacovigilance, (8) product safety, (9) toxicology, (10) labeling, (11) distribution, (12)

13

Dated: April 8, 2024

/s/
Jonathan D. Orent
MOTLEY RICE LLC
40 Westminster Street., 5th Floor
Providence, RI 02903
Telephone:  (401) 457-7700
Email:  jorent@motleyrice.com


/s/
Paul Pennock
MORGAN & MORGAN
350 Fifth Avenue, Suite 6705
New York, NY 10118
Telephone:  (212) 738-6299
Email:  ppennock@forthepeople.com


/s/
Parvin K. Aminolroaya
SEEGER WEISS LLP
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 6399100
Email:paminolroaya@seegerweiss.com


/s/
Sarah Ruane
WAGSTAFF & CARTMELL
Kansas City, MO 64112
Providence, RI 02903
Telephone:  (816) 701-1123
Email:  sruane@wcllp.com

15

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: GLUCAGON-LIKE                   :
PEPTIDE- 1 RECEPTOR AGONISTS           :        **CIVIL ACTION**
(GLP-1-RAS) PRODUCTS                    :
LIABILITY LITIGATION                    :
                                        :
                                        :
**THIS DOCUMENT RELATES TO:**           :        **MDL No. 3094**
                                        :        **24-md-3094**
*ALL ACTIONS/ALL CASES*                 :
                                        :
                                        :
                                        :

**RESPONSES AND OBJECTIONS TO
PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
PROPOUNDED TO ELI LILLY AND COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Eli Lilly and Company ("Lilly") hereby serves these Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents and Tangible Things (the "Requests," and each individually a "Request") as follows:

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Lilly's Objections to Definitions and Instructions apply to each request for production as if expressly stated therein:

1.    Lilly objects to Plaintiffs' definition and use of the terms "You," and "Your," as overbroad in that it would render the Requests in which such terms are used overly broad, unduly burdensome, and not relevant to the claims or defenses and would require the production of documents and information not within Lilly's possession, custody, or control.

1

Plaintiff has alleged facts or claims relating to any manufacturing defects; thus, CMC submissions to the FDA will not be produced. Lilly further objects to the Request as not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) to the extent it seeks SAS data or individual case report forms that may have been submitted to the FDA, because such information is more efficiently found and produced in the study reports submitted to the FDA. Lilly will not produce materials subject to these objections.

Subject to and without waiving the foregoing objections, Lilly will conduct a reasonable search in its regulatory information management system files, Veeva Vault Regulatory Information Management System ("Veeva RIM"), for Trulicity (BLA 125469; IND 070930) and Mounjaro/Zepbound (IND 128801; IND 139721; IND 143191; IND 147352; IND 157090; IND 160512; IND 165969; NDA 215866; NDA 217806) for relevant documents submitted to and communications with the FDA (a) from January 1, 2005 for Trulicity and (b) from January 1, 2016 for Mounjaro and Zepbound. Lilly further agrees to meet and confer with Plaintiffs concerning the supplementation of its production of documents submitted to and communications with the FDA from the Veeva RIM system in response to this Request during the fact discovery period.

**REQUEST NO. 2:**

All documents and communications relating to or reflecting regulatory submissions for Your GLP-1 RAs, to the FDA.

RESPONSE:

Lilly objects to this Request as overbroad, ambiguous, and not proportional to the needs of the case because it requests "all documents and communications" and the request is not limited by time, duration, or the factual allegations of the claims and defenses related to Lilly at issue in this case. Lilly will not produce "all documents and communications" that might otherwise be responsive to this request.

5

Lilly further objects to this Request on the grounds that the phrase "regulatory submissions" is vague, ambiguous, and undefined.

Lilly further objects to this Request to the extent it seeks documents and communications relating to submissions to the FDA for Lilly's GLP-1 RAs that are not relevant to the claims and defenses in the Litigation, such as documents related to CMC. No Plaintiff has alleged facts or claims relating to any manufacturing defects; therefore, documents relating to CMC submissions to the FDA will not be produced. Lilly further objects to the request as not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) to the extent it seeks SAS data or individual case report forms that may have been submitted to the FDA, because such information is more efficiently found and produced in the study reports submitted to the FDA. Lilly also objects to the Request to the extent it seeks all drafts of documents submitted to the FDA as overly broad and not proportional to the needs of the case, and Lilly will not search for and produce all drafts.  Lilly will not produce materials subject to these objections.

Lilly further objects to this request as it seeks production of materials other than final submissions provided to and communications with the FDA. The numerous documents that might exist related to drafting regulatory submissions are not material to proof of claims or defenses raised in the pleadings and would significantly increase the burden and expense of responding to these requests, with minimal to no corresponding benefit to the litigation. Lilly will not produce materials subject to these objections.

Lilly further objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or other legal privilege.

Subject to and without waiving the foregoing objections, Lilly will conduct a reasonable search in its regulatory information management system, Veeva RIM, and produce relevant

documents submitted to and communications with the FDA (a) from January 1, 2005 for Trulicity, and (b) from January 1, 2016 for Mounjaro and Zepbound. Lilly further agrees to meet and confer with Plaintiffs concerning the supplementation of its production of documents submitted to and communications with the FDA from the Veeva RIM system in response to this Request during the fact discovery period. Lilly will also meet and confer with Plaintiffs to discuss a narrowly-tailored and proportional list of custodians and search terms to identify documents for responsiveness review that are related to submissions and communications with the FDA regarding the injuries Plaintiffs allege in their complaints.

**REQUEST NO. 3[a]:**[1]

All documents reflecting or relating to any studies, clinical studies, or laboratory and/or animal testing on the safety or efficacy of any GLP-1 RAs.

RESPONSE:

Lilly objects to this request as overbroad, ambiguous, and not proportional to the needs of the case because it requests "all documents" related to a wide range of different forms of research and studies and is not limited by time, duration, or the factual allegations related to Lilly in this case. Lilly will not produce "all documents" that might otherwise be responsive to this request.

Lilly further objects to this request as it seeks production of materials other than final study reports submitted to the FDA. The numerous documents that might exist related to the planning, execution, and analysis of study data are not material to proof of claims or defenses raised in the pleadings and would significantly increase the burden and expense of responding to these requests, with minimal to no corresponding benefit to the litigation. Lilly further objects to the request as

---

[1] The Requests contain two Requests labeled as "Request No. 3"; in these Responses and Objections, Lilly has labeled the first-appearing "Request No. 3" as Request No. 3[a] and the second as Request No. 3[b] for sake of clarity.

Dated: May 30, 2024

Respectfully submitted,

/s/ James F. Hurst
James F. Hurst, P.C. (admitted *pro hac vice*)
Renee D. Smith (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Mark Premo-Hopkins (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.hurst@kirkland.com
renee.smith@kirkland.com
diana.watral@kirkland.com
mark.premohopkins@kirkland.com


Samuel W. Silver (PA Bar No. 56596)
Catherine M. Recker (PA Bar No. 56813)
Bruce P. Merenstein (PA Bar No. 82609)
Abigail T. Burton (PA Bar No. 334450)
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
ssilver@welshrecker.com
cmrecker@welshrecker.com
bmerenstein@welshrecker.com
aburton@welshrecker.com


Jonathan M. Redgrave (admitted *pro hac vice*)
Erica B. Zolner (admitted *pro hac vice*)
**REDGRAVE LLP**
4800 Westfields Blvd. | Suite 250
Chantilly, VA 20151
(703) 592-1155
jredgrave@redgravellp.com
ezolner@redgravellp.com

*Attorneys for Defendant Eli Lilly & Company*

37

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2024, the foregoing Responses and Objections to Plaintiffs' First Request for Production of Documents Propounded to Eli Lilly and Company were served to the parties listed below via email:

Plaintiffs' Co-Lead Counsel:
- Paul Pennock - ppennock@forthepeople.com
- Parvin Aminolroaya - paminolroaya@seegerweiss.com
- Sarah Ruane – Sruane@wcllp.com
- Jonathan D. Orent – jorent@motleyrice.com


/s/Monse Martinez
Monse Martinez - Paralegal

# Exhibit 3

Case 2:24-md-03094-KSM   CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER   Document 670   Filed 05/18/26   Page 19 of 45

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------)
                               )
IN RE:  GLUCAGON-LIKE          ) CIVIL ACTION
PEPTIDE-1 RECEPTOR AGONISTS    )
(GLP-1 RAS) PRODUCTS           )
LIABILITY LITIGATION           ) MDL No. 3094
                               ) 24-md-3094
-------------------------------)
                               )
THIS DOCUMENT RELATES TO:      )
ALL ACTIONS/ALL CASES          ) HON. KAREN
                               ) SPENCER MARSTON
-------------------------------)

WEDNESDAY, JULY 30, 2025

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

- - -

Videotaped deposition of ANTHONY BEARDSWORTH, MD, held at the offices of Barnes & Thornburg LLP, 11 South Meridian Street, Indianapolis, Indiana, commencing at 9:05 a.m. Eastern Time, on the above date, before JULIANA F. ZAJICEK, a Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter.

HARTFORD REPORTING & TECHNOLOGY
855.443.3767
www.hartfordreporting.com

Case 2:24-md-03094-KSM   CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER   Document 670   Filed 05/18/26   Page 20 of 45

MS. WATRAL: If you need either of them, though, you can get them at any point. Just let me know. We're a little short on space here.

Paul, do you actually mind if I just move this monitor and he can put it here, and then if we need the monitor, we can take it back? Is that okay?

MR. PENNOCK: No, whatever works, that's -- that's fine.

We'll mark as Exhibit 3 to the deposition a -- let me just make sure I've got the right one -- a document entitled "Regulatory Response: Information Request: Aspiration during General Anesthesia and Deep Sedation."

This has the -- begins -- it's a multi-hundred page document with the first Bates number beginning 0823965.

Okay. We'll mark that -- I'm so sorry.

(WHEREUPON, a certain document was marked Beardsworth Deposition Exhibit No. 3, for identification, as of 07/30/2025.)

BY MR. PENNOCK:

Q. So fortunately for all of us and you, Doctor, I'm not going to have, you know, a lot of questions about this, but I'm going to have some

Case 2:24-cr-03094-KSM   CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER   Document 670   Filed 05/18/26   Page 21 of 45

MS. WATRAL:  Hey, Paul, we've been going for an hour time.  Are we close to a breaking point?

MR. PENNOCK:  Do we need to take a break now?

MS. WATRAL:  I -- I'd like to, yeah.

MR. PENNOCK:  Okay.

MS. WATRAL:  I mean, if you're -- if you've got like a minute or two left, that's fine, but we've just been going for a while.

MR. PENNOCK:  Okay.  No, we can take a break.

MS. WATRAL:  Great.

THE VIDEOGRAPHER:  We are now going off record. The time is 10:17.

(WHEREUPON, a recess was had from 10:17 a.m. to 10:30 a.m.)

(WHEREUPON, a certain document was marked Beardsworth Deposition Exhibit No. 7, for identification, as of 07/30/2025.)

THE VIDEOGRAPHER:  We are now back on the record.  The time is 10:30.

You may continue.

BY MR. PENNOCK:

Q.    Doctor, we've marked as the next exhibit, Exhibit 7, a document that is entitled "Regulatory Response:  Information Request:  Aspiration during

Case 2:24-md-03094-KSM  CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER  Document 670  Filed 05/18/26

General Anesthesia and Deep Sedation (tirzepatide)." And the Bates number on this is 08194940. It's a multi-hundred page document. I provided the starting dates for the record.

Okay. So, Doctor, looking at that, that is the regulatory response that Lilly prepared and submitted to the FDA regarding the letter asking for information on tirzepatide from August 4th, is that correct?

A. Correct.

Q. And, again, the -- the letter, which is Exhibit 1, did not have a cutoff date that you were supposed to use. Lilly chose the cutoff date, correct?

A. Correct.

Q. And if we look at that letter, and perhaps I read this before, but I just want to put it in context, FDA says, this is Exhibit 1, quote, "We also request that you perform a cumulative review (starting from the international birth date of your product) of all cases of severe/serious, prolonged, or worsening gastroparesis for Mounjaro."

Do you see that statement?

A. I do.

Q. And, quote -- the FDA goes on to say,

Case 2:24-md-03094-KSM  CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER  Document 670  Filed 05/18/26

obstruction and ileus situation.  Two minutes.

Are you giving me an extra couple of hours or am I stuck with my two minutes?

MS. WATRAL:  I am not giving you an extra couple of hours, but we can talk off the record.

BY MR. PENNOCK:

Q.  Sir, this work that you did was back in 2023.  So -- well, almost two years ago in sum- -- with respect to the work that you did in the summer and the fall of 2023.

Have you been part of any additional causal association evaluation efforts regarding gastroparesis and the use of one of the GLP-1s?

A.  Not that I can think of.

Q.  At any time, and this is another area we don't have time to go into.  But quick question, at any time has -- has Lilly with respect to dulaglutide or tirzepatide submitted a warning to the FDA for Wernicke's enceph- -- encephalopathy?

A.  So we did submit a -- a proposed warning in proportion around malnutrition and nutrients which is -- which was sort of triggered by a case of Wernicke's.

Q.  Did that -- withdrawn.

That warning and precaution that you

MS. WATRAL:  Objection; outside the scope of my --

MR. PENNOCK:  Well, I -- I asked about that, so -- did they -- you asked questions about -- I can go back and look at it, but it was regarding everything they were submitting to the FDA and, you know, we can stop and look, or I can ask my question.

MS. WATRAL:  Go ahead and ask your question, and we can go from there.

BY MR. PENNOCK:

Q.    So prior to July of 2023 and then the following safety topic reports that you did after the -- the regulatory responses, did you do any cumulative review regarding malnutrition?

A.    So we did a cumulative review for tirzepatide for ketoacidosis.  And as we were doing that STR, we noticed that some of the cases that were being reported were entitled "Starvation Ketoacidosis."

And, again, I'm hazy on the exact time piece there, but I know that that kicked off the conversation within safety and with the business unit medical development people that I've just been talking about around -- because we knew that we had a case of Wernicke's, which is -- I mean, it was a sort of -- it

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: GLUCAGON-LIKE             )
PEPTIDE-1 RECEPTOR AGONISTS    )   CIVIL ACTION
(GLP-1 RAS) PRODUCTS           )
LIABILITY LITIGATION,         )   MDL No. 3094
                                    )
THIS DOCUMENT RELATES TO:     )   24-md-3094
                                    )
ALL ACTIONS/ALL CASES        )   HON. KAREN SPENCER
                                    )   MARSTON

VIDEOTAPED, VIDEOCONFERENCE DEPOSITION OF
DR. RICARDO FONSECA MARTINS

TAKEN ON BEHALF OF THE PLAINTIFFS

OCTOBER 23, 2025

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Court Reporter:
Lauren N. Lawrence, RPR, CCR-MO, CCR-KS
Hartford Reporting & Technology
7733 Forsyth Boulevard
Suite 1100
Saint Louis, Missouri 63105
314.727.0005
scheduling@hartfordreporting.com

Case 2:24-md-03094-KSM    CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER    Document 670    Filed 05/18/26

from FDA, it will be submitted back to the FDA, yes.

Q.   Okay.   Okay.   Well, all I wanted to do is talk about one page here, which -- which is page 16. It's -- it's under 4.1.1.6 Conclusion.   I want to look at the one, two, three, four -- like, the last four paragraphs.   The last four smaller paragraphs. Because there's -- there's three comments on the right-hand side that -- that relate to these last four -- the last four paragraphs.   And I'm just going to read it so we're all clear on what -- what is said on the left.   And then I'll -- I'll read the comments. Are you okay with that, Doctor?

A.   I am.   I would prefer to read the document, but okay.   Since that's what we --

Q.   Yeah.   I'll just --

A.   -- we can --

Q.   I'll just read this first, and then you can -- I'll give you another minute if you want to reflect.

MR. PREMO-HOPKINS:   For -- for the -- just for the people who don't have the document, Jeff, is it possible to expand that -- the call-out for the right so we can see the -- the right edge?

Thank you.

Q.   (By Mr. Honnold)   Okay.   Page 16, the

bottom four paragraphs, it says "Medical judgment.  In conclusion, after a comprehensive analysis of the data, a causal association cannot be established between tirzepatide and aspiration during general anesthesia or deep sedation.  However, it is stated in USPI Section 12.2 Pharmo -- Pharmacodynamics: Mounjaro USPI Section 12.2, 'Gastric Emptying.  Tirzepatide delays gastric emptying.  The delay is largest after the first dose and this effect diminishes over time.  Tirzepatide slows post-meal glucose absorption, reducing postprandial glucose.'

"Provided by GPS medical.  Due to this pharmo -- pharmacodynamic effect, aspiration during general anesthesia or deep sedation may be considered a potential risk.  Therefore, Lilly proposes a Warning and Precaution to be added in the Core Data Sheet to inform clinicians."

Do you see that?

A.    Yes, I do.

Q.    And you were involved in this writing right here; right?

A.    As I said, I was involved in reviewing this writing that came by the writer.  But, yes, I am accountable for that.

Q.    You're accountable for this writing right

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

IN RE:  GLUCAGON-LIKE      :
PEPTIDE-1 RECEPTOR         :
AGONISTS (GLP             :
-1-RAS) PRODUCTS           :
LIABILITY LITIGATION       :      CIVIL ACTION
                           :      NO. 3094-
                           :      24-md-3094
THIS DOCUMENT RELATES      :
TO:  ALL ACTIONS/ALL      :
CASES                      :

- CONFIDENTIAL -
PURSUANT TO PROTECTIVE ORDER

- - -

November 20, 2025

- - -

Videotaped deposition of STEPHANIE DeCHIARO, taken pursuant to notice, was held at DLA Piper, 51 John F. Kennedy Parkway, Short Hills, New Jersey, beginning at 9:01 a.m., on the above date, before Michelle L. Ridgway, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter, Certified Court Reporter, and Notary Public.

- - -

affairs role.

Q.   Okay.  And you see the last, in this warnings and precaution section on the highlights of prescribing information, the last bullet says, "Pulmonary aspiration during general anesthesia or deep sedation."

Do you see that?

A.   Yes, I see that written here.

Q.   And it says, "Has been reported in patients receiving GLP-1 receptor agonist undergoing elective surgeries or procedures.  Instruct patients to inform healthcare providers of any planned surgeries or procedures."

And then in parentheses, "5.10."

Do you see that?

A.   Yes, I see that.

Q.   Were you aware, prior to looking at Exhibit 13, that the Ozempic label carries a warning and precaution for pulmonary aspiration during general anesthesia or deep sedation?

A.    I have seen this warning, but I believe it was added to the Ozempic label after I stepped out of my U.S. regulatory affairs role.

Q.    Okay.  Let's turn to .6.

MR. WILLIAMS:  So can I get a running -- can we agree that I don't have to object every time --

MR. SEELEY:  Sure.

MR. WILLIAMS:  -- you ask her questions about this as it relates to scope after she left regulatory affairs.

MR. SEELEY:  No problem.

MR. WILLIAMS:  Is that a yes?

MR. SEELEY:  That's a yes. I feel like you would be more comfortable on this side.

MR. WILLIAMS:  I might.  I might.

BY MR. SEELEY:

Q.    Are you on .6?

A.    I'm on .6.

MR. WILLIAMS:  All right.

BY MR. SEELEY:

Q.    Are you set?

A.    Yes, thank you.

Q.    You have in front of you Exhibits 13 and 14?

A.    Yes.

Q.    And you see that in Exhibit 13, which is the October 2025 label, there is a warning, 5.6, for acute kidney injury due to volume depletion?

A.    Yes, I see that.

Q.    And then there is, separately, a severe gastrointestinal adverse reaction warning, right?

A.    Yes, I see that.

Q.    And then there's also the other one we looked at, the pulmonary aspiration during general anesthesia or deep sedation, right?

A.    Yes, I see that.

Q.    And then if we look at the 2022 label, which is on the right side of the screen, we see an acute kidney

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

IN RE:  GLUCAGON-LIKE      :
PEPTIDE-1 RECEPTOR         :
AGONISTS (GLP              :
-1-RAS) PRODUCTS           :
LIABILITY LITIGATION       :     CIVIL ACTION
                           :     NO. 3094-
                           :     24-md-3094
THIS DOCUMENT RELATES      :
TO:  ALL ACTIONS/ALL       :
CASES                      :

- CONFIDENTIAL -
PURSUANT TO PROTECTIVE ORDER

- - -

July 31, 2025

- - -

Videotaped deposition of MICHAEL RADIN, M.D., taken pursuant to notice, was held at the Hilton Short Hills, 41 J.F.K. Parkway, Short Hills, New Jersey, beginning at 9:05 a.m., on the above date, before Michelle L. Ridgway, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter, Certified Court Reporter, and Notary Public.

- - -

similarly around commenting on resources that were being prepared for the team.

Q.    More liraglutide or semaglutide?

A.    Sorry.  Semaglutide.

Q.    And, again, this would be preparing materials?

A.    Yes.

Q.    For a team?

A.    Yes.

Q.    And you may have mentioned it before, but as you used that word "team" in the context of gastroparesis and GLP-1s, what is the team that you're talking about, the medical liaisons, the medical directors?

A.    Mostly for the medical liaisons.

Q.    The next area that I do have a fair number of documents where you were on or participated in some discussion, is about a concept that I'll just call pulmonary aspiration.  That may not be the complete title.

A.    Sure.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Q.     Some of the documents you prepared are called gastric emptying and pulmonary aspiration, or perioperative management related to GLP-1s and pulmonary aspiration.

But you understand what I'm talking about when I use that term?

A.     Yes.

Q.     Okay.  As you did before, could you give me kind of the short thumbnail sketch of the work that you did related to GLP-1s and pulmonary aspiration?

A.     My recollection is very similar to what we just spoke about for these other issues.

Q.     Semaglutide?

A.     Semaglutide.

Q.     Material preparation?

A.     Yeah.  Resource preparation, yes.

Q.     And I think that's the first time that you've said specifically resource preparation.  I want to make sure I understand everything that goes

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

IN RE:  GLUCAGON-LIKE  : CIVIL ACTION

PEPTIDE-1 RECEPTOR  : MDL No. 3094

AGONISTS (GLP-1 RAs)  : 24-md-3094

PRODUCTS LIABILITY  :

LITIGATION  :

 :

THIS DOCUMENT RELATES TO: : Hon. Karen Spencer Marston

ALL ACTIONS/ALL CASES  :

_____:

Wednesday, August 13, 2025

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

- - -

Videotaped deposition of Jeffrey T. Emmick,

M.D., Ph.D., held at the offices of Barnes & Thornburg

LLP, 11 South Meridian Street, Indianapolis, Indiana,

commencing at 9:01 a.m. Eastern Time, on the above

date, before Carol A. Kirk, Registered Merit Reporter,

Certified Shorthand Reporter, and Notary Public

Case 2:34-md-08094-KSM   Document 670   Filed 05/18/26

foundation.

A.     Yeah, I don't -- I don't know if it's in the same context as a regulatory definition, because, again, I don't know where this is pulled from.  It's obviously a summary. Some of it is in a more simplistic wording to help an average reader who's not a clinician understand it.

Q.     To your knowledge, for these side effects that are listed, the first one being "Inflammation of the pancreas or pancreatitis," to your knowledge, does -- at this point in time was there reasonable evidence of a causal association between ingestion of Trulicity and the development of pancreatitis at this point in time?

MS. WATRAL:  Objection;

foundation.

A.     Well --

Q.     And if you don't know, that's fine?

A.     Well, I've said previously there's -- to my knowledge there's not a causal association today.

Q.     Okay.  So pancreatitis, no.

Low blood sugar, hypoglycemia.  At this time -- at this point in time in June of

Case 2:34-md-08094-KSM   Document 670   Filed 05/18/26   CONFIDENTIAL - PURSUANT TO PROTECTIVE ONLY

2019, was there reasonable evidence of a causal association between ingestion of Trulicity and developing low blood sugar at this point in time?

A.     I believe we state -- we did see higher rates of hypoglycemia when Trulicity was used with an insulin or a sulfonylurea, so there appeared to be a relationship.

Q.     So you're saying, yes, they are likely?

A.     Based on what I can recall at the time, yes.

Q.     The next one, "Serious allergic reactions."  At this point in time, June of 2019, reasonable -- was there reasonable evidence of a causal association between ingestion of Trulicity and the development of serious allergic reactions?

A.     I don't believe there was. And I don't believe there is today.

Q.     Next, "Acute kidney injury."  At this point in time, June of 2019, to your knowledge was there reasonable evidence of a causal association between the ingestion of Trulicity and the development of acute kidney injury?

MS. WATRAL:  Objection;

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

IN RE: GLUCAGON-LIKE                )
PEPTIDE-1 RECEPTOR AGONISTS         ) CIVIL ACTION
(GLP-1 RAS) PRODUCTS                )
LIABILITY LITIGATION                ) MDL No. 3094
_____ ) 24-md-3094
                                    )
THIS DOCUMENT RELATES TO:           )
ALL ACTIONS/ALL CASES               ) HON. KAREN
                                    ) SPENCER MARSTON
_____ )


— — —

Thursday, October 9, 2025

— — —

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

— — —




        Video-Recorded Oral Deposition of TRINE
KRUSE held at the offices of DLA Piper
Denmark, Oslo Plads 2, Copenhagen, Denmark,
commencing at 9:02 AM CEST on the above date,
before Michael E. Miller, Fellow of the
Academy of Professional Reporters, Certified
Court Reporter, Registered Diplomate
Reporter, Certified Realtime Reporter and
Notary Public.


— — —

HARTFORD REPORTING & TECHNOLOGY
855.443.3767
www.hartfordreporting.com

American and European labels, there are warnings about gallbladder disease?

MR. WILLIAMS:  Same objection, asked and answered.

A.     Yeah, same answer.  I would like to see the exact document to give you a correct answer.

BY MR. ORENT:

Q.     Okay.

MR. WILLIAMS:  Jon, we've been going --

MR. ORENT:  Let me just ask one more set of quick questions.

MR. WILLIAMS:  Okay.

BY MR. ORENT:

Q.     Would you agree with me that in 2016, if Novo Nordisk had information about pancreatitis and Ozempic, it had an obligation to warn of pancreatitis?

MR. WILLIAMS:  Objection, vague, calls for speculation.

A.     I would have to rely on the discussions that had been done in the working group for the CCSI, the safety information. And the final label will always be a result

of the discussions with the health authorities.

BY MR. ORENT:

Q.    Would you agree with me that Novo Nordisk, if it had information on gastroparesis being caused by semaglutide, that it had an obligation to warn of it in 2016?

MR. WILLIAMS:  Objection, vague, lacks foundation, calls for speculation.

And the previous question, I'd add lacks foundation as an objection as well.

You can answer.

A.    The authorities would be provided with the data we have generated and as such, then the label discussions will proceed from there.

BY MR. ORENT:

Q.    Would you agree with me that in 2016, if Novo Nordisk had information about gallbladder disease, that it had an obligation to warn at that time?

MR. WILLIAMS:  Same -- same