**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GLUCAGON-LIKE | : | CIVIL ACTION |
| PEPTIDE-1 RECEPTOR AGONISTS | : | |
| (GLP-1 RAS) PRODUCTS | : | |
| LIABILITY LITIGATION | : | MDL No. 3094 |
| | : | 24-md-3094 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | HON. KAREN SPENCER MARSTON |
| *ALL ACTIONS/ALL CASES* | : | |

**MEMORANDUM**

**Marston, J.**                                                                              **May 18, 2026**

Defendants Eli Lilly and Company and Lilly USA, LLC (collectively, "Lilly") seek an

order limiting the opinions of Plaintiffs' expert, Dr. David Kessler, to those opinions disclosed in

his January 2, 2026 expert report.  (Doc. Nos. 652, 654.[1])  Plaintiffs oppose the motion, insisting

that it is unnecessary because Plaintiffs have no intention of relying on any opinions other than

those that were disclosed in Dr. Kessler's report.  (Doc. No. 655.)  As this order details, the

parties are, in many respects, talking past each other.  Nevertheless, to the extent there are true

disputes, Lilly's Motion is denied for the reasons discussed below.

**I.       BACKGROUND**

Because the Court writes for the parties, we assume familiarity with the allegations

asserted in the master pleadings for this MDL, the procedural history related to early discovery

and motion practice on Cross Cutting Issues 2 and 3, and the discussion and opinions contained

---

[1] Lilly's motion is noted twice on the docket, once with party-provided, slip pages that state the motion and exhibits were filed under seal (Doc. No. 652), and once with a Court-created slip page that notes the motion and exhibits were filed under seal (Doc. No. 654). In this Memorandum, the Court references Lilly's brief as simply, "Lilly's Motion," and uses the exhibit numbers and pagination provided by Lilly.

in Dr. Kessler's lengthy report.  So, we focus our discussion here on the procedural history related to Lilly's Motion and those portions of Dr. Kessler's report directly at issue.

### A.    Overview of the MDL and Cross Cutting Discovery

This MDL involves thousands of personal injury actions stemming from the use of glucagon-like peptide-1 (GLP-1) receptor agonists and GLP-1/glucose-dependent insulinotropic polypeptide (GIP) dual receptor agonists (collectively, "GLP-1 RAs") manufactured by Lilly or by the Novo Nordisk Defendants[2] ("Novo").  (*See generally* Doc. No. 481.)  Three Lilly medications are at issue: Trulicity, Mounjaro, and Zepbound.  (*See id.* at 46–50.)  "Trulicity" is the brand name for the drug dulaglutide, and "Mounjaro" and "Zepbound" are the brand names for the drug tirzepatide.  (*Id.*)

The Court previously ordered early discovery and motion practice on three "cross cutting" issues that may be dispositive for many of the cases included in the MDL.  (Doc. Nos. 235, 282, 566, 658.)  Issue 2 (which considers Defendants' preemption defense and the adequacy of warnings in product labeling) and Issue 3 (which considers Plaintiffs' ability to prove general causation for gastroparesis, ileus, small bowel obstruction, and gallbladder injuries) are implicated here.  As to those two issues, the Court directed Plaintiffs to serve their expert reports by January 2, 2026; Defendants to serve their reports by February 13, 2026; and Plaintiffs to serve their rebuttal reports by February 23, 2026.  (Doc. No. 566.)  All parties were to complete expert depositions by April 24, 2026 (Doc. No. 610), and motions to exclude under Federal Rule of Evidence 702 are currently due May 19, 2026 (Doc. No. 658).

---

[2] The Novo Nordisk Defendants are Novo Nordisk A/S and Novo Nordisk Inc.  (*See* Doc. No. 481 at ¶¶ 15–17.)

**B.     Dr. Kessler's Report**

Consistent with these deadlines, Plaintiffs disclosed numerous experts, including Dr.

Kessler, to Defendants on January 2, 2026, and, as agreed by the parties, Plaintiffs provided

separate versions of Dr. Kessler's report as to Lilly and Novo.  (*Compare* Lilly's Motion, Ex. A

(the "Lilly Report"), *with* Lilly's Motion, Ex. B (the "Novo Report").)  The two reports are

identical except the Lilly Report redacts Dr. Kessler's opinions and discussion about Novo's

medications, and the Novo Report redacts Dr. Kessler's opinions and discussion about Lilly's

medications.  (*Compare* Lilly Report, *with* Novo Report.)[3]  When the Novo portions are

excluded, Dr. Kessler's Lilly Report totals 114 pages.  (*See generally* Lilly Report.)

In both reports, Dr. Kessler details his extensive qualifications, explaining that he

received his M.D. from Harvard Medical School in 1979 and his J.D. from the University of

Chicago Law School in 1978.  (*Id.* at 32.)  Among other noteworthy positions, he served as the

Commissioner of the United States Food and Drug Administration (the "FDA") under two

presidential administrations and is currently a professor of Pediatrics and Epidemiology and

Biostatistics at the University of California, San Francisco.  (*Id.*)  After describing these

qualifications, Dr. Kessler provides an overview of GLP-1 RAs, noting that "the FDA has

evaluated safety issues related to GLP-1 RA drugs on a class basis."  (*Id.* at 8.)  He then

discusses the regulatory framework provided by the Food, Drug, and Cosmetics Act (the

---

[3] Put differently, Dr. Kessler prepared a single report with three parts.  Part I provides an overview of GLP-1 RAs as a class of drugs, the regulatory framework under which they are governed, and the "GLP—mediated gastrointestinal motility suppression: mechanism and clinical consequences of hypomotility."  (Lilly Report at 2; Novo Report at 2.)  Part II details Dr. Kessler's opinions as to Novo, and Part III details Dr. Kessler's opinions as to Lilly.  (Lilly Report at 2–5; Novo Report at 2–5.)  The Lilly Report redacts the entirety of Part II, and the Novo Report redacts the entirety of Part III.  (Lilly Report at 81–230; Novo Report at 230–61.)

"FDCA"), including requirements for drug labels. (*Id.* at 8–25.) Dr. Kessler ends his overview

by discussing the development of GLP-1 RAs, the scientific literature showing that GLP-1 RAs

suppress gastric motility, and the consequences of hypomotility, including the "biological and

clinical consequences of impaired gastric emptying and decreased intestinal motility." (*Id.* at

26–81.) After this overview, Dr. Kessler details his opinions specific to Novo, before finally

providing his opinions specific to Lilly. (*Id.* at 81–261.)

For Issues 2 and 3, Dr. Kessler was asked "to address the following questions" as to

Lilly:

> i.   What is a pharmaceutical manufacturer's responsibility as it relates to a duty to warn?
>
> ii.  Should Eli Lilly have included warnings of gastrointestinal hypomotility that include ileus, severe constipation including fecal impaction and intestinal obstruction in the Adverse Reactions Section (Section 6) of the label for dulaglutide?
>
> iii. Could Eli Lilly have included warnings of gastrointestinal hypomotility that include ileus, severe constipation including fecal impaction and intestinal obstruction in the Adverse Reactions Section (Section 6) of the label for dulaglutide?

(*Id.* at 230.) And after much discussion, Dr. Kessler ends his report with the following

"Summary of Opinions":

> i.   Lilly should have added a Section 6 Adverse Reactions Warning to the label for dulaglutide to include Ileus, Severe Constipation Leading to Fecal Impaction and Intestinal Obstruction no later than 2017.
>
> ii.  Scientific evidence regarding the mechanism of action for the class of GLP-1 RA drugs shows that gastrointestinal motility-related adverse events, specifically ileus, severe constipation leading to fecal impaction and intestinal obstruction, are consistent with the pharmacology of dulaglutide.
>
> iii. There was statistically significant evidence of gastrointestinal hypomotility by 2012. Lilly's Test Data from September 24,

4

2012 indicates statistically significant rates for gastrointestinal atonic and hypomotility Level 1 constipation.

iv. Based on the totality of evidence and taking into consideration every factor, Lilly should have included ileus, severe constipation leading to fecal impaction and intestinal obstruction within Section 6 (Adverse Reactions) by 2017.

v. FDA's request that Lilly add a Section 6 Adverse Reactions warning for "intestinal obstruction, severe constipation including fecal impaction" cross referenced to the Severe Gastrointestinal Adverse Reactions Warning in Section 5 demonstrates that Lilly could have added a warning to the label of Trulicity (dulaglutide). It was not impossible for Lilly to add a Section 6 Adverse Reaction warning about ileus, severe constipation leading to fecal impaction and intestinal obstruction.

vi. Nothing prevented Lilly from submitting a Prior Approval Supplement or Changes Being Effected that requested a Section 6 Adverse Reactions warning for dulaglutide for ileus, severe constipation leading to fecal impaction and intestinal obstruction.

(*Id.* at 261.)  In a footnote, Dr. Kessler indicates that this "list is not meant to be exclusive or exhaustive for all opinions regarding Lilly throughout this report." (*Id.* at 261, n.812.)

## C.    Dr. Kessler's Depositions

Novo deposed Dr. Kessler on March 31, 2026, and Lilly deposed him on April 22, 2026. (Lilly's Motion at 1, 3.)  During both depositions, Dr. Kessler relied on more than one hundred pages of "notes," which were created after his expert reports.  (*Id.* at 3–4.)  Concerned that these notes suggested Dr. Kessler would testify about new topics, Lilly asked Plaintiffs to confirm that Dr. Kessler would not offer new opinions during his deposition.  (*Id.*)  Plaintiffs agreed that Dr. Kessler's notes did not constitute a supplemental expert report, but they did not agree to foreclose Dr. Kessler from testifying to potentially new opinions, such as the adequacy of Lilly's tirzepatide warnings.  (*Id.*)  Accordingly, Lilly sought to clarify the scope of Dr. Kessler's

opinions at the beginning of his deposition, but Dr. Kessler's answers to pointed questions were often lengthy, combative, and nonresponsive.  (*See generally* Lilly's Motion, Ex. C ("Kessler Initial Dep. Tr.").)  For example:

> Q. . . . [M]y question is, with respect to the second and third questions, the medicine that you were asked about in your section about Eli Lilly, part 3, relates to dulaglutide. Right?
>
> A.      Yeah. My only—well, those were questions—as an overview, I tried to give you a sense of what I was asked and trying to do in this section. That's all that was meant to be by these questions, to give you a sense of, you know, what—what I was trying to work through.
>
> As I just stated earlier, there's earlier sections of the report that this has—again, there's some complexity because there were two defendants, and there was obviously an overlapping—you know, the GLP-1s are a class, and this class effect, and they should be treated—I think the FDA treats them in very significant ways as a class, certainly on safety.
>
> So there's earlier parts of the report that, for example, talk about other Lilly drugs that are not that as it relates to mechanism. So— and I was certainly—to clarify, I think that in studying mechanism, I was looking at the class that included tirzepatide. So—and that's in this report also.

(Kessler Initial Dep. Tr. at 21:22–23:1.)

And another:

> Q.      Are you offering an opinion now that Lilly should have included a warning in the label for tirzepatide?
>
> A.      Again, I'm going to—well, my goal here is not to offer any new opinions. I mean—and I don't want to do that. Okay? I mean— but my goal is not to offer any new opinions.
>
> And your question is—my goal is not to offer any new opinions on tirzepatide.
>
> I certainly have, I mean, subsequently to this report, you know, and may have to do that. I leave it to the lawyers in a subsequent report at some time if there's an opportunity to do that.

6

> I don't want to lawyer that question. I just want to—I'm telling you, in my head, I have opinion—well, let me just stop there.
>
> I don't want—I don't want to put—I don't want to play lawyer and what's a new opinion and what's not a new opinion and what counts. You spent an hour, I think, discussing and reading some agreement that I'm happy to have the lawyers do that agreement, but I have to be able to—I just want to answer your questions fully.

(*Id.* at 25:16–26:18.)

After approximately two hours, the parties stopped the deposition and sought guidance from the Court. The Court listened to each side's argument and then directed counsel to meet and confer again in the hopes that they could come to an agreement about the scope of Dr. Kessler's forthcoming testimony. Plaintiffs ultimately agreed "to limit Dr. Kessler and [their] reliance on Dr. Kessler to only what is in his report on tirzepatide and any class effect that was disclosed in his report as of January 2nd." (Lilly's Motion, Ex. D ("Apr. 22 Hr'g. Tr.") at 4:15–18.) Otherwise, however, the parties continued to dispute the proper scope of Dr. Kessler's opinions. (*See id.* at 4:15–5:18.) So, the Court directed them to brief the issue. (*Id.* at 8:12–16.)

### D.      Lilly's Motion

On April 27, 2026, Lilly filed its Motion to Enforce Case Management Order 29 (Doc. Nos. 652, 654), which is the Third Amended Scheduling Order for Cross Cutting Issues 2 and 3 (Doc. No. 566). Lilly seeks an order precluding Plaintiffs from "referencing, relying on, or using in any manner Dr. Kessler's late-disclosed opinions or materials in connection with the upcoming Rule 702 and summary judgment briefing." (Lilly's Motion at 2.) Lilly reasons that

Dr. Kessler's deposition notes and supplemental reliance documents suggest he will try to raise multiple new opinions about:

- New medicines: tirzepatide (Mounjaro and Zepbound).

- New injuries: most notably, gastroparesis.

- New label sections: adequacy of Section 5 (Warnings & Precaution).

- New FDA disclosure opinions: Lilly's pharmacovigilance practices.

(Lilly's Motion at 1.)  Lilly argues that Dr. Kessler's Lilly Report did not disclose any opinions on these topics and Federal Rules of Civil Procedure 26 and 37 preclude Plaintiffs from presenting any new opinions in Dr. Kessler's deposition.  (*Id.* at 10–16.)

In response, Plaintiffs reiterate that they have no intention of presenting or relying on "new" opinions by Dr. Kessler.  (Doc. No. 655 ("Plaintiffs' Response") at 1.)  Instead, they intend to rely only on "Dr. Kessler's timely disclosed opinions":

> (1) relating to the mechanism of action of the GLP-1 RA class, including tirzepatide, and the clinical consequences of that mechanism (*see* ¶¶ 90–181);
>
> (2) that dulaglutide delays gastric emptying and that Lilly's dulaglutide warning should have contained a Section 5 warning about severe gastrointestinal adverse events, with a cross-reference to Section 6 that included the range of gastrointestinal motility-related adverse events including "impaired gastric emptying" (*see* ¶¶ 653–56); and that
>
> (3) Lilly's 2022 safety analysis of dulaglutide for FDA contained flawed conclusions and missing information (*see* p. 239–40 n.751).

(*Id.*)

## II.    DISCUSSION

An expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," including the "facts or data considered by the witnesses in forming them." Fed. R. Civ. P. 26(a)(2)(B). An expert's testimony is "limited to the information contained in their expert reports." *Garcia v. S&F Logs., LLC*, 2024 WL 2218933, at *2 (E.D. Pa. May 16, 2024) (quoting *nCube Corp. v. SeaChange Int'l., Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011)). That said, when a court is asked to determine whether an expert's testimony goes beyond the scope of the report, courts do "not require verbatim consistency" and have allowed testimony on topics that are "consistent with the report" and represent "a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *Diawara v. United States*, 2020 WL 6262983, at *6 (E.D. Pa. Oct. 23, 2020) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008)); *cf. Power Integrations, Inc.*, 585 F. Supp. 2d at 581 ("[T]he Court examines whether the objecting party had sufficient notice of the testimony based upon the contents of the report and the elaborations made during expert discovery and deposition."); *nCube Corp. v. SeaChange Int'l., Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011) (same). Here, the Court finds that the three categories of opinions identified by Plaintiffs are either contained in Dr. Kessler's report or would represent a "reasonable synthesis and/or elaboration of the opinions contained in" his report.[4]

---

[4] Plaintiffs have not argued that they are allowed to present new opinions by Dr. Kessler under the relevant factor test. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); (*see also* Plaintiffs' Response at 8 (arguing that the *Konstantopoulos* "factors are irrelevant here")). Instead, they assert that as to Cross Cutting Issues 2 and 3, they will rely only on the opinions that appear in Dr. Kessler's Lilly Report. (Plaintiff's Response at 1.) Accordingly, the only issue before the Court is the extent to which that report addresses the topics identified by the parties above.

A. **Category 1: Opinions "relating to the mechanism of action of the GLP-1 RA class, including tirzepatide, and the clinical consequences of that mechanism"**

Dr. Kessler spends nearly half of his 114-page Lilly Report describing how GLP-1 RAs, *as a class*, "can impair gastric emptying and intestinal mobility," and the clinical consequences of this hypomotility. (*See* Lilly Report at 25–81.) Thus, his conclusions "relating to the mechanism of action of the GLP-1 RA class, including tirzepatide, and the clinical consequences of that mechanism," would clearly fall within the scope of his report.[5]

B. **Category 2: Opinion "that dulaglutide delays gastric emptying and that Lilly's dulaglutide warning should have contained a Section 5 warning about severe gastrointestinal adverse events, with a cross-reference to Section 6 that included the range of gastrointestinal motility-related adverse events including 'impaired gastric emptying'"**

Dr. Kessler's Lilly Report states that it is his "opinion that the dulaglutide label, because there are similarities in the mechanism of action . . . should have had the same labeling that Novo Nordisk should have had on their GLP-1 RA drugs and has as of October 2025." (*Id.* at 232.) This conclusion comes just after Dr. Kessler's assertion that in his "opinion, Novo Nordisk should have [w]arned about Severe Gastrointestinal Motility-Related Adverse Events with a Section 5 Warning about Severe Gastrointestinal Adverse Reactions, with a cross reference to Section 6 that included the range of gastrointestinal motility-related adverse events . . . ." (*Id.*) In a footnote, Dr. Kessler clarifies that when he "uses the term 'Severe Gastrointestinal Motility-Related Adverse Events,' [he] include[s] within it the following range of conditions that can

---

[5] Having read Dr. Kessler's initial deposition testimony, the Court can appreciate Lilly's concern that he seemed poised to go much further and testify about the adequacy of the warnings within Lilly's tirzepatide label—an opinion that even he admits is not included in his expert report. (*See, e.g.*, Kessler Initial Dep. Tr. at 25:2–6 ("I do not disclose at this time, at the time of this—this report that was signed, I did not disclose—I did not discuss the question of whether they should have included warnings of tirzepatide.").) However, Plaintiffs have been adamant that they have no intention of relying on any such opinion. (Apr. 22 Hr'g. Tr. at 4:15–18; Kessler Dep. Tr. at 10:12–19.)

occur [and] that can be recorded using multiple different MedDRA Preferred Terms: . . . . *impaired gastric emptying, gastrointestinal hypomotility . . . .*" (*Id.* at 232 n.710 (emphasis added).)  The Court thus finds that Dr. Kessler's conclusions "that dulaglutide delays gastric emptying and that Lilly's dulaglutide warning should have contained a Section 5 warning about severe gastrointestinal adverse events, with a cross-reference to Section 6 that included the range of gastrointestinal motility-related adverse events including 'impaired gastric emptying'" fall within the scope of his expert report.

That said, the Court once again finds itself appreciating Lilly's confusion about whether Dr. Kessler was opining on the adequacy of the warnings contained in Section 5 of the label for dulaglutide.  Notably, the section discussed above is the only portion of the Lilly Report that mentions adding warnings to Section 5; every other discussion of the dulaglutide label—including the headings in Dr. Kessler's discussion section, the questions presented, and the summary of opinions—is focused on Section 6.  (*See, e.g.*, Lilly Report at 6, 231, 241, 261.)  By contrast, the Novo Report has an entire section dedicated to "when Novo Nordisk should have added a *Section 5 Warning* for Severe Gastrointestinal Motility-Related Adverse Reactions." (*Id.* at 3 (emphasis added).)  This choice indicates that Dr. Kessler may not have intended to opine on Section 5 of the dulaglutide label in the Lilly Report; nevertheless, given the portions of the report quoted in the previous paragraph, the Court cannot find that such an opinion is outside the scope of his report.  At minimum, it appears a "reasonable synthesis and/or elaboration" of the discussion and opinions contained in his report.  *See Gumbs-Heyliger v. CMW & Assocs.*, 2014 WL 5472567, at *4 (D.V.I. Oct. 29, 2014) ("Delman's report detailed Plaintiff's efforts to find a job.  While the report does not contain an opinion about the reasonableness of those efforts, any such testimony would be 'consistent with the report and is a reasonable synthesis

and/or elaboration' of the opinions contained therein." (quoting *nCube Corp.*, 809 F. Supp. 2d at 347)); *see also Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 632 (E.D. Pa. 2001) ("By way of example, if there were no mention of a barrier in a report, the expert would not be allowed to testify that a barrier was required.  However, if the opinion that a barrier was necessary was included in a report, but the expert did not state how he arrived at that conclusion, the expert would be permitted to state the bases for his conclusion.").

As to delayed gastric emptying, the Court also finds that Dr. Kessler's conclusions reasonably extend from the discussion and opinions disclosed in the Lilly Report.  In addition to footnote 710, which defines "Severe Gastrointestinal Motility-Related Adverse Events" to include "impaired gastric emptying" and "gastrointestinal hypomotility," Dr. Kessler frames his questions presented as whether Lilly should or could "have included *warnings of gastrointestinal hypomotility* that include ileus, severe constipation including fecal impaction and intestinal obstruction . . . ."  (*Id.* at 230 (emphasis added); *see also id.* at 5.)  And more broadly, the Lilly Report includes an extensive discussion on the science surrounding whether dulaglutide, as a GLP-1 RA, delays gastric emptying and the clinical consequences of that mechanism of action. (*Id.* at 25–81.)  Although Dr. Kessler's conclusions about delayed gastric emptying are not as straightforward as his conclusions regarding the addition of a warning for "ileus, severe constipation including fecal impaction and intestinal obstruction," they are still within the scope of his report, or, at minimum, a synthesis of concepts disclosed in the report.  *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, 237 F.R.D. 106, 113 (D. Del. 2006) (finding expert's testimony did not go beyond the scope of the expert's report because the expert report "contains analysis of both the Auquier study and the French study," and the expert's trial testimony, which compared the two studies, "was a synthesis of those analyses").

**C.      Category 3: Opinion that "Lilly's 2022 safety analysis of dulaglutide for FDA contained flawed conclusions and missing information"**

In the Lilly Report, Dr. Kessler provides an overview of the labeling history for dulaglutide.  (*See id.* at 237–43.)  This overview includes discussion about Lilly's August 2022 Dulaglutide Safety Topic Report on Intestinal Obstruction (the "2022 STR"), which the company submitted in response to FDA's Newly Identified Safety Signal ("NISS") for GLP-1 RAs for intestinal obstruction.  (*See id.* at 239–40.)  The 2022 STR concluded that, "based on the totality of the data, the evidence does not support a causal association between dulaglutide and intestinal obstruction."  (*Id.* at 239.)  Dr. Kessler takes issue with this conclusion in a footnote of the Lilly Report, explaining that in his opinion, "Lilly's analysis . . . regarding a causal association between dulaglutide and intestinal obstruction reaches a flawed conclusion" for three reasons:

> [First t]he number of search terms used in the 2017 intestinal obstruction Safety Topic Report for dulaglutide [the "2017 STR"] and submitted to [Europe's Pharmacovigilance Risk Assessment Committee (PRAC)] was more comprehensive than the search terms used in the [ ] 2022 [STR]. This resulted in significantly fewer cases identified in 2022 versus 2017. [Second], in discussing mechanistic plausibility in the [ ] 2022 STR, Lilly only cited the Nakatani paper despite the fact that PRAC referenced three other publications discussing mechanism in 2017 (Kunkel, Hellstrom and Madsen). [Third], in the 2017 [STR], there were three identified cases of positive rechallenge; however in the [2022 STR], Lilly only identified one case of positive rechallenge.

(*Id.* at 239–40 n.751 (citations omitted).)  Given this discussion, the Court finds that Dr. Kessler has sufficiently disclosed his opinion that "Lilly's 2022 [STR] for FDA contained flawed conclusions and missing information."  (Plaintiffs' Response at 1.)  The Court cautions, however, that it does not read this footnote to disclose any opinion about Lilly's pharmacovigilance practices more generally.

**III.    CONCLUSION**

For the reasons discussed above, the Court finds that Dr. Kessler's report provides sufficient notice of his opinions regarding the categories identified by Plaintiffs.  To the extent Lilly (reasonably) interprets Dr. Kessler's deposition testimony as suggesting he intends to provide additional opinions beyond those topics, the Court need not reach that issue because Plaintiffs have agreed that they will rely only on those opinions included in the Lilly Report.  Accordingly, Lilly's Motion is denied.  An appropriate order follows.