**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION** ) ) ) ) | **CIVIL ACTION** |
| ) | **MDL No. 3094** |
| **THIS DOCUMENT RELATES TO:** ) | **2:24-md-03094-KSM** |
| ) | |
| **ALL ACTIONS / ALL CASES** ) ) ) | |

**MEMORANDUM IN SUPPORT OF ELI LILLY AND COMPANY AND LILLY USA,
LLC'S MOTION FOR SUMMARY JUDGMENT ON NON-GASTROPARESIS
GASTROINTESTINAL AND MISCELLANEOUS CLAIMS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

     A.    Plaintiffs Offer No Expert Opinion On Warning Inadequacy For The GI Or Other Injuries. ........................................................................................................................ 2

     B.    Lilly's Labels Adequately Warn Of The Injuries Plaintiffs Assert. ....................... 3

          1.    Lilly's Labels Adequately Warn About GI Injuries. ................................. 3

          2.    Lilly's Labels Adequately Warn About Pancreatitis. ................................ 4

          3.    Lilly's Labels Adequately Warn About Dehydration And Acute Kidney Injury. ................................................................................................................ 5

          4.    Lilly's Labels Warn About Aspiration. ....................................................... 5

     C.    FDA Rejected Lilly's Attempts to Add New Warnings. ........................................ 6

ARGUMENT ....................................................................................................................... 8

I.    Plaintiffs Have Not Established a Triable Issue oF Label INAdequacy For The GI Or Other Injuries. .......................................................................................................... 8

     A.    Plaintiffs' Failure to Offer Expert Testimony Defeats Their GI And Other Injury Claims. ................................................................................................................... 8

     B.    Lilly's Labels Are Adequate, As A Matter Of Law, As To The GI And Other Injury Claims. ................................................................................................................... 9

II.    Plaintiffs' Claims for the Other Injuries Are Preempted. ...................................... 12

     A.    Plaintiffs Identify No Newly Acquired Information That Would Have Allowed Lilly to Change the Labels for Any of the Other Injuries. .................................. 13

     B.    FDA Would Have Rejected Any Malnutrition, Vitamin/Micronutrient Deficiency, Wernicke's Encephalopathy, Or Muscle Wasting Warning. ............................... 13

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accutane Prods. Liab.*,
  2012 WL 3194954 (M.D. Fla. July 24, 2012) ...........................................................................10

*Alston v. Caraco Pharm., Inc.*,
  670 F. Supp. 2d 279 (S.D.N.Y. 2009)................................................................................9, 12

*Austin v. Will-Burt Co.*,
  361 F.3d 862 (5th Cir. 2004) ......................................................................................9, 10, 12

*Begley v. Bristol-Myers Squibb Co.*,
  2013 WL 144177 (D.N.J. Jan. 11, 2013) ..................................................................................10

*In re Chantix (Varenicline) Prods. Liab. Litig.*,
  881 F. Supp. 2d 1333 (N.D. Ala. 2012)...................................................................................10

*Christison v. Biogen Idec Inc.*,
  199 F. Supp. 3d 1315 (D. Utah 2016).........................................................................................9

*Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*,
  2025 WL 1024103 (D. Mass. Mar. 12, 2025)...........................................................................15

*In re Depakote*,
  87 F. Supp. 3d 916 (S.D. Ill. 2015)...........................................................................................15

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab.
  Litig.*, 2006 WL 1071545 (E.D. Pa. Apr. 21, 2006)...................................................................8

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
  118 F.4th 322 (3d Cir. 2024) ..............................................................................................14, 15

*Holley v. Gilead Scis., Inc.*,
  2023 WL 6390598 (N.D. Cal. Sept. 28, 2023) ....................................................................13, 15

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
  524 F. Supp. 3d 1007 (S.D. Cal. 2021).............................................................................2, 13, 15

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
  142 F. Supp. 3d 1108 (S.D. Cal. 2015).......................................................................................15

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
  984 F.3d 329 (4th Cir. 2021) ..............................................................................................12, 13, 15

*LaBarre v. Bristol-Myers Squibb Co.*,
  544 F. App'x 120 (3d Cir. 2013) ........................................................................1, 8, 9

*Lin v. Solta Med., Inc.*,
  760 F. Supp. 3d 926 (N.D. Cal. 2024) .............................................................2, 9, 12

*MacSwan v. Merck & Co.*,
  2023 WL 3990673 (W.D.N.Y. June 14, 2023)........................................................8

*Merck Sharp & Dohme Corp. v. Albrecht*,
  587 U.S. 299 (2019).....................................................................................2, 12, 14

*In re Meridia Prods. Liab. Litig.*,
  328 F. Supp. 2d 791 (N.D. Ohio 2004)..................................................................11

*Rheinfrank v. Abbott Lab'ys, Inc.*,
  119 F. Supp. 3d 749 (S.D. Ohio 2015) ..................................................................15

*Rowland v. Novartis Pharms. Corp.*,
  34 F. Supp. 3d 556 (W.D. Pa. 2014).....................................................................8, 9

*Sosnowski v. Wright Med. Tech., Inc.*,
  2012 WL 1030485 (N.D. Ill. Mar. 27, 2012)...........................................................8

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
  2020 WL 3487594 (E.D. La. June 1, 2020).............................................................1

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
  462 F. Supp. 3d 650 (E.D. La. 2020)..................................................................2, 12

*Wyeth v. Levine*,
  555 U.S. 555 (2009)...................................................................................13, 14

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
  541 F. Supp. 3d 164 (D. Mass. 2021) ....................................................................14

**INTRODUCTION**

Eli Lilly and Company and Lilly USA, LLC ("Lilly") have filed concurrent summary judgment motions regarding alleged gastroparesis (Mot. #2), ileus and intestinal obstruction (Mot. #6), and gallbladder injuries (Mot. #8). The Court should also grant summary judgment on two additional categories of claims for which Plaintiffs cannot carry their burden: (1) non-gastroparesis gastrointestinal claims (the "GI Injuries")[1]; and (2) a miscellany of other injuries asserted by Plaintiffs, i.e., pancreatitis, malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy, muscle wasting, dehydration, acute kidney injury, and pulmonary aspiration (the "Other Injuries").[2] Lilly is entitled to summary judgment on these claims for three reasons.

*First*, despite 18 months of discovery, Plaintiffs have not met their burden to "demonstrate specific facts in the record that [the] warning[s] [are] inadequate" as to the GI or Other Injuries. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2020 WL 3487594, at *3 (E.D. La. June 1, 2020). Most importantly, they offer ***no expert*** to opine on label inadequacy for any of these injuries. Lilly is entitled to summary judgment for this reason alone. *See, e.g.*, *LaBarre v. Bristol-Myers Squibb Co.*, 544 F. App'x 120, 125 (3d Cir. 2013) ("[S]ummary judgment is appropriate on a failure to warn claim if a plaintiff has not proffered expert testimony on the adequacy of the warnings.").

*Second*, and independently, Lilly's labels are adequate as a matter of law because they "clearly and consistently warned of the precise injury Plaintiffs suffered." *In re Taxotere*

---

[1] Lilly has separately moved for summary judgment on Plaintiffs' gastroparesis claims (*see* Mot. #2), which include long-term and drug-induced impaired gastric emptying and delayed gastric emptying. In this Motion, Lilly moves for summary judgment on all other gastrointestinal adverse reaction claims.

[2] Lilly also moves for summary judgment on all claims for high blood pressure, sepsis, and any other conditions that Plaintiffs' own Amended Master Complaint characterizes as "sequelae" of other alleged conditions, along with any other miscellaneous sequelae of other conditions Plaintiffs allege. Dkt. No. 481 ¶¶ 13, 65. Plaintiffs have put forth no evidence (expert or otherwise) to explain how Lilly's labels were inadequate as to these sequelae, entitling Lilly to summary judgment. *Taxotere*, 2020 WL 3487594, at *3; *LaBarre*, 544 F. App'x at 125.

*(Docetaxel) Prods. Liab. Litig.*, 462 F. Supp. 3d 650, 653 (E.D. La. 2020).  Lilly's labels warn of the GI and Other Injuries, including when they warn about "severe" "gastrointestinal adverse reactions," SUF ¶¶ 6, 16, 21; various gastrointestinal reactions such as nausea, vomiting, abdominal pain, dyspepsia, constipation, and diarrhea, *id.* ¶¶ 7, 17, 22; "dehydration," *id.* ¶¶ 32, 42, 54, "acute renal failure," *id.* ¶¶ 31, 40, 51, "acute pancreatitis," *id.* ¶¶ 23, 34, 45, "aspiration," *id.* ¶¶ 38, 49, 60, and more.  That, too, requires summary judgment for Lilly.  *Taxotere*, 462 F. Supp. 3d at 653; *Lin v. Solta Med., Inc.*, 760 F. Supp. 3d 926, 937 (N.D. Cal. 2024) ("There can be no genuine dispute about the adequacy of a warning that directly warns in plain and explicit terms of the specific risk that has caused injury to the plaintiff.").

*Third*, Plaintiffs' Other Injuries claims are preempted.  Plaintiffs have not identified newly acquired information unknown to FDA that would have allowed Lilly to change the labels for any of the Other Injuries, preempting all claims.  *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1022 (S.D. Cal. 2021) (quoting 21 C.F.R. § 314.3) (granting summary judgment where information was not "different to that already considered by the FDA's comprehensive review").  Independently, FDA considered—and rejected—Lilly's request to add a warning for "severe" "malnutrition," which further preempts Plaintiffs' claims for malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy, and muscle wasting.  *See Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 314 (2019).

## **BACKGROUND**

### A.    **Plaintiffs Offer No Expert Opinion On Warning Inadequacy For The GI Or Other Injuries.**

Plaintiffs' Amended Master Complaint asserts an assortment of injuries not addressed in Lilly's other summary judgment motions, including non-gastroparesis gastrointestinal injuries (such as nausea, vomiting, abdominal pain, dyspepsia, gastroenteritis, burning, bloating,

constipation, diarrhea, loss of appetite, and esophageal injuries), pancreatitis, malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy,[3] muscle wasting, dehydration, and aspiration. Dkt. No. 481 ¶¶ 419, 428. In addition, ten Plaintiffs have filed acute kidney injury claims against Lilly (with the first filed in December 2023). Critically, no expert opines that Lilly failed to adequately warn of *any* of these injuries.

**B.      Lilly's Labels Adequately Warn Of The Injuries Plaintiffs Assert.**

1.      Lilly's Labels Adequately Warn About GI Injuries.

Since approval, the labels for Trulicity, Mounjaro, and Zepbound have warned of "gastrointestinal adverse reactions, sometimes severe" in Section 5 (Warnings and Precautions), (SUF ¶¶ 1, 6, 11, 16, 21, 26) and that, in clinical trials, severe gastrointestinal adverse reactions occurred more frequently among patients receiving Lilly's medicines than placebo. *Id.* ¶¶ 3, 6 (Trulicity), ¶¶ 13, 16 (Mounjaro), ¶¶ 23, 26 (Zepbound label). The Adverse Reactions portion of the Highlights section identifies the medicines' "most common adverse reactions, reported in ≥5% of patients" as "nausea, diarrhea, vomiting, abdominal pain, and decreased appetite" for Trulicity, "nausea, diarrhea, decreased appetite, vomiting, constipation, dyspepsia, and abdominal pain" for Mounjaro, and "nausea, diarrhea, vomiting, constipation, abdominal pain, dyspepsia" (and others) for Zepbound. *Id.* ¶¶ 2, 7 (Trulicity), ¶¶ 12, 17 (Mounjaro), ¶¶ 22, 27 (Zepbound).

The labels also include more detailed discussions of these common symptoms in Section 6 (Adverse Reactions). For instance, the initial Mounjaro label included the table below:

---

[3]    The Amended Master Complaint describes Wernicke's Encephalopathy as a "degenerative brain disorder caused by the lack of vitamin B1" and by "dietary deficiencies and/or prolonged vomiting." Dkt. No. 481 ¶ 88.

3

**Table 1: Adverse Reactions in Pool of Placebo-Controlled Trials Reported in ≥5% of MOUNJARO-treated Adult Patients with Type 2 Diabetes Mellitus**

| Adverse Reaction | Placebo (N=235) % | MOUNJARO 5 mg (N=237) % | MOUNJARO 10 mg (N=240) % | MOUNJARO 15 mg (N=241) % |
|---|---|---|---|---|
| Nausea | 4 | 12 | 15 | 18 |
| Diarrhea | 9 | 12 | 13 | 17 |
| Decreased Appetite | 1 | 5 | 10 | 11 |
| Vomiting | 2 | 5 | 5 | 9 |
| Constipation | 1 | 6 | 6 | 7 |
| Dyspepsia | 3 | 8 | 8 | 5 |
| Abdominal Pain | 4 | 6 | 5 | 5 |

Note: Percentages reflect the number of patients who reported at least 1 occurrence of the adverse reaction.

*Id.* ¶¶ 13, 18. Section 6 (Adverse Reactions) also reports that in clinical trials, "more patients" "discontinued treatment due to gastrointestinal adverse reactions than patients receiving placebo," (*id.* ¶¶ 3, 8, 13, 18, 23, 28), and that "[t]he following gastrointestinal adverse reactions were reported more frequently" than "placebo-treated patients," listing, eructation, flatulence, gastroesophageal reflux disease, and abdominal distension for Mounjaro and Zepbound (*id.* ¶¶ 13, 18, 23, 28), and constipation, flatulence, abdominal distension, gastroesophageal reflux disease, and eructation for Trulicity (*id.* ¶¶ 3, 8).

In addition, the Medication Guide for each Lilly medicine has always stated that Lilly's medicines "may cause serious side effects, including" "severe stomach problems." *Id.* ¶¶ 4, 9, 14, 19, 24, 29. It also lists "[t]he most common side effects" for each Lilly medicine, listing "nausea, diarrhea, vomiting, decreased appetite, and indigestion" for Trulicity, "nausea, diarrhea, decreased appetite, vomiting, constipation, indigestion, and stomach (abdominal) pain" for Mounjaro, and "nausea, diarrhea, vomiting, constipation, stomach (abdominal pain), [and] indigestion," among others, for Zepbound. *Id.* ¶¶ 5, 10, 15, 20, 25, 30.

2.      Lilly's Labels Adequately Warn About Pancreatitis.

All three labels have warned of pancreatitis since approval. Trulicity's Section 5 (Warnings and Precautions) reports a pancreatitis clinical-trial rate of 3.4 cases per 1,000 patient-years, *id.* ¶ 35; Section 6 (Adverse Reactions) lists "Pancreatitis," *id.* ¶ 37; and its Patient

4

Counseling section warns of the risk of "acute pancreatitis." *Id.* ¶ 36. Mounjaro's Section 5 (Warnings and Precautions) warns that "[a]cute pancreatitis, including fatal and non-fatal hemorrhagic and necrotizing pancreatitis, has been observed in patients treated with GLP-1 receptor agonists" and reports an adjudicated event rate of 0.11 per 100 patient-years of exposure, *id.* ¶ 46, and Section 6 (Adverse Reactions) lists "Pancreatitis." *Id.* ¶ 48. Zepbound's label has always contained warnings virtually identical to Mounjaro's. *Id.* ¶¶ 46, 57.

3. Lilly's Labels Adequately Warn About Dehydration And Acute Kidney Injury.

All three labels have warned of dehydration and serious renal events since approval. Section 5 (Warnings and Precautions) for both Mounjaro and Zepbound warns that gastrointestinal adverse reactions "may lead to dehydration, which if severe could cause acute kidney injury." *Id.* ¶¶ 40, 51. Trulicity's Section 5 (Warnings and Precautions) warns of "acute renal failure or worsening of chronic renal failure," including in patients "without known underlying renal disease," and of "worsening renal function," "renal impairment," and "renal failure." *Id.* ¶ 31. Each label's Patient Counseling section warns of dehydration arising from gastrointestinal adverse reactions and the resulting risk to renal function. *Id.* ¶¶ 32, 43, 54. And each medicine's Medication Guide identifies the potential for "kidney problems" and "kidney failure." *Id.* ¶¶ 33, 44, 55.

4. Lilly's Labels Warn About Aspiration.

Since October 18 and November 1, 2024, Lilly's labels have all warned of "pulmonary aspiration during general anesthesia or deep sedation" in Section 5 (Warnings and Precautions) and Section 6 (Adverse Reactions). *Id.* ¶¶ 38, 49, 60. Section 5 warns that Lilly's medicines "delay[] gastric emptying," and that "[t]here have been rare postmarketing reports of pulmonary aspiration in patients receiving GLP-1 receptor agonists undergoing elective surgeries or

5

procedures requiring general anesthesia or deep sedation who had residual gastric contents despite reported adherence to preoperative fasting recommendations." *Id.* And Section 6 warns of "Pulmonary Aspiration During General Anesthesia or Deep Sedation *[see Warnings and Precautions (5.9)].*" *Id.* ¶¶ 39, 50, 61.

### C.    FDA Rejected Lilly's Attempts to Add New Warnings.

In December 2023, Lilly submitted Prior Approval Supplements ("PASs") to FDA to add language for malnutrition to Section 5 (Warnings and Precautions) for Mounjaro and Zepbound. *Id.* ¶¶ 78-79. Lilly's proposed warnings stated:

> **5.7 Malnutrition** Events related to malnutrition have been reported, including severe, in patients receiving [MOUNJARO/ZEPBOUND]. Risks associated with malnutrition include, but are not limited to, vitamin and mineral deficiency, protein deficiency, and low body weight. Nutritional guidance and, as needed, supplementation or support, should be considered. Discontinuation should be considered for severe or persistent cases.

*Id.* ¶¶ 78.

Lilly attached a November 2023 Safety Topic Report for "Malnutrition and Cachexia" for tirzepatide in each PAS sent to FDA. *Id.* ¶ 62. The Safety Topic Report "present[ed] relevant tirzepatide safety information pertaining to malnutrition and cachexia derived from non-clinical studies, completed clinical trials, post-marketing safety studies, pharmacoepidemiological studies, published scientific literature, and spontaneously reported adverse events from post-marketing experience." *Id.* ¶ 63. It explained that "[m]alnutrition encompasses both overnutrition (overweight and obesity) and undernutrition (underweight, micronutrient deficiencies, wasting, and stunting)," *Id.* ¶ 64, and "cachexia" (muscle wasting) "is a synonym for the chronic disease-related malnutrition with inflammation." *Id.*

Lilly's Safety Topic Report determined that "[t]he literature search did not identify any epidemiological studies associating GLP-1 RAs or tirzepatide with malnutrition and cachexia."

6

*Id.* ¶ 65.  And it noted that "[i]n the completed Phase 2 and Phase 3 clinical trials, the incidence of malnutrition and cachexia according to the defined search strategy in the tirzepatide arm was 0.07% (6 participants of 8830).  None of the participants in the placebo or comparator arms reported malnutrition and cachexia."  *Id.* ¶ 66.  And "[i]n the ongoing blinded clinical trials, 22 participants reported 26 events of malnutrition and cachexia."  *Id.* ¶ 67).  It also reported that its search of "post-marketing cases retrieved a total of 35 cases with 36 events (32 nonserious events and 4 serious adverse events) cumulatively through 16 October 2023."  *Id.* ¶ 68.

Lilly's Safety Topic Report discussed several cases from tirzepatide's clinical trial data, including one case where "Wernicke's syndrome was not confirmed, [but] malnutrition was well documented," *id.* ¶ 73, as well as 35 putative cases of malnutrition, muscle wasting, starvation, and protein deficiency from post-marketing reports.  *Id.* ¶ 68.  Considering these events, Lilly's Safety Topic Report determined that "[t]he incidence of malnutrition/cachexia was low in the completed clinical trials and was very rarely reported in the post-marketing dataset," *id.* ¶ 74, and that "[t]he occurrence of malnutrition is likely dependent not only on the tirzepatide use, but also on the contents of the patient's diet and other risk factors for malnutrition."  *Id.* ¶ 75.

FDA *rejected* Lilly's proposed warnings in September 2024 (Zepbound) and October 2024 (Mounjaro).  *Id.* ¶¶ 80, 86.  FDA "disagree[d]" with the proposed warning and explained that "the data in [Lilly's] supporting document show that potential malnutrition-related events are rare in tirzepatide-treated patients (0.07% in trials and 0.0003% in post-marketing), with no cases of convincing causality."  *Id.* ¶¶ 81, 87.  FDA then approved Zepbound and Mounjaro labels on October 18, 2024, and November 1, 2024, respectively without adding a warning for malnutrition, vitamin/micronutrient deficiency, Wernicke's Encephalopathy, or muscle wasting.  *Id.* ¶¶ 60-61, 49-50.  FDA has approved the current labels without adding such warnings.  *Id.*

## **ARGUMENT**

The Court should grant summary judgment for Lilly on all claims involving the GI and Other Injuries. No triable issue of label adequacy exists, and Plaintiffs' claims are independently preempted by federal law.

### I.    **PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE OF LABEL INADEQUACY FOR THE GI OR OTHER INJURIES.**

No triable issues of label adequacy exist for any of these conditions for two reasons. First, Plaintiffs bear the burden of proof on label inadequacy, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 2006 WL 1071545, at \*1 (E.D. Pa. Apr. 21, 2006), but failed to proffer expert evidence to support label inadequacy for any of the GI or Other Injuries, *LaBarre*, 544 F. App'x at 125. Second, Lilly's warnings were adequate as a matter of law for both the GI Injuries and the Other Injuries.

### A.    **Plaintiffs' Failure to Offer Expert Testimony Defeats Their GI And Other Injury Claims.**

Plaintiffs have not come forward with any expert who opines that Lilly's labels were inadequate with respect to the GI or Other Injuries. That is fatal to their claims. Because of the medical and regulatory complexity of label adequacy, "expert medical testimony" on this topic "is generally required." *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 572 (W.D. Pa. 2014); *LaBarre*, 544 F. App'x at 125. "Without expert testimony, a lay jury is not in a position to second-guess [an] FDA-approved label." *MacSwan v. Merck & Co.*, 2023 WL 3990673, at \*17 (W.D.N.Y. June 14, 2023); *Sosnowski v. Wright Med. Tech., Inc.*, 2012 WL 1030485, at \*7 (N.D. Ill. Mar. 27, 2012) ("Since only a physician or someone with specialized knowledge would be qualified to determine whether the warning was inadequate, expert testimony is required."); *see* Motion #2 at 20-21. Plaintiffs' total lack of expert proof entitles Lilly to summary judgment on the GI and Other Injury claims. *See, e.g., Rowland*, 34 F. Supp. 3d at 572; *LaBarre*, 544 F. App'x

at 125; *Christison v. Biogen Idec Inc.*, 199 F. Supp. 3d 1315, 1340–42 (D. Utah 2016) ("Where the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony."). The Court need go no further to grant summary judgment for Lilly.

## B. Lilly's Labels Are Adequate, As A Matter Of Law, As To The GI And Other Injury Claims.

Plaintiffs' failure to come forward with expert evidence on label adequacy is dispositive. That is unsurprising, given that Lilly's labels adequately warn of the GI and Other Injury claims as a matter of law—providing an independent basis for summary judgment.

"There can be no genuine dispute about the adequacy of a warning that directly warns in plain and explicit terms of the specific risk that has caused injury to the plaintiff." *Lin*, 760 F. Supp. 3d at 937; *Alston v. Caraco Pharm., Inc.*, 670 F. Supp. 2d 279, 284 (S.D.N.Y. 2009); *Austin v. Will-Burt Co.*, 361 F.3d 862, 868 (5th Cir. 2004). That is precisely the case here.

*GI Injuries.* Plaintiffs assert claims for nausea, vomiting, abdominal pain, dyspepsia, gastroenteritis, burning, bloating, constipation, diarrhea, loss of appetite, and esophageal injuries. Yet all three labels have always warned about "gastrointestinal adverse reactions, sometimes severe," (SUF ¶¶ 1, 6, 11, 16, 21, 26); reported greater rates of gastrointestinal reactions and discontinuations from gastrointestinal reactions in clinical trials than for patients receiving the placebo, (*id.* ¶¶ 3, 8, 13, 18, 23, 28); detailed the most common adverse reactions like nausea, vomiting, dyspepsia, and abdominal pain, (*id.* ¶¶ 2, 7, 12, 17, 22, 27); reported other gastrointestinal reactions for which there was a greater incidence rate in clinical trials for Lilly's medicines versus the placebo, *id.*; and warned in the Medication Guide[4] that Lilly's medicines

---

[4] The Medication Guide is part of a medication label intended for use by patients. Courts have relied on these sections in finding medicine labels adequate as a matter of law. *See, e.g.*, *In re Accutane Prods. Liab.*, 2012 WL 3194954, at *5 (M.D. Fla. July 24, 2012) (finding label adequate as a matter of law where "the Medication Guide

"may cause serious side effects, including" "severe stomach problems." *id.* ¶¶ 4, 9, 14, 19, 24, 29. These repeated and detailed warnings were adequate especially in light of common knowledge among physicians, as suggested by Dr. Metz, that "[t]hat's what [GLP-1 RAs] do. They cause nausea. They cause dyspepsia. They cause vomiting. They delay gastric emptying." *Id.* ¶ 92. *Begley v. Bristol-Myers Squibb Co.*, 2013 WL 144177, at *4 (D.N.J. Jan. 11, 2013) ("[D]rug manufacturers are not obligated to warn prescribing physicians of risks already known to the medical community.").

**Malnutrition, Wernicke's Encephalopathy, Vitamin/Micronutrient Deficiencies, and Muscle Wasting.** For the same reasons, the labels were also adequate as a matter of law as to malnutrition, Wernicke's, vitamin/micronutrient deficiencies, and muscle wasting. Consistent with Lilly's STR, Plaintiffs own Amended Master Complaint alleges that all four of these conditions are related and "secondary" to other gastrointestinal adverse reactions such as gastroparesis, delayed gastric emptying, nausea, and vomiting. Dkt. No. 481 ¶¶ 78-89; *see, e.g.*, *id.* ¶ 41 ("GLP-1 RAs can cause a myriad of injuries including: developing gastroparesis; gastroparesis requiring hospitalization or emergency care; refractory gastroparesis potentially leading to debilitating secondary conditions such as Wernicke's encephalopathy," "muscle wasting; vitamin deficiencies, [and] micronutrient deficiencies"); *id.* ¶ 79 (vitamin/micronutrient deficiencies are related to "decreased appetite—leading to a significant caloric deficit—nausea, and vomiting."); *id.* ¶ 88 ("Wernicke's Encephalopathy . . . can be caused by dietary deficiencies and/or prolonged vomiting.").

---

warned that Accutane may result in" the plaintiff's injury); *In re Chantix (Varenicline) Prods. Liab. Litig.*, 881 F. Supp. 2d 1333, 1337 (N.D. Ala. 2012) (same for the Chantix label).

As just discussed, Lilly's labels have always warned of 'gastrointestinal adverse reactions, sometimes severe,' in Section 5 (Warnings and Precautions), nausea, vomiting, and diarrhea in Section 6 (Adverse Reactions), and "severe" "stomach problems" in the Medication Guide. SUF ¶¶ 1, 4, 6, 9, 11, 14, 16, 19, 21, 24, 26. Any trained physician reading these warnings would have understood the risk of malnutrition and vitamin/micronutrient deficiencies. *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 812-13 (N.D. Ohio 2004) (finding that the Meridia label's warning about high blood pressure was adequate as a matter of law as to related conditions). As Plaintiffs themselves allege, "[s]ignificant deficiencies in vital nutrients, such as Vitamins A, B, and D, magnesium, and potassium, among others, can lead to other serious conditions" such as Wernicke's and muscle wasting. Dkt. No. 481 ¶ 81; *see also* Court's May 18, 2026 Order (acknowledging that Plaintiffs allege that Wernicke's and vitamin/micronutrient deficiencies are "closely related" conditions secondary to gastroparesis). Just like the adequate blood pressure warning in *Meridia*, "[p]hysicians are well aware of the scope of the risks associated with" delayed gastric emptying, nausea, vomiting, and diarrhea, "and do not need specifics regarding the possible consequences." 328 F. Supp. 2d at 813. Thus, Lilly's labels were adequate as a matter of law as to malnutrition, Wernicke's, vitamin/micronutrient deficiencies, and muscle wasting.

*Pancreatitis.* All three labels have conveyed the risk of pancreatitis from initial approval. Trulicity's label warns that "Pancreatitis has been reported in clinical trials" and reports incidence rates. SUF ¶ 37. Section 6 lists "Pancreatitis." *Id.* And the Patient Counseling section warns of "acute pancreatitis." *Id.* ¶ 36. Mounjaro warns that "[a]cute pancreatitis, including fatal and non-fatal hemorrhagic and necrotizing pancreatitis, has been observed in patients treated with GLP-1 receptor agonists." *Id.* ¶ 46. And Zepbound contains virtually identical warnings. *Id.* ¶ 57.

11

***Dehydration and Acute Kidney Injury.***    All three labels have always warned of dehydration and acute kidney injuries.  Trulicity's label warns of "postmarketing reports of acute renal failure or worsening of chronic renal failure," including in "patients without known underlying renal disease," *Id.* ¶ 31, and "worsening renal function," "renal impairment," and "renal failure."  *Id.* ¶ 32.  Similarly, Mounjaro's and Zepbound's labels warn about kidney injuries multiple times, including in their Highlights, Warnings and Precautions, and Adverse Reactions sections.  *Id.* ¶¶ 45, 56.

***Aspiration.***    Since October 18 and November 1, 2024, Section 5 (Warnings and Precautions) and Section 6 (Adverse Reactions) of all three of Lilly's labels have warned of "aspiration in patients receiving GLP-1 receptor agonists undergoing elective surgeries or procedures requiring general anesthesia or deep sedation."  *Id.* ¶¶ 38-39, 49-50, 60-61.

Given that Lilly's labels "clearly and consistently warned of the precise injury" Plaintiffs allegedly suffered, *Taxotere*, 462 F. Supp. 3d at 653, this Court should grant summary judgment for Lilly.  *Alston*, 670 F. Supp. 2d at 284; *Austin*, 361 F.3d at 868; *Lin*, 760 F. Supp. 3d at 937.

## II.    PLAINTIFFS' CLAIMS FOR THE OTHER INJURIES ARE PREEMPTED.

Plaintiffs' claims for the Other Injuries are also independently preempted, providing an additional basis for granting summary judgment for Lilly.  A failure-to-warn claim cannot succeed if a manufacturer shows that federal law "prohibited [it] from adding a warning that would satisfy state law."  *Albrecht*, 587 U.S. at 314.  That can occur in two ways.  First, a failure-to-warn claim is preempted where the manufacturer lacked the "newly acquired information" required for a major label change under Changes Being Effected regulation, meaning the manufacturer could not have changed its label without FDA approval.  *See Knight v. Boehringer Ingelheim Pharms., Inc.*, 984 F.3d 329, 341 (4th Cir. 2021) (failure-to-warn claim preempted in the absence of newly acquired information).  Second, a failure-to-warn claim is preempted where there is "clear evidence that the

12

FDA would not have approved a change" to the medicine's label. *Wyeth v. Levine*, 555 U.S. 555, 571 (2009).

All Plaintiffs' Other Injuries claims are preempted. First, Plaintiffs have not identified any "newly acquired information" that would have allowed Lilly to add warnings regarding any of the Other Injures. Second, Plaintiffs' malnutrition, vitamin/micronutrient deficiency, Wernicke's Encephalopathy, and muscle wasting claims are also preempted because there is "clear evidence" that FDA would have rejected—and in fact *did* reject—Lilly's attempt to add additional warnings on the labels.

### A. Plaintiffs Identify No Newly Acquired Information That Would Have Allowed Lilly to Change the Labels for Any of the Other Injuries.

Plaintiffs have not identified any "newly acquired information" for any of the Other Injuries. FDA regulations define "newly acquired information" as "data, analyses, or other information not previously submitted to the agency." *Incretins*, 524 F. Supp. 3d at 1022 (quoting 21 C.F.R. § 314.3). Despite 18 months of discovery, Plaintiffs have not identified *any* such information regarding any of the Other Injuries. For that reason alone, all of Plaintiffs' claims for the Other Injuries are preempted. *Id.* (granting summary judgment where information was not "different to that already considered by the FDA's comprehensive review"); *see also Knight*, 984 F.3d at 341; *Holley v. Gilead Scis., Inc.*, 2023 WL 6390598, at *8 (N.D. Cal. Sept. 28, 2023) (granting summary judgment; "[p]laintiffs have not explained how [the newly acquired] information differed from the information that had already been presented to the FDA.").

### B. FDA Would Have Rejected Any Malnutrition, Vitamin/Micronutrient Deficiency, Wernicke's Encephalopathy, Or Muscle Wasting Warning.

Independently, all of Plaintiffs' malnutrition, vitamin/micronutrient deficiency, Wernicke's Encephalopathy, and muscle wasting claims are preempted because FDA declined Lilly's attempt to add such warnings despite being "fully informed of the justifications for the

warning label that plaintiffs contend was required by state law." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 541 F. Supp. 3d 164, 200 (D. Mass. 2021). A "two-pronged test" determines whether there is "clear evidence" that FDA would not have approved a warning: (i) the manufacturer must have "fully informed the FDA of the justifications for the warning," *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 118 F.4th 322, 345 (3d Cir. 2024) (quoting *Albrecht*, 587 U.S. at 314); and (ii) FDA must have taken some action carrying "the force of law," *id*. at 351 (quoting *Wyeth*, 555 U.S. at 576), that establishes it "would have rejected any and all warnings" that supposedly would have satisfied state law. *Id*. at 349.

Plaintiffs' claims for malnutrition, vitamin/micronutrient deficiency, Wernicke's Encephalopathy, and muscle wasting are preempted under *Fosamax*. First, FDA was fully informed of the justifications for a potential warning about malnutrition, vitamin/micronutrient deficiency, Wernicke's Encephalopathy, or muscle wasting. In December 2023, along with its PASs, Lilly provided FDA with a Safety Topic Report discussing all available clinical trial and post-marketing cases of malnutrition, vitamin/micronutrient deficiencies, and Wernicke's Encephalopathy. SUF ¶ 76-77. This included 11 malnutrition cases, including two "severe" cases and one with sudden death reported one day after symptom onset; five cases of muscle wasting (cachexia), including 1 severe, 28 cases of starvation, three cases of marasmus, three cases of protein deficiency, and one case of suspected Wernicke's Encephalopathy. *Id.* ¶ 68.

Second, FDA's rejection of Lilly's proposed warnings "carr[ies] the force of law" and establishes that it would have rejected "any and all warnings" related to malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy, or muscle wasting for Trulicity, Mounjaro, and Zepbound. *Fosamax*, 118 F.4th at 339, 343. FDA explained that "the data in [Lilly's] supporting document show that potential malnutrition-related events are rare in

14

tirzepatide-treated patients (0.07% in trials and 0.0003% in post-marketing), with no cases of convincing causality." SUF ¶ 85. No change in phrasing could change that evidentiary deficiency. 21 C.F.R. § 201.57(6)(i) (requiring "reasonable evidence of a causal association").

FDA's rejection of Lilly's proposed warning establishes as a matter of law that FDA would not have approved *any* warning of the supposed risks of malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy, or muscle wasting. "PAS submission and rejection … readily meet[s] the clear evidence standard." *Incretins*, 142 F. Supp. 3d at 1124; *Rheinfrank v. Abbott Lab'ys, Inc.*, 119 F. Supp. 3d 749, 769 (S.D. Ohio 2015) ("[B]ecause the FDA rejected Abbott's 2005 PAS, it likely would have rejected an earlier-submitted CBE seeking to add the same language to the label that it eventually rejected in the PAS."); *In re Depakote*, 87 F. Supp. 3d 916, 923 (S.D. Ill. 2015) (same); *Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*, 2025 WL 1024103, at *8 (D. Mass. Mar. 12, 2025).

Independently, as discussed above, all of Plaintiffs' claims for malnutrition, vitamin/micronutrient deficiencies, Wernicke's Encephalopathy, and muscle wasting are preempted because Plaintiffs do not identify any "newly acquired information" in the form of "data, analyses, or other information not previously submitted to the agency" for these conditions—either before or after FDA's rejection. *Incretins*, 524 F. Supp. 3d at 1022 (quoting 21 C.F.R. § 314.3). For this reason as well, these claims are preempted. *Knight*, 984 F.3d at 341; *Holley*, 2023 WL 6390598, at *8 (granting summary judgment; "[p]laintiffs have not explained how [the newly acquired] information differed from the information that had already been presented to the FDA.").

## **CONCLUSION**

The Court should grant summary judgment for Lilly on all claims for the GI Injuries, the Other Injuries, and their alleged sequelae.

Dated: May 19, 2026

Respectfully submitted,

/s/ Diana M. Watral

Diana M. Watral, P.C. (admitted *pro hac vice*)
Mark Premo Hopkins, P.C. (admitted *pro hac vice*)
Renee D. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
mark.premohopkins@kirkland.com
diana.watral@kirkland.com
renee.smith@kirkland.com

Samuel W. Silver (PA Bar No. 56596)
Catherine M. Recker (PA Bar No. 56813)
Bruce P. Merenstein (PA Bar No. 82609)
Abigail T. Burton (PA Bar No. 334450)
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
ssilver@welshrecker.com
cmrecker@welshrecker.com
bmerenstein@welshrecker.com
aburton@welshrecker.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a true and correct copy of the foregoing Lilly's Motion for Summary Judgment on Non-Gastroparesis Gastrointestinal and Miscellaneous Claims was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ Diana M. Watral*

Diana M. Watral, P.C.