# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | ) | |
| **IN RE: GLUCAGON-LIKE PEPTIDE-1** | ) | **CIVIL ACTION** |
| **RECEPTOR AGONISTS (GLP-1 RAs)** | ) | |
| **PRODUCTS LIABILITY LITIGATION** | ) | **MDL No. 3094** |
| | ) | **2:24-md-03094-KSM** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | **HON. KAREN SPENCER MARSTON** |
| ***ALL ACTIONS / ALL CASES*** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS ELI LILLY AND COMPANY AND LILLY USA, LLC'S MOTION FOR SUMMARY JUDGMENT ON GASTROPARESIS CLAIMS**

**TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................... 4

    A.    Since Day One, Lilly Has Warned About Delayed Gastric Emptying And Severe Gastrointestinal Reactions.................................................................. 4

    B.    FDA Considered And Rejected Additional Gastroparesis Warnings Many Times.......................................................................................................... 5

        1.    FDA Closely Reviewed And Approved The Zepbound Label Without Additional Gastroparesis Warnings In November 2023................................................................................................................ 6

        2.    Lilly Submitted Safety Topic Reports And Requested Additional Gastroparesis Warnings............................................................... 7

        3.    FDA Rejected Lilly's Requests to Add Additional Gastroparesis Warnings to Its Labels........................................................................ 8

    C.    FDA Has Adopted Classwide Labeling Without Additional Gastroparesis Warnings. ............................................................................................... 9

ARGUMENT........................................................................................................................... 9

I.    All Gastroparesis Claims Are Preempted........................................................... 9

    A.    There Is Clear Evidence FDA Would Have Rejected a Different Warning. ......... 10

        1.    FDA Was Fully Informed.................................................................... 10

        2.    FDA Rejected All Gastroparesis Warnings That Would Have Satisfied Plaintiffs' Putative State-Law Duty...................................... 11

II.    All Gastroparesis Claims Fail Because There Is No Triable Issue of Label Inadequacy........................................................................................................... 16

    A.    Lilly's Warnings About Severe Gastrointestinal Adverse Reactions Are Adequate As A Matter of Law To Warn of Gastroparesis. ................................. 18

    B.    Dr. Metz's Opinions Cannot Establish A Triable Issue That Lilly's Labels Were Inadequate to Warn of Gastroparesis. ......................................... 20

        1.    Expert Testimony Is Required To Support Warning Inadequacy Claims.............................................................................. 20

i

**TABLE OF CONTENTS (CONT'D.)**

Page

       **2.**     **Dr. Metz's Testimony Is Inadmissible and Insufficient.** ...................... 22

**III.**   **All Gastroparesis Claims Fail Because There Is No Triable Fact Issue on General Causation** ........................................................................................... **24**

     A.    Plaintiffs Agree There Is No General Causation for Prolonged Gastroparesis. ..................................................................................... 24

     B.    Plaintiffs Proffer No Admissible Expert Testimony on Drug-Induced Gastroparesis. ..................................................................................... 24

**CONCLUSION** ................................................................................................................. **25**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Wyeth*,
2010 WL 653984 (W.D. Pa. Feb. 19, 2010) ................................................................19, 21, 22

*In re Accutane Prods. Liab.*,
2012 WL 3194954 (M.D. Fla. July 24, 2012) ........................................................................18

*Auito v. Clarkston Creek Golf Club, Inc.*,
2004 WL 1254193 (Mich. Ct. App. June 8, 2004) .................................................................22

*Begley v. Bristol-Myers Squibb Co.*,
2013 WL 144177 (D.N.J. Jan. 11, 2013) .........................................................19, 21, 22, 23

*Bloom v. Medical Depot, Inc.*,
2025 WL 2803913 (E.D. Pa. Sept. 30, 2025) ........................................................................21

*Browning v. Wyeth, Inc.*,
38 A.D.3d 1177 (N.Y. App. Div. 2007) .................................................................................21

*Calisi v. Abbott Lab'ys*,
2013 WL 5441355 (D. Mass. Sept. 27, 2013) .......................................................................21

*Centocor, Inc. v. Hamilton*,
372 S.W.3d 140 (Tex. 2012)...................................................................................................17

*Chandler v. Janssen Pharms., Inc.*,
322 F. Supp. 3d 314 (E.D.N.Y. 2018) ...................................................................................21

*In re Chantix (Varenicline) Prods. Liab. Litig.*,
881 F. Supp. 2d 1333 (N.D. Ala. 2012)..................................................................................19

*Christison v. Biogen Idec Inc.*,
199 F. Supp. 3d 1315 (D. Utah 2016).....................................................................................20

*Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*,
2025 WL 1024103 (D. Mass. Mar. 12, 2025).........................................................................12

*Cloud v. Pfizer Inc.*,
198 F. Supp. 2d 1118 (D. Ariz. 2001) ...................................................................................22

*Demmler v. SmithKline Beecham Corp.*,
671 A.2d 1151 (Pa. 1996)........................................................................................................20

**TABLE OF AUTHORITIES (CONT'D.)**

**Page(s)**

*In re Depakote*,
   87 F. Supp. 3d 916 (S.D. Ill. 2015)..................................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
   2006 WL 1071545 (E.D. Pa. Apr. 21, 2006) ...................................................16

*Dion v. Graduate Hosp. of Univ. of Penn.*,
   520 A.2d 876 (Pa. Super. 1987)......................................................................21

*Doe v. Solvay Pharms., Inc.*,
   153 F. App'x 1 (1st Cir. 2005)........................................................................21

*Dolin v. GlaxoSmithKline LLC*,
   951 F.3d 882 (7th Cir. 2020) ...............................................................2, 10, 15

*Ehlis v. Shire Richwood, Inc.*,
   233 F. Supp. 2d 1189 (D.N.D. 2002).............................................................17

*Ehlis v. Shire Richwood, Inc.*,
   367 F.3d 1013 (8th Cir. 2004) .......................................................................21

*Eichin v. Ethicon Endo-Surgery, Inc.*,
   2024 WL 4564611 (D.S.C. Oct. 24, 2024) .....................................................21

*Feit v. Great W. Life & Annuity Ins. Co.*,
   271 Fed. Appx. 246 (3d Cir. 2008)............................................................24, 25

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
   118 F.4th 322 (3d Cir. 2024), *cert. denied sub nom. Merck Sharp & Dohme
   Corp. v. Albrecht*, 145 S. St. 2792 (2025)............................................. *passim*

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
   2014 WL 2738224 (D.N.J. June 17, 2014).....................................................17

*Graham v. Am. Cyanamid Co.*,
   350 F.3d 496 (6th Cir. 2003) .........................................................................21

*Grobelny v. Baxter Healthcare Corp.*,
   2008 WL 2186417 (D.N.J. 2008) ...................................................................21

*Guillory v. Pellerin*,
   2009 WL 922474 (W.D. La. Mar. 31, 2009) ..................................................17

*Habecker v. Copperloy Corp.*,
   893 F.2d 49 (3d Cir. 1990)..........................................................................24, 25

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*Hansen v. Baxter Healthcare Corp.*,
764 N.E.2d 35 (Ill. 2002) ...................................................................................................19

*Hill v. Squibb & Sons, E.R.*,
592 P.2d 1383 (Mont. 1979) ..............................................................................................21

*Himes v. Somatics, LLC*,
549 P.3d 916 (Cal. 2024) ...................................................................................................19

*Hoefling v. U.S. Smokeless Tobacco Co., LLC*,
576 F. Supp. 3d 262 (E.D. Pa. 2021) .................................................................................25

*Hollander v. Sandoz Pharm. Corp.*,
289 F.3d 1193 (10th Cir. 2002) .........................................................................................22

*Holverson v. ThyssenKrupp Elevator Corp.*,
2014 WL 3573630 (D. Minn. July 18, 2014) ....................................................................22

*Housely v. Orteck Intern, Inc.*,
488 F. Supp. 2d 819 (S.D. Iowa 2007) ..............................................................................22

*Ideus v. Teva Pharms. USA, Inc.*,
361 F. Supp. 3d 938 (D. Neb. 2019) ..................................................................................21

*In re Incretin-Based Therapies,*
524 F. Supp. 3d 1007 (S.D. Cal. 2021) ........................................................................15, 16

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
142 F. Supp. 3d 1108 (S.D. Cal. 2015) ..............................................................................12

*Johnson v. SmithKline Beecham Corp.*,
55 F. Supp. 3d 603 (E.D. Pa. 2014) ...................................................................................20

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
984 F.3d 329 (4th Cir. 2021) .............................................................................................10

*LaBarre v. Bristol-Myers Squibb Co.*,
544 F. App'x 120 (3d Cir. 2013) ........................................................................................21

*Lance v. Wyeth*,
85 A.3d 434 (Pa. 2014) ......................................................................................................17

*Leavitt v. Ethicon, Inc.*,
524 F. Supp. 3d 360 (D. Vt. 2021) .....................................................................................17

v

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*MacSwan v. Merck & Co.*,
  2023 WL 3990673 (W.D.N.Y. June 14, 2023)......................................................................21

*Mathison v. United States*,
  619 F. App'x 691 (10th Cir. 2015) .....................................................................................22

*McNeil Pharm. v. Hawkins*,
  686 A.2d 567 (D.C. 1996) ...................................................................................................21

*Menz v. New Holland N. Am., Inc.*,
  507 F.3d 1107 (8th Cir. 2007) .............................................................................................22

*Merck Sharpe & Dohme Corp. v. Albrecht*,
  587 U.S. 299 (2019)..................................................................................................... *passim*

*In re Meridia Prods. Liab. Litig.*,
  328 F. Supp. 2d 791 (N.D. Ohio 2004), *aff'd* 447 F.3d 861 (6th Cir. 2006)...........................3

*Meridia Prods. Liab. Litig. v. Abbott Labs.*,
  447 F.3d 861 (6th Cir. 2006) ........................................................................................17, 19

*J.C. ex rel. Michelle C. v. Pfizer, Inc.*,
  814 S.E.2d 234 (W. Va. 2018)..............................................................................................21

*Mills v. State Sales, Inc.*,
  824 A.2d 461 (R.I. 2003) ......................................................................................................22

*In re Mirena IUD Prods. Liab. Litig.*,
  202 F. Supp. 3d 304 (S.D.N.Y. 2016), *aff'd,* 713 F. App'x 11 (2d Cir. 2017).......................22

*Montagnon v. Pfizer, Inc.*,
  584 F. Supp. 2d 459 (D. Conn. 2008)...................................................................................21

*Morris Int'l, Inc. v. Packer*,
  2021 WL 5115529 (N.C. Super. Ct. Nov. 2, 2021) ..............................................................22

*Nationwide Mut. Ins. Co. v. Barton Solvents Inc.*,
  855 N.W.2d 145 (S.D. 2014) ...............................................................................................21

*Nicholson v. Biomet, Inc.*,
  2020 WL 3399899 (N.D. Iowa Mar. 6, 2020) ......................................................................17

*Piltch v. Ford Motor Co.*,
  778 F.3d 628 (7th Cir. 2015), *abrogated by Kaiser v. Johnson & Johnson*, 947
  F.3d 996 (7th Cir. 2020) .......................................................................................................22

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*Puckett v. Mt. Carmel Regl Med. Ctr.*,
  290 Kan. 406, 228 P.3d 1048 (2010) ..................................................................................22

*Rheinfrank v. Abbott Laboratories*,
  119 F. Supp. 3d 749 (S.D. Ohio 2015) ..............................................................................12

*Rimbert v. Eli Lilly & Co.*,
  577 F. Supp. 2d 1174 (D.N.M. 2008) ................................................................................21

*Rodman v. Otsuka Am. Pharm., Inc.*,
  564 F. Supp. 3d 879 (N.D. Cal. 2020) ..............................................................................21

*Rowland v. Novartis Pharms. Corp.*,
  34 F. Supp. 3d 556 (W.D. Pa. 2014)..................................................................................20

*S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*,
  410 A.2d 1359 (Vt. 1980)..................................................................................................22

*Salvio v. Amgen*,
  2012 WL 517446 (W.D. Pa. 2012) ....................................................................................19

*Sheridan v. Merck & Co.*,
  2003 WL 22902622 (E.D. La. Dec. 8, 2003).....................................................................21

*Estate of Sicotte v. Lubin & Meyer, P.C.*,
  959 A.2d 236 (N.H. 2008) ................................................................................................22

*Sliman v. Aluminum Co. of Am.*,
  731 P.2d 1267 (Idaho 1986)..............................................................................................17

*Smith v. Chrysler Grp., L.L.C.*,
  909 F.3d 744 (5th Cir. 2018) .............................................................................................22

*Sosnowski v. Wright Med. Tech., Inc.*,
  2012 WL 1030485 (N.D. Ill. Mar. 27, 2012).....................................................................20

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
  2020 WL 3487594 (E.D. La. June 1, 2020)..................................................................17, 23

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
  462 F. Supp. 3d 650 (E.D. La. 2020)................................................................................17

*Thompson v. Boston Sci. Corp.*,
  2022 WL 4593086 (M.D. La. Sept. 29, 2022).....................................................................19

vii

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*Upjohn v. MacMurdo*,
562 So. 2d 680 (Fla. 1990)..................................................................................21

*Vassos v. Roussalis*,
625 P.2d 768 (Wyo. 1981)...................................................................................22

*Vitanza v. Upjohn Co.*,
778 A.2d 829 (Conn. 2001) .................................................................................17

*Webster v. Pacesetter, Inc.*,
259 F. Supp. 2d 27 (D.D.C. 2003) .......................................................................21

*Weilbrenner v. Teva Pharms. USA, Inc.*,
696 F. Supp. 2d 1329 (M.D. Ga. 2010) ...............................................................21

*Willard v. Park Industries*,
69 F. Supp. 2d 268 (D.N.H. 1999).......................................................................21

*Wood v. Toyota Motor Corp.*,
760 A.2d 315 (Md. Ct. Spec. App. 2000) ............................................................22

*Wright v. Lilly*,
2004 WL 2656839 (Va. Cir. Ct. 2004) ................................................................22

*Wyeth Labs v. Fortenberry*,
530 So. 2d 688 (Miss. 1988)................................................................................21

*Wyeth v. Levine*,
555 U.S. 555 (2009).........................................................................................1, 10

*In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*,
884 F.3d 746 (7th Cir. 2018) ...............................................................................21

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
541 F. Supp. 3d 164 (D. Mass. 2021), *aff'd*, 57 F.4th 327 (1st Cir. 2023)..................11, 12, 15

*In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*,
176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd* 858 F.3d 787 (3d Cir. 2017).....................3, 24, 25

**Statutes**

21 U.S.C. § 355(o)(4)(A).................................................................................15, 16

## <u>TABLE OF AUTHORITIES (CONT'D.)</u>

**Page(s)**

**Rules**

Fed. R. Evid. 702 ............................................................................................................20

## INTRODUCTION

Since this case began, Plaintiffs' failure-to-warn allegations about gastroparesis have been severely flawed. They have now fallen apart entirely. Plaintiffs' expert Dr. Metz disclosed a report finding ***no general causation*** for prolonged gastroparesis, stating, "[T]here simply is no reported literature of any kind that has investigated the question of prolonged or permanent gastroparesis injury with these medications." FDA assessed the issue in late 2023 and determined, "At this time, further language regarding gastroparesis in labeling is not supported," and rejected further gastroparesis warnings that Lilly proposed. And from day one, Lilly's labels have warned of "severe" "gastrointestinal disease." The record provides several independent bases to grant summary judgment to Lilly on all gastroparesis claims: (1) they are preempted; (2) Lilly's labels adequately warned of the alleged injury; and (3) there is no triable issue on general causation.

Federal preemption. All gastroparesis claims are preempted because there is "clear evidence" FDA would have rejected (and, in fact, ***did*** reject) any additional warning regarding gastroparesis. *Wyeth v. Levine*, 555 U.S. 555, 571 (2009). In December 2023 and January 2024, Lilly submitted Prior Approval Supplements ("PAS") that proposed adding additional information about gastroparesis to the Trulicity, Mounjaro, and Zepbound labels. The proposed language stated that "[e]vents related to impaired gastric emptying, including severe gastroparesis, have been reported." SUF ¶¶ 82-108. FDA rejected it. SUF ¶¶ 109-136.

If ever there were a circumstance where FDA's rejection of a proposed labeling change had preemptive effect, it is here. FDA was "fully informed … of the justifications for the warning," and the Agency made a legally binding determination that an additional gastroparesis warning was not warranted. *Merck Sharpe & Dohme Corp. v. Albrecht*, 587 U.S. 299, 314 (2019). And there is no doubt that FDA's rejection satisfies the preemption standard set forth under *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*: the Agency noted that "[t]he existing warning and

precaution and section 6 describe GI adverse reactions," and that the data "did not provide evidence of a ca[us]al association" with gastroparesis, SUF ¶¶ 114, 127, consistent with its earlier assessment that "further language regarding gastroparesis in labeling is not supported."  118 F.4th 322 (3d Cir. 2024), *cert. denied sub nom. Merck Sharp & Dohme Corp. v. Albrecht*, 145 S. Ct. 2792 (2025). FDA then required a labeling update for Novo's GLP-1 RA medicines to add ***the same warning that Lilly's labels always had*** for "Severe Gastrointestinal Adverse Reactions."  By "formally mandat[ing] that all [GLP-1 RAs] carry a uniform, class-wide warning label" for severe gastrointestinal events, FDA further "unambiguously rejected" any additional language regarding gastroparesis. *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 891 (7th Cir. 2020).

Warning adequacy:  Lilly's warnings about severe gastrointestinal adverse reactions are adequate—as FDA repeatedly recognized when stating "[t]he existing warning and precaution and section 6 describe GI adverse reactions," rejecting additional warning language, harmonizing other GLP-1 RA medicines to include the same language, and continuing to approve GLP-1 RA medicines without additional gastroparesis warnings.

Plaintiffs offer only one expert, Dr. Metz, who opines that Lilly's FDA-approved warning for severe gastrointestinal risks did not adequately advise physicians of a risk of gastroparesis, and his opinion is unreliable and inadmissible. *See* Mot. #1 (Gastroparesis 702). Lilly is entitled to summary judgment on that ground alone. And even if his testimony were admissible, there is still no genuine issue of fact because Lilly's labels adequately warn of gastroparesis as a matter of law. Plaintiffs define gastroparesis as having two hallmarks: delayed gastric emptying and severe gastrointestinal symptoms. Dkt. No. 379 at 4. Lilly's labels have always warned of both. SUF ¶¶ 3-24, 56-65, 137-155. Neither Plaintiffs nor Dr. Metz explain why this warning was inadequate. Plaintiffs cannot define the injury one way and then argue the labeling is insufficient even though

it warns of both prongs of that injury definition. *See In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 812-13 (N.D. Ohio 2004), *aff'd* 447 F.3d 861, 867 (6th Cir. 2006).

General causation:  Despite their original focus on prolonged gastroparesis, Plaintiffs have now abandoned it. No expert offers a general causation opinion for prolonged gastroparesis, with Dr. Metz instead conceding there is no general causation. SUF ¶ 188. There is no fact dispute, so this Court should grant summary judgment on all prolonged gastroparesis claims.

That leaves what Plaintiffs call "drug-induced gastroparesis." In its Issue 1 ruling, the Court noted that "[d]rug-induced gastroparesis is different from the other subsets of gastroparesis in that it is temporary and should cease when the patient stops taking the medication at issue." Dkt. No. 467 at 5-6. Conceding there is no scientific support for prolonged gastroparesis, Plaintiffs now try to blur the line between "drug-induced" and "prolonged" by defining "drug-induced gastroparesis" as gastroparesis lasting up to six months after a patient stops the medicine. SUF ¶ 197.[1] But they fail to offer reliable expert causation testimony. Without sufficient expert testimony on general causation, their drug-induced gastroparesis claims fail too. *In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 498-99 (E.D. Pa. 2016), *aff'd* 858 F.3d 787 (3d Cir. 2017).

The Court should grant summary judgment to Lilly on all gastroparesis claims, including prolonged, drug-induced, impaired gastric emptying, and delayed gastric emptying.[2]

---

[1]  Lilly understands Plaintiffs' definition of "prolonged" or "long-term" gastroparesis therefore to consist of gastroparesis that lasts longer than six months.  SUF ¶ 197.  Throughout its brief, Lilly uses the term "prolonged" to mirror the language of Dr. Metz, Plaintiffs' expert.

[2]  At the February 10, 2026, status conference, Lilly stated—with no disagreement by Plaintiffs—that "an allegation of impaired gastric emptying or delayed gastric emptying with GI symptoms…is not a different or separate injury from the injury that was addressed by Plaintiffs' Issue 1 experts," Ex. 271D, Hr'g. Tr. 15:17-16:15, and so Lilly considered these to be the same and did not intend to address "gastric emptying, delayed gastric emptying and gastroparesis…as separate injuries." *Id.* 23:22-24:5. Consistent with this, Dr. Metz testified that when he opined on "impaired gastric emptying or delayed gastric emptying with signs and symptoms associated with gastroparesis," Lilly could "treat that as [Dr. Metz] talking about gastroparesis." *Id.* 21:13-19; *see id.* 58:7-14

3

## BACKGROUND

**A.      Since Day One, Lilly Has Warned About Delayed Gastric Emptying And Severe Gastrointestinal Reactions.**

FDA and Lilly have always been aware of and transparent about the fact that GLP-1 RAs cause delayed gastric emptying and can lead to severe gastrointestinal reactions in some patients. Since its approval in September 2014, Trulicity's label has always included a Section 5 warning that states, "[u]se of TRULICITY may be associated with gastrointestinal adverse reactions, sometimes severe."  SUF ¶ 3. Trulicity's label also includes information in Section 6 (Adverse Reactions) about gastrointestinal reactions such as nausea, diarrhea, vomiting, abdominal pain, and dyspepsia. SUF ¶ 5. Section 6 also reports that in clinical trials, "[t]he following adverse reactions were reported more frequently in TRULICITY-treated patients than placebo" listing constipation, flatulence, abdominal distension, gastroesophageal reflux disease, and eructation for Trulicity. SUF ¶ 5. It also repeatedly warns of delayed gastric emptying, including in the "Highlights of Prescribing Information" section:

- Section 7.1 says that "Trulicity slows gastric emptying."

- Section 8.8 says that "Dulaglutide slows gastric emptying."

- Section 12.1 states that "Dulaglutide also decreases glucagon secretion and slows gastric emptying."

- Section 12.2 says that "Dulaglutide causes a delay of gastric emptying."; and

- Section 12.3 on Pharmacokinetics says that "Dulaglutide slows gastric emptying."

SUF ¶¶ 6-10.

Similarly, since approval on May 13, 2022 and November 8, 2023, respectively, Mounjaro and Zepbound have always warned in Section 5 that use "has been associated with gastrointestinal

---

("Q: [W]hen you talk about problems with gastric emptying effects … are you using that synonymously with your … term 'drug-induced gastroparesis' or impaired gastric emptying or gastric dysmotility, things like that? A: Correct.").

adverse reactions, sometimes severe." SUF ¶¶ 13, 16, 56, 57. The labels repeatedly and prominently warn of delayed gastric emptying and identify certain gastrointestinal reactions in Section 6. SUF ¶¶ 17-22, 58-63. Section 6 also reports that in clinical trials, "more patients" "discontinued treatment due to gastrointestinal adverse reactions than patients receiving placebo," SUF ¶¶ 18, 59, and that "[t]he following gastrointestinal adverse reactions were reported more frequently" than "placebo-treated patients," listing nausea, diarrhea, vomiting, constipation, and abdominal pain, among others, for Mounjaro and Zepbound, SUF ¶¶ 18, 59.

In addition, the Medication Guide for each Lilly medicine has always stated that they "may cause serious side effects, including" "severe stomach problems." SUF ¶¶ 11, 23, 64. It also lists "[t]he most common side effects" as "nausea, diarrhea, vomiting, decreased appetite, and indigestion" for Trulicity, "nausea, diarrhea, decreased appetite, vomiting, constipation, indigestion, and stomach (abdominal) pain" for Mounjaro, and "nausea, diarrhea, vomiting, stomach (abdominal) pain, [and] indigestion," among others, for Zepbound. SUF ¶¶ 12, 24, 65.

### B. FDA Considered And Rejected Additional Gastroparesis Warnings Many Times.

In August 2023—the same month Plaintiffs filed their first gastroparesis lawsuit—FDA notified Lilly it was considering the potential relationship between Lilly's GLP-1 RA medicines and "gastroparesis" and asked Lilly to conduct a "cumulative review of all cases of severe/serious, prolonged, or worsening gastroparesis" for Trulicity and Mounjaro. SUF ¶¶ 25, 27.[3] FDA instructed that the analysis "should include a review of the published literature, clinical trial data, data from spontaneous reports, and reports from studies," and supplied a list of search terms. SUF ¶¶ 26, 28-29. Lilly submitted Regulatory Responses to FDA in October 2023, concluding after a

---

[3] Zepbound was approved on November 8, 2023. *See* SUF ¶ 56.

comprehensive review that the data did not warrant updating the labels. SUF ¶¶ 30, 37, 38, 43. FDA then considered—and rejected—additional language about gastroparesis multiple times.

**1.    FDA Closely Reviewed And Approved The Zepbound Label Without Additional Gastroparesis Warnings In November 2023.**

In November 2023, FDA issued a Clinical Review as part of its FDA-approval process for Lilly's Zepbound. SUF ¶¶ 44. A Clinical Review is a detailed evaluation by FDA medical officers of clinical data submitted in support of a new drug application to determine if the new drug is safe and effective for public use. SUF ¶ 14. FDA's Clinical Review praised the submission and data quality for Zepbound as being "very good," specifically highlighting that Lilly's "data were consistent across datasets" and that Lilly provided "[a]ll clinical items requested in meetings with FDA leading up to and after submission." SUF ¶ 47. FDA specifically assessed clinical trial data about gastroparesis due to "post-marketing reports of severe gastroparesis events in patients treated with incretin drugs." SUF ¶ 52. FDA concluded gastroparesis was "a rare event reported in tirzepatide treated subjects (3/2519, 0.12%)" and that "the three narratives [of subjects reporting gastroparesis] are consistent with these events not being serious or severe." SUF ¶ 53.

FDA's Clinical Review closely scrutinized the proposed Zepbound labeling in consultation with FDA's Division of Medical Policy Programs (DMPP) and the Office of Prescription Drug Promotion (OPDP). SUF ¶ 48. FDA noted that "GLP-R agonists have a well-characterized safety profile," SUF ¶ 49, and determined "[t]he prevalence, severity, and seriousness of GI [treatment-emergent adverse events] with tirzepatide are consistent with the extensive clinical experience with GLP-1R agonists, are monitorable and reversible, and severe and common GI adverse reactions will be clearly addressed in Sections 5 and 6 of labeling of tirzepatide for [chronic weight management]," SUF ¶ 50. FDA also determined that "[t]he observed safety concerns" could be "adequately addressed with proposed product labeling and routine pharmacovigilance," thus "no

6

additional risk evaluation and mitigation strategy (REMS) is recommended for [Zepbound]." SUF ¶ 55. Notably, FDA concluded that "*[a]t this time, further language regarding gastroparesis in labeling is not supported*." SUF ¶ 46 (emphasis added). FDA then approved Zepbound on November 8, 2023, with Section 5 warning, like Trulicity and Mounjaro, that use "has been associated with gastrointestinal adverse reactions, sometimes severe." SUF ¶¶ 56-57.

### 2. Lilly Submitted Safety Topic Reports And Requested Additional Gastroparesis Warnings.

In addition to its October 2023 regulatory responses, Lilly prepared Safety Topic Reports in November 2023 for tirzepatide (Mounjaro and Zepbound) and in December 2023 for dulaglutide (Trulicity). SUF ¶¶ 66, 74. For both Safety Topic Reports, Lilly reviewed clinical trials, postmarketing safety studies, pharmacoepidemiologic studies, scientific literature, spontaneously reported adverse events, and postmarketing experiences. SUF ¶¶ 70, 76. Lilly concluded the data did not support a causal relationship between gastroparesis and tirzepatide or dulaglutide. SUF ¶¶ 72, 81. Lilly nonetheless considered gastroparesis a "potential risk," *i.e.*, "[a]n adverse event for which there is some basis for suspicion of a causal association with the medicinal product of interest but where this association has not been confirmed." SUF ¶¶ 71-73, 79.

Lilly submitted its Safety Topic Reports and PASs to FDA for Mounjaro and Zepbound in December 2023 and Trulicity in January 2024. SUF ¶¶ 82-83, 91-92, 100-101. Lilly asked FDA to add the following language to Section 5 for all three labels:

> Events related to impaired gastric emptying, including severe gastroparesis, have been reported. Monitor and consider dose modification or discontinuation in patients who develop severe gastrointestinal symptoms while on treatment.

SUF ¶¶ 88, 97, 106. Lilly also asked FDA to add identical language to the Warnings and Precautions highlights at the top of the labels. SUF ¶¶ 85, 94, 103.

     **3.**     **FDA Rejected Lilly's Requests to Add Additional Gastroparesis Warnings to Its Labels.**

In September 2024, FDA rejected Lilly's proposed gastroparesis warning for Zepbound. FDA sent Lilly a redlined version of its proposed label striking the new gastroparesis language from Section 5 and the label's highlights section. SUF ¶¶ 109, 112-113.

> **5.2**    **Severe Gastrointestinal** Adverse Reactions~~Disease~~
>
> Use of ZEPBOUND has been associated with gastrointestinal adverse reactions, sometimes severe *[see Adverse Reactions (6.1)]*. In clinical trials, severe gastrointestinal adverse reactions were reported more frequently among patients receiving ZEPBOUND (5 mg 1.7%, 10 mg 2.5%, 15 mg 3.1%) than placebo (1%).
> ZEPBOUND has not been studied in patients with severe gastrointestinal disease, including severe gastroparesis, and is therefore not recommended in these patients. ~~Events related to impaired gastric emptying, including severe gastroparesis, have been reported. Monitor and consider dose modification or discontinuation in patients who develop severe gastrointestinal symptoms while on treatment.~~

FDA explained in a comment its reasons for rejecting the additional warning:

> Disagree with proposed addition. In your supporting documentation for the addition of gastroparesis you cite Sodhi et al., an observational study with multiple limitations including methodological and quality control issues. In addition, you concluded that the data in your review did not provide evidence of a ca[us]al association between tirzepatide and gastroparesis.

SUF ¶ 114. FDA also noted that "[t]he current [package insert] contains information on [gastrointestinal] adverse reactions and tolerability. The existing warning and precaution and [S]ection 6 describe [gastrointestinal] adverse reactions with tirzepatide, including tolerability and discontinuation." *Id.* FDA rejected identical language that Lilly proposed for the Trulicity and Mounjaro labels the following month. SUF ¶¶ 115, 119, 122, 125. FDA's comments for Mounjaro were identical to Zepbound's. SUF ¶ 127. For Trulicity, FDA stated, "Disagree with proposed addition. The current PI contains information on GI adverse reactions and tolerability." SUF ¶ 121.

After the PAS submissions, Lilly accepted FDA's proposed label revisions, and FDA approved Lilly's labeling for all three medicines without the proposed additional gastroparesis language. SUF ¶¶ 128-136. All three labels continued to state that use may be "associated with gastrointestinal adverse reactions, sometimes severe." *Id.*

C.    **FDA Has Adopted Classwide Labeling Without Additional Gastroparesis Warnings.**

A few months after approving Lilly's labels without additional gastroparesis warnings, FDA began requiring Novo to add the same "Severe Gastrointestinal Adverse Reactions" warning as in the Lilly labels—without any additional language about gastroparesis. In November 2024, FDA requested that Novo add a "Severe Gastrointestinal Adverse Reactions" warning in Section 5 for Wegovy—tracking the same warnings as Lilly's medicines: "Use of WEGOVY has been associated with gastrointestinal adverse reactions, sometimes severe." SUF ¶¶ 156-157. FDA made the same request for the Rybelsus label on November 20, 2024, SUF ¶¶ 158-159; for Ozempic on December 20, 2024, SUF ¶¶ 162-163; for Victoza on April 22, 2025, SUF ¶¶ 165-166; and for Saxenda in April 22, 2025, SUF ¶¶ 167-168.

## ARGUMENT

The Court should grant summary judgment to Lilly on all gastroparesis claims for three independent reasons. *First*, all gastroparesis claims are preempted because there is clear evidence that a fully informed FDA rejected any additional gastroparesis warnings. *Second*, Plaintiffs have not met their burden to show Lilly's warnings about gastroparesis were inadequate. *Third*, Plaintiffs agree Lilly's medicines do not cause prolonged gastroparesis, and they do not have reliable expert testimony to support "drug-induced" gastroparesis as they now define it.

## I.    ALL GASTROPARESIS CLAIMS ARE PREEMPTED.

A failure-to-warn claim cannot succeed if a manufacturer shows that federal law "prohibited [it] from adding a warning that would satisfy state law." *Albrecht*, 587 U.S. at 314. That can occur in two ways. First, a failure-to-warn claim is preempted where the manufacturer lacked the "newly acquired information" that the Changes Being Effected (CBE) regulation requires for it to make a major label change, that is, it could not have changed its label without

9

FDA approval. *See Knight v. Boehringer Ingelheim Pharms., Inc.*, 984 F.3d 329, 341 (4th Cir. 2021) (holding failure-to-warn claim preempted without newly acquired information). Second, a failure-to-warn claim is preempted where there is "clear evidence that the FDA would not have approved a change to [the medicine's label]." *Wyeth*, 555 U.S. at 571; *Albrecht*, 587 U.S. at 302.

All claims alleging that Lilly failed to warn that its GLP-1 RA products could cause gastroparesis are preempted because there is "clear evidence that FDA would not have approved" any additional gastroparesis warning. *Wyeth*, 555 U.S. at 571. The evidence of Agency rejection could not be any clearer: Lilly proposed just such a gastroparesis warning, and FDA rejected it.

### A.    There Is Clear Evidence FDA Would Have Rejected a Different Warning.

FDA's rejection of Lilly's proposed gastroparesis warning is the clearest possible evidence that the Agency would not have approved the warning that Plaintiffs claim state law required. Both prongs of the "clear evidence" inquiry are met. First, FDA was "fully informed" of the relevant data through the Safety Topic Reports that Lilly submitted, as well as FDA's own review, including when approving Zepbound. Second, by rejecting the warning because "[t]he existing warning and precaution and section 6 describe GI adverse reactions," SUF ¶¶ 114, 127, and "because the science did not show a sufficient causal connection," *Fosamax*, 118 F.4th at 350, FDA established as a matter of law that no additional gastroparesis warning could be added.

### 1.    FDA Was Fully Informed.

Lilly "submitted all material information to the FDA" when it proposed the gastroparesis warning that the Agency ultimately rejected, *Albrecht*, 587 U.S. at 317, because it "disclosed the relevant data underlying its desired … warning." *Dolin*, 951 F.3d at 891. Lilly submitted regulatory responses for tirzepatide and dulaglutide in October 2023, SUF ¶¶ 30, 38, and then submitted Safety Topic Reports in December 2023 and January 2024, SUF ¶¶ 82-83, 91-92, 100-101. As FDA requested, Lilly conducted a "cumulative review of all cases of severe/serious,

prolonged, or worsening gastroparesis," used FDA's exact search terms, and canvassed results from "the published literature, clinical trial data, data from spontaneous reports, and reports from studies." SUF ¶¶ 25-29, 68-70, 76-78. For Mounjaro and Zepbound, Lilly's Safety Topic Report discussed adverse events from 29 clinical trials and 17 postmarketing cases. SUF ¶ 67. For Trulicity, it discussed adverse event reports from 27 clinical trials, 177 postmarketing cases, and two observational studies. SUF ¶ 75. Lilly's regulatory response and Safety Topic Reports "fully informed" FDA of "the justifications for the warning label that plaintiffs contend was required by state law." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 541 F. Supp. 3d 164, 200 (D. Mass. 2021), *aff'd*, 57 F.4th 327 (1st Cir. 2023)*.* Plaintiffs' gastroparesis expert, Dr. Metz, even testified that Lilly supplied FDA with everything he reviewed to prepare his opinions. SUF ¶ 195 ("Are you asking me, was the FDA aware of all of these reports?  And I'm going to say, yes, they were.").

Federal law requires nothing more to give FDA's rejection of the proposed warning preemptive effect. In addition, FDA conducted its own comprehensive review of clinical-trial and postmarketing data when evaluating Zepbound's approval around the same time in late 2023, SUF ¶¶ 44-53, further supporting that FDA was "fully informed."

### 2. FDA Rejected All Gastroparesis Warnings That Would Have Satisfied Plaintiffs' Putative State-Law Duty.

FDA's actions also satisfy the second prong of the "clear evidence" standard because they establish as a matter of law that the Agency "would have rejected any and all" additional warnings regarding gastroparesis. *Fosamax*, 118 F.4th at 349. FDA made a considered decision **not** to add any additional gastroparesis warning under the federal labeling regulations, which means that no warning can be added without violating federal law. *Albrecht*, 587 U.S. at 314.

a.    **FDA's Rejection Of The Proposed Gastroparesis Warning Carries The Force Of Law.**

There should be no dispute that FDA's approval of Lilly's labels without Lilly's proposed gastroparesis language, and FDA's subsequent repeated approval of GLP-1 RA labels that omitted any further warnings of gastroparesis risk, is an authoritative Agency action with preemptive effect. In *Albrecht*, the Supreme Court stated that FDA could communicate its disapproval of a warning by "formally rejecting" the warning, or through "other agency action carrying the force of law." 587 U.S. at 316. Multiple courts have found—and no court has disagreed—that the rejection of a warning proposed through a PAS has preemptive effect under that standard. The court in *Zofran*, for example, considered a regulatory record exactly like the one here and found the plaintiffs' claims were preempted. 541 F. Supp. 3d 164. In *Zofran*, the manufacturer submitted a PAS that proposed adding a warning regarding the risk at issue in the litigation, and FDA responded with "a redlined version of the Zofran labeling with explanatory comments," just as FDA did here. *Id*. at 181. In that redline, FDA "rejected the proposed warning." *Id*. The manufacturer then "accepted in full all of the FDA's … proposals and revisions," *id*. at 182, and FDA approved the label without the proposed warning. The district court determined that those actions had preemptive effect, holding the plaintiffs' claims were "preempted based on the FDA's response to th[e] PAS," *id*. at 204, and the First Circuit affirmed, 57 F.4th at 342 ("FDA's eventual 2021 approval of Novartis's revised label ... is formal agency action with the force of law.").[4]

---

[4]    Several other courts have reached the same conclusion that "PAS submission and rejection … readily meet[s] the clear evidence standard." *In re Incretin-Based Therapies Prods. Liab. Litig.*, 142 F. Supp. 3d 1108, 1124 (S.D. Cal. 2015); *see also Rheinfrank v. Abbott Laboratories*, 119 F. Supp. 3d 749, 769 (S.D. Ohio 2015) ("[B]ecause the FDA rejected Abbott's 2005 PAS, it likely would have rejected an earlier-submitted CBE seeking to add the same language to the label that it eventually rejected in the PAS."); *In re Depakote*, 87 F. Supp. 3d 916, 922 (S.D. Ill. 2015) (same); *Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*, 2025 WL 1024103, at *8 (D. Mass. Mar. 12, 2025) (finding preemption because "the FDA rejected exactly those changes [proposed by the plaintiff], which AMAG proposed in its PAS").

b.    **FDA Determined Lilly's Existing Warning Is Adequate and Rejected Lilly's Proposed Warning.**

FDA's rejection of Lilly's proposed gastroparesis warning establishes it would reject ***any*** gastroparesis warning that could satisfy Plaintiffs' alleged duty to warn. FDA "[d]isagree[d]" with the proposed gastroparesis language because "[t]he existing warning and precaution and section 6 describe GI adverse reactions" and the data "did not provide evidence of a ca[us]al association" with gastroparesis. SUF ¶¶ 114, 127. In other words, FDA determined that Lilly's general warning regarding gastrointestinal risks is adequate and scientific evidence does not support any additional gastroparesis language. Those reasons for rejection would apply to any gastroparesis warning, no matter how it was phrased. Thus, federal law, as interpreted and enforced by FDA, "prohibited" Lilly from adding the warning that Plaintiffs claim state law requires. *Albrecht*, 587 U.S. at 310.

The reasons FDA gave for its decision do not have any of the ambiguity that led the Third Circuit to reject the manufacturer's preemption defense in *Fosamax*. There, FDA "agree[d]" with Merck "that atypical and subtrochanteric fractures should be added" to the Adverse Reactions section of Fosamax's label. *Fosamax*, 118 F.4th at 351. But FDA found Merck's "justification" for its proposal was "inadequate" because "[i]dentification of 'stress fractures'"—the term Merck had used in its proposed labeling—"may not be clearly related to the atypical subtrochanteric fractures that have been reported in the literature" and thus "[d]iscussion of the risk factors for stress fractures is not warranted." *Id*. at 335. This created ambiguity: it was possible to read FDA's rejection as turning on the language the manufacturer used, rather than another reason, like the evidence of causation. *Id.* at 356–7. As the Third Circuit explained, when FDA determined the "justification" for Merck's warning was inadequate, it "could [have been] referring to a lack of scientific support," "[b]ut it could *also* mean that there is no basis to include language referring to generic stress fractures in a warning that is supposed to be about atypical femoral fractures." *Id*. at

13

353-54 (emphasis added). Because of this ambiguity, the Third Circuit applied a "presumption against pre-emption" and accepted the reasonable reading that avoided preemption. *Id*. at 355.

Here, there is no ambiguity, so the presumption against preemption does not apply. There is no evidence that FDA took issue with the terminology Lilly used in its proposed gastroparesis warning. Even Plaintiffs' expert Dr. Metz did not take issue with the phrasing of Lilly's proposed warning.[5] Instead, FDA's comments pertain to the contents of the existing warning and the lack of evidence of causation. FDA's explanatory comment that accompanied the rejections for all three medicines endorsed the existing warning, stating, "[t]he current PI contains information on GI adverse reactions and tolerability." SUF ¶¶ 114, 121, 127. For Mounjaro and Zepbound, FDA further noted that the Sodhi 2023 publication had "multiple limitations including methodological and quality control issues" and that Lilly "concluded that the data in your review ***did not provide evidence of a ca[us]al association*** between tirzepatide and gastroparesis." SUF ¶¶ 114, 127 (emphasis added). Indeed, FDA had already concluded in November 2023 based on a comprehensive clinical review of Zepbound's approval package that: "[a]t this time, further language regarding gastroparesis in labeling ***is not supported***." SUF ¶ 46 (emphasis added). Unlike in *Fosamax*, FDA's statements focus unequivocally on the adequacy of existing label language and lack of evidentiary support for an additional gastroparesis warning.

      c.      **FDA's Subsequent Actions Confirm It Has Determined The Evidence Does Not Support a Gastroparesis Warning.**

The Court need look no further than FDA's rejection of Lilly's proposed gastroparesis warning to decide preemption, but FDA's subsequent decisions to require similar "Severe

---

[5]    *Compare* SUF ¶ 196 [Ex. 33D, Metz Dep. 81:14-24] (opining Trulicity label should have warned of "events relating to delayed gastric emptying that could have been severe," including gastroparesis), *with* SUF ¶¶ 82-108 (Lilly's proposed warning: that "[e]vents related to impaired gastric emptying, including severe gastroparesis, have been reported").

Gastrointestinal Adverse Reactions" warnings for all GLP-1 RA medicines—without additional mention of gastroparesis—confirm the Agency would reject any additional warnings. Within seven months of rejecting Lilly's proposed warning, FDA required materially identical warnings as already included in Lilly's labels for Wegovy, Ozempic, Rybelsus, Victoza, and Saxenda, adding a Section 5 warning that each may be "associated with gastrointestinal adverse reactions, sometimes severe," without any additional language about gastroparesis. SUF ¶¶ 156-169.

FDA's decision to require a classwide warning that does *not* include an additional gastroparesis warning is clear evidence the Agency would not permit such a warning for Lilly's medicines. *Cf. Dolin*, 951 F.3d at 891 ("FDA unambiguously rejected a Paxil-specific warning in 2007 when it formally mandated that all SSRIs carry a uniform, class-wide warning label"). If FDA believed the evidence supported a causal association between GLP-1 RAs and gastroparesis, 21 U.S.C. § 355(o)(4)(A) would require it to inform all manufacturers of the need for a label change. *Zofran*, 541 F. Supp. 3d at 202 ("[T]he Court will not assume that the FDA failed to perform, in fact blatantly ignored, its statutory duties to review and monitor the drug for human safety."). That the Agency has done the opposite necessarily implies FDA remains convinced the scientific evidence does not support a causal association.

This case is analogous to *In re Incretin-Based Therapies*—another GLP-1 RA litigation—where the court found preemption because FDA had repeatedly addressed the evidence of an alleged pancreatic cancer risk and "approved several new incretin-based drugs, as well as labeling changes," without requiring a pancreatic cancer warning. 524 F. Supp. 3d 1007, 1032 (S.D. Cal. 2021). The court held it "cannot simply ignore the FDA's demonstrated commitment to actively and continuously monitoring the pancreatic safety of incretin mimetics" and found FDA's

15

continued inaction to be clear evidence of rejection under § 355(o)(4)(A), given that the Agency was aware of the evidence and had previously found it insufficient. *Id.* at 1033.

FDA's adherence to its decision marks another distinction from *Fosamax*:  FDA has "fully considered" whether to include a gastroparesis warning on any GLP-1 RA and has repeatedly refused. In *Fosamax*, "FDA was still assessing [the] evidence" at the time of Merck's PAS and ultimately *did* require a warning about "atypical femoral fractures," seventeen months after it rejected Merck's PAS, which bolstered the plaintiffs' argument that FDA's real concern was proposed phrasing, not the underlying evidence. 118 F.4th at 336, 359. "§ 355(o)(4)(A) is relevant to the pre-emption analysis when the FDA has *fully considered* the information submitted by a drug manufacturer," the Third Circuit explained, but not when "the FDA [is] in the process of deciding whether a change … [is] needed." *Id*. (emphasis added).

Here, by contrast, there is no genuine issue of material fact that FDA has "fully considered" the evidence of an alleged gastroparesis risk. FDA has never suggested it is still assessing the evidence; to the contrary, it affirmatively determined that "[t]he existing warning and precaution and section 6 describe GI adverse reactions," SUF ¶¶ 114, 127, and acted *sua sponte* to require Novo to add the same warnings already in Lilly's labels. The record is clear that FDA conclusively determined that the scientific evidence does not support a further gastroparesis warning. Accordingly, all claims based on an alleged state-law duty to add such a warning are preempted.

## II.    ALL GASTROPARESIS CLAIMS FAIL BECAUSE THERE IS NO TRIABLE ISSUE OF LABEL INADEQUACY

Plaintiffs have also failed to create a genuine dispute that the Trulicity, Mounjaro, or Zepbound labels ever inadequately warned of gastroparesis. "The inadequacy of the warnings is an element of a failure-to-warn claim on which plaintiff has the burden of proof." *In re Diet Drugs Prods. Liab. Litig.*, 2006 WL 1071545, at *1 (E.D. Pa. Apr. 21, 2006). As other prescription-drug

16

MDL courts have held, "[t]o defeat summary judgment on a failure-to-warn claim, 'a plaintiff must demonstrate specific facts in the record that a warning is inadequate.'" *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2020 WL 3487594, at *3 (E.D. La. June 1, 2020) (quoting *Guillory v. Pellerin*, 2009 WL 922474, at *4 (W.D. La. Mar. 31, 2009)).

Every state applies the learned intermediary doctrine to failure-to-warn claims involving prescription medicines.[6] "[T]he learned intermediary doctrine[] require[s] pharmaceutical manufacturers to direct warnings to physicians as prescribers." *Lance v. Wyeth*, 85 A.3d 434, 442 (Pa. 2014). "[A] prescription drug manufacturer fulfills its duty to warn end users of its product's risks by providing adequate warnings to the intermediaries who prescribe the drug." *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 157 (Tex. 2012). A label is adequate as a matter of law when it is "accurate, clear, consistent, and 'as a whole convey[s] an unmistakable meaning as to the consequences of ingesting the drug.'" *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 462 F. Supp. 3d 650, 652 (E.D. La. 2020) (quoting *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 2014 WL 2738224 (D.N.J. June 17, 2014)).

Plaintiffs have failed to establish a triable issue that Lilly's labels failed to adequately warn physicians of gastroparesis. First, Lilly's labels are adequate as a matter of law. Lilly has always warned of "severe" "gastrointestinal adverse reactions," and FDA rejected that the labels needed additional warnings—finding they already had adequate warnings. Second, Plaintiffs have failed to proffer admissible expert testimony on warning adequacy, requiring summary judgment.

---

[6]    *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 867 (6th Cir. 2006) ("45 out of 50 states" "apply the learned intermediary doctrine to product liability claims"). Federal or state courts applying the law of five states not cited by *Meridia*—Connecticut, Idaho, Iowa, North Dakota, and Vermont—have all recognized the doctrine in their state or federal courts. *Vitanza v. Upjohn Co.*, 778 A.2d 829, 836–39 (Conn. 2001); *Sliman v. Aluminum Co. of Am.*, 731 P.2d 1267, 1270–71 (Idaho 1986); *Nicholson v. Biomet, Inc.*, 2020 WL 3399899, at *15 (N.D. Iowa Mar. 6, 2020); *Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189, 1195 (D.N.D. 2002); *Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 368 (D. Vt. 2021) (Vermont law).

17

**A.    Lilly's Warnings About Severe Gastrointestinal Adverse Reactions Are Adequate As A Matter of Law To Warn of Gastroparesis.**

The Trulicity, Mounjaro, and Zepbound labels have always adequately warned physicians of any potential risk of gastroparesis. FDA reached that exact conclusion after reviewing all the same information Plaintiffs present here. FDA determined that any "safety concerns" as to gastrointestinal adverse effects were "adequately addressed with proposed product labeling and routine pharmacovigilance," and that "*[a]t this time, further language regarding gastroparesis in labeling is not supported*." SUF ¶ 46, 55 (emphasis added). Then, when rejecting Lilly's proposed gastroparesis warning, FDA explained "[t]he existing warning and precaution and section 6 describe GI adverse reactions." SUF ¶¶ 114, 127. FDA's consistent and repeated actions since then—repeatedly approving labels of GLP-1 RA medicines with no additional gastroparesis warning—further support this conclusion. *See* Background Section B, *supra*.

FDA's conclusion is supported by the labeling. Gastroparesis definitional features include: (1) gastrointestinal symptoms such as nausea and vomiting and (2) delayed gastric emptying in the absence of mechanical obstruction. Dkt. No. 467 at 4. Lilly warns of both. Section 5 has always warned that use may be "associated with gastrointestinal adverse reactions, sometimes severe," SUF ¶¶ 3, 16, 57, and labels further discussed gastrointestinal reactions in Section 6, SUF ¶¶ 5, 18, 59. The labels have also always prominently warned of delayed gastric emptying. For instance, from Trulicity's initial approval, the highlights section of the label—which Dr. Metz testified most doctors "tend to look at," SUF ¶ 190—said that "Dulaglutide slows gastric emptying." SUF ¶ 4. The Mounjaro and Zepbound labels have also always contained similar language regarding delayed gastric emptying. SUF ¶¶ 17, 58. And all three medicines warned in the Medication Guide[7]

---

[7]    The Medication Guide is part of a medication label intended for use by patients. Courts have relied on these sections in finding medicine labels adequate as a matter of law. *See, e.g.*, *In re Accutane Prods. Liab.*, 2012 WL 3194954, at *5 (M.D. Fla. July 24, 2012) (finding label adequate as a matter of law where "the Medication Guide

that Lilly's medicines "may cause serious side effects, including" "severe stomach problems." SUF ¶¶ 11, 23, 64. In light of these warnings—not to mention FDA's assessment—Lilly's labels are adequate as a matter of law. *Salvio v. Amgen*, 2012 WL 517446, *5 (W.D. Pa. 2012) (dismissing failure-to-warn claim where the label's general warning about bacterial infections was sufficient to warn physicians about the specific infection the plaintiff experienced); *Aaron v. Wyeth*, 2010 WL 653984, at *7-11 (W.D. Pa. Feb. 19, 2010) (summary judgment for manufacturer on a failure-to-warn claim after finding the label's warning about suicidality in a different patient population was sufficient to advise physicians of the risk to the plaintiff); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F. 3d 861, 867 (6th Cir. 2006) (affirming district court's order that found label adequately warned of drug's risk of high blood pressure as a matter of law).

The medical community knows of these potential risks too. Plaintiffs' experts (including for Issue 1) admit that physicians have known for decades that GLP-1 RAs delay gastric emptying. Dr. Raines testified that "there's evidence that GLP-1 [RA]s cause delay in gastric emptying, and I think that's pretty well-established, at least in the literature that we -- like we review in gastroenterology." SUF ¶ 200. Dr. Kessler states in his report that investigations "[b]eginning in the 1990s" "demonstrate[] that physiologic concentrations of GLP-1 reliably delay gastric emptying." Ex. 4D, Kessler Rep. at 25. Dr. Metz similarly testified that a "delay in gastric emptying" is not a side-effect of GLP-1 RA drugs but rather "a mechanism of the drugs' action." SUF ¶ 186. This common medical knowledge, too, supports adequacy. *See, e.g., Begley*, 2013 WL 144177, at *4; *Hansen v. Baxter Healthcare Corp.,* 764 N.E.2d 35, 42 (Ill. 2002); *Thompson v. Boston Sci. Corp.*, 2022 WL 4593086, at *2 (M.D. La. Sept. 29, 2022); *Himes v. Somatics, LLC*, 549 P.3d 916, 923 (Cal. 2024).

---

warned that Accutane may result in" the plaintiff's injury); *In re Chantix (Varenicline) Prods. Liab. Litig.*, 881 F. Supp. 2d 1333, 1337 (N.D. Ala. 2012) (same for the Chantix label).

**B.**     **Dr. Metz's Opinions Cannot Establish A Triable Issue That Lilly's Labels Were Inadequate to Warn of Gastroparesis.**

Plaintiffs' only labeling expert on gastroparesis is Dr. Metz,[8] but his opinion is unreliable and inadmissible under Rule 702. *See* Mot. #3 (Issue 2 Drs. Metz & Ross 702). Without admissible expert testimony, Plaintiffs cannot survive summary judgment. *Johnson v. SmithKline Beecham Corp.*, 55 F. Supp. 3d 603, 612–13 (E.D. Pa. 2014) ("An expert … can defeat summary judgment only if [their] expert opinion would be admissible at trial.").

**1.**     **Expert Testimony Is Required To Support Warning Inadequacy Claims.**

The complexity of the issues, including whether an FDA-approved pharmaceutical label adequately informed physicians about the risk of gastroparesis, requires expert testimony. "In the prescription drug arena, expert medical testimony is generally required 'to determine whether the drug manufacturer's warning to the medical community is adequate because prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect.'" *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 572 (W.D. Pa. 2014) (quoting *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1154 (Pa. 1996)). A "lay jury is not able to call on their own life experiences to determine the adequacy of a drug label." *Christison v. Biogen Idec Inc.*, 199 F. Supp. 3d 1315, 1340 (D. Utah 2016). Rather, "[s]ince only a physician or someone with specialized knowledge would be qualified to determine whether the warning was inadequate, expert testimony is required." *Sosnowski v. Wright Med. Tech., Inc.*, 2012 WL 1030485, at *7 (N.D. Ill. Mar. 27,

---

[8]    Plaintiffs have confirmed that Dr. Kessler is not opining on label adequacy for Mounjaro or Zepbound, and "is not offering an opinion about Lilly['s] Section 5 warnings." Dkt. No. 655 at 6. Plaintiffs told the Court that "[a]ny argument by Plaintiffs in summary judgment briefing under CMO 29 that the Section 5 Warning in the dulaglutide label was inadequate would rely on [] factual background and/or other evidence, and not upon expert opinion proffered by Dr. Kessler," and that to the extent Dr. Kessler suggested at his deposition that "Lilly's section 5 warnings for dulaglutide were inadequate, Plaintiffs do not intend to rely on those opinions for purposes of summary judgment under CMO 29." *Id*. 6-7. Thus, Plaintiffs' only expert opinion, at summary judgment, about Section 5 warnings in any Lilly medicine label is Dr. Metz.

2012); *Aaron*, 2010 WL 653984, at *9 ("[T]he adequacy of a warning in prescription drug cases must be proven by expert testimony.") (Pennsylvania law); *Grobelny v. Baxter Healthcare Corp.*, 2008 WL 2186417, at *2 (D.N.J. 2008) ("[T]estimony of a physician would be necessary for the trier of fact to understand whether the warning was adequate.") (New Jersey law). "Without expert testimony, a lay jury is not in a position to second-guess [an] FDA-approved label." *MacSwan v. Merck & Co.*, 2023 WL 3990673, at *17 (W.D.N.Y. June 14, 2023) (internal quotation marks omitted) (quoting *Chandler v. Janssen Pharms., Inc.*, 322 F. Supp. 3d 314, 326 (E.D.N.Y. 2018)) (New York law). Thus, "summary judgment is appropriate on a failure-to-warn claim if a plaintiff has not proffered expert testimony on the adequacy of the warnings." *LaBarre v. Bristol-Myers Squibb Co.*, 544 F. App'x 120, 125 (3d Cir. 2013) (Florida law).[9]

Although this Court found in *Bloom v. Medical Depot, Inc.*, that expert testimony was not required in a failure-to-warn case involving a walker because "any layperson c[ould] understand the insufficiency of [that] warning," the Court acknowledged that courts have required expert testimony in cases involving more complicated warnings, such as "where the allegedly defective product is a prescription medical device." 2025 WL 2803913, at *20 n.17 (E.D. Pa. Sept. 30, 2025).

---

[9]    Courts which have addressed whether expert testimony on warning adequacy is required in pharmaceutical failure-to-warn cases have overwhelmingly held that it is. *E.g. Rodman v. Otsuka Am. Pharm., Inc.*, 564 F. Supp. 3d 879, 892 (N.D. Cal. 2020) (California law); *Montagnon v. Pfizer, Inc.*, 584 F. Supp. 2d 459, 463 (D. Conn. 2008) (Connecticut law); *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 582–83 (D.C. 1996); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.D.C. 2003); *Upjohn v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990); *Weilbrenner v. Teva Pharms. USA, Inc.*, 696 F. Supp. 2d 1329, 1340 (M.D. Ga. 2010) (Georgia law); *Begley v. Bristol-Myers Squibb Co.*, 2013 WL 144177, at *5 (D.N.J. Jan. 11, 2013) (Illinois law); *Sheridan v. Merck & Co.*, 2003 WL 22902622, at *2 (E.D. La. Dec. 8, 2003) (Louisiana law); *Doe v. Solvay Pharms., Inc.*, 153 F. App'x 1, 3 (1st Cir. 2005) (Maine law); *Calisi v. Abbott Lab'ys*, 2013 WL 5441355, at *15 (D. Mass. Sept. 27, 2013) (Massachusetts law); *Wyeth Labs v. Fortenberry*, 530 So. 2d 688, 692 (Miss. 1988); *Hill v. Squibb & Sons, E.R.*, 592 P.2d 1383, 1389–90 (Mont. 1979); *Ideus v. Teva Pharms. USA, Inc.*, 361 F. Supp. 3d 938, 946–47 (D. Neb. 2019) (Nebraska law); *Willard v. Park Industries*, 69 F. Supp. 2d 268, 272 (D.N.H. 1999) (New Hampshire law); *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1190 (D.N.M. 2008) (New Mexico law); *Browning v. Wyeth, Inc.*, 38 A.D.3d 1177, 1178 (N.Y. App. Div. 2007); *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1018 (8th Cir. 2004) (North Dakota law); *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (Ohio law); *Dion v. Graduate Hosp. of Univ. of Penn.*, 520 A.2d 876, 881 (Pa. Super. 1987); *Eichin v. Ethicon Endo-Surgery, Inc.*, 2024 WL 4564611, at *7–8 (D.S.C. Oct. 24, 2024) (South Carolina law); *Nationwide Mut. Ins. Co. v. Barton Solvents Inc.*, 855 N.W.2d 145, 149–52 (S.D. 2014); *J.C. ex rel. Michelle C. v. Pfizer, Inc.*, 814 S.E.2d 234, 246 (W. Va. 2018); *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 753 (7th Cir. 2018) (Wisconsin law).

That is precisely the case here, where determining the adequacy of Lilly's label warnings invokes technical, scientific, and medical concepts that a lay jury will be entirely unfamiliar with without expert assistance. *Aaron*, 2010 WL 653984, at *9.[10]   Requiring expert support on warning adequacy in pharmaceutical cases aligns with the near universal principle that "expert testimony on an issue is required when the issue is not within the understanding of a lay person." *Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (Indiana law), *abrogated by Kaiser v. Johnson & Johnson*, 947 F.3d 996 (7th Cir. 2020) (abrogated on other grounds); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 316 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017) ("[I]n all jurisdictions," expert testimony "is required" on issues "outside the realm of common knowledge and experience of a lay juror.").

### 2.    Dr. Metz's Testimony Is Inadmissible and Insufficient.

Dr. Metz's conclusory and unsupported opinions that Lilly's labels were insufficient to "convey a warning that there was any risk of drug induced gastrointestinal disease, severe or not, including but not limited to impaired gastric emptying or drug induced gastroparesis" and that "it is not reasonable for a practicing physician, including a gastroenterologist, to be expected to interpret" it as such do not save Plaintiffs' claims. Ex. 12D, Metz Rep. at 170. Even if Dr. Metz's labeling opinion were admitted, it would not create a triable issue that the Trulicity, Mounjaro, and Zepbound labels were inadequate. *See Begley*, 2013 WL 144177, at *8 (granting summary

---

[10]    *See Housely v. Orteck Intern, Inc.*, 488 F. Supp. 2d 819, 828 (S.D. Iowa 2007); *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1139 (D. Ariz. 2001); *Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (Colorado law); *Puckett v. Mt. Carmel Regl Med. Ctr.*, 290 Kan. 406, 435, 228 P.3d 1048, 1068 (2010); *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 319 (Md. Ct. Spec. App. 2000); *Auito v. Clarkston Creek Golf Club, Inc.*, 2004 WL 1254193, at *4 (Mich. Ct. App. June 8, 2004); *Holverson v. ThyssenKrupp Elevator Corp.*, 2014 WL 3573630, at *4 (D. Minn. July 18, 2014); *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1111–12 (8th Cir. 2007) (Missouri law); *Estate of Sicotte v. Lubin & Meyer, P.C.*, 959 A.2d 236, 239 (N.H. 2008); *Morris Int'l, Inc. v. Packer*, 2021 WL 5115529 (N.C. Super. Ct. Nov. 2, 2021); *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 751 (5th Cir. 2018) (Texas law); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002) (Oklahoma law); *Mills v. State Sales, Inc.*, 824 A.2d 461, 468 (R.I. 2003); *S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 410 A.2d 1359, 1363 (Vt. 1980); *Wright v. Lilly*, 2004 WL 2656839, at *18–19 (Va. Cir. Ct. 2004); *Vassos v. Roussalis*, 625 P.2d 768, 773 (Wyo. 1981).

judgment on failure-to-warn claim where "any language addressing how a prescribing physician at the time of Plaintiff's injury would have interpreted the warning label or any other medical information available at that time" was "notably absent" from expert's report). Dr. Metz never explains *why* physicians would not interpret warnings about two hallmarks of gastroparesis, along with "severe" "gastrointestinal adverse reactions," to include the possibility of gastroparesis. Nor did Dr. Metz review FDA's repeated approval of the Trulicity, Mounjaro, and Zepbound labels without an additional gastroparesis warning or FDA's explicit rejection of proposed gastroparesis language in 2023 and 2024. SUF ¶¶ 191-192.

Yet, Dr. Metz admits that FDA was aware of all the same information he considered in forming his opinion. SUF ¶ 195 ("Are you asking me, was FDA aware of all of these reports?  And I'm going to say, yes, they were."). In fact, when asked what language Lilly should have added to the Trulicity, Mounjaro, and Zepbound labels to adequately warn physicians of gastroparesis, Dr. Metz suggested the following language: "there were events relating to delayed gastric emptying that could have been severe." SUF ¶ 196.  This matches nearly word-for-word the proposed additions FDA *rejected* in 2023 and 2024. SUF ¶¶ 109-136 ("Events related to impaired gastric emptying, including severe gastroparesis, have been reported."). At base, Dr. Metz opines, with no evidence to support his opinion and admittedly having ignored evidence contrary to his opinion, that FDA got it wrong. *See* Mot. #3 (Issue 2 Drs. Metz & Ross 702). This sort of "tenuous conclusion from an expert" "is insufficient to create an issue of fact as to whether the language used in a drug label was inadequate." *Taxotere*, 2020 WL 3487594, at *3; *see also Begley*, 2013 WL 144177, at *8.

23

III.    **ALL GASTROPARESIS CLAIMS FAIL BECAUSE THERE IS NO TRIABLE FACT ISSUE ON GENERAL CAUSATION**

Finally, Plaintiffs have not met their burden on general causation for any of their gastroparesis claims. For prolonged gastroparesis, Plaintiffs' expert concedes causality "cannot be supported." SUF ¶ 188. And for "drug-induced" gastroparesis, Plaintiffs seek to create a new definition through their expert Dr. Metz, but his opinion is unreliable. Without admissible expert testimony supporting general causation, their gastroparesis claims all fail. *See Feit v. Great W. Life & Annuity Ins. Co.*, 271 Fed. Appx. 246, 252 (3d Cir. 2008) ("Generally, expert testimony is needed to prove causation of a medical condition.").

A.    **Plaintiffs Agree There Is No General Causation for Prolonged Gastroparesis.**

There is no dispute of material fact about general causation for prolonged gastroparesis. Dr. Metz reviewed the peer-reviewed epidemiologic literature and concluded "causality of prolonged symptoms of gastroparesis after cessation of a GLP-1 [RA] drug ***cannot*** be supported." SUF ¶ 188; *see* Mot. #1 (Gastroparesis 702); *Habecker v. Copperloy Corp.*, 893 F.2d 49, 54 (3d Cir. 1990) ("Causation is an essential element of a products liability (or any other tort) action."). As a result, Lilly is entitled to summary judgment on all prolonged gastroparesis claims, *i.e.,* those that Plaintiffs contend last longer than six months. *Zoloft*, 176 F. Supp. 3d at 501 (granting summary judgment after excluding plaintiffs' general causation experts because "Plaintiffs have failed to raise a jury question on [whether] Zoloft was capable of causing their injuries").

B.    **Plaintiffs Proffer No Admissible Expert Testimony on Drug-Induced Gastroparesis.**

Plaintiffs likewise cannot survive summary judgment on what they call "drug-induced gastroparesis." This Court has recognized that "drug-induced gastroparesis" "is temporary and should cease when the patient stops taking the medication at issue."  Dkt. 467 at 5-6. After abandoning prolonged gastroparesis, Plaintiffs seek to adopt a ***new*** definition apparently to

24

broaden the pool of Plaintiffs who fall outside their concessions about prolonged gastroparesis. Plaintiffs proffer Dr. Metz to opine that "drug-induced gastroparesis" is a condition that lasts for up to six months after a patient stops taking the medicine. Dr. Metz's opinion is unreliable and should be excluded. Mot. #1 (Gastroparesis 702). Without Dr. Metz, Plaintiffs cannot avoid summary judgment on these claims. *See Feit*, 271 Fed. Appx. at 252; *Habecker*, 893 F.2d at 54.

Plaintiffs cannot fall back on Dr. Somsouk, who opines only on association, or Dr. Pisegna, who opines on biologic plausibility, even if their opinions were admissible. *See* SUF ¶¶ 199, 201-202. Neither association nor plausibility establishes causation. *See Zoloft*, 176 F. Supp. 3d at 498-99 (granting summary judgment because "Plaintiffs' potentially admissible evidence supports no more than an association between Zoloft and certain birth defects[.] Causation must be based upon more than a possibility."); *Hoefling v. U.S. Smokeless Tobacco Co., LLC*, 576 F. Supp. 3d 262, 273 (E.D. Pa. 2021) (excluding experts and granting summary judgment where experts' general causation opinion was "based on 'biological plausibility' and lack[ed] support from epidemiological data").

This Court should grant summary judgment to Lilly on all drug-induced gastroparesis claims, too, *i.e.*, the type that lasts up to six months after a patient stops the medicine.

## CONCLUSION

Lilly respectfully requests the Court grant summary judgment in Lilly's favor on all gastroparesis claims.

Dated: May 19, 2026

Respectfully submitted,

/s/ Diana M. Watral

Diana M. Watral, P.C. (admitted *pro hac vice*)
Mark Premo-Hopkins, P.C. (admitted *pro hac vice*)
Renee D. Smith (admitted *pro hac vice*)
**Kirkland & Ellis LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
diana.watral@kirkland.com
mark.premohopkins@kirkland.com
renee.smith@kirkland.com

Samuel W. Silver (PA Bar No. 56596)
Catherine M. Recker (PA Bar No. 56813)
Bruce P. Merenstein (PA Bar No. 82609)
Abigail T. Burton (PA Bar No. 334450)
**Welsh & Recker, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
Facsimile: (985) 617-1021
ssilver@welshrecker.com
cmrecker@welshrecker.com
bmerenstein@welshrecker.com
aburton@welshrecker.com

*Attorneys for Defendants Eli Lilly and Company
and Lilly USA, LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS ELI LILLY AND COMPANY AND LILLY USA, LLC'S MOTION FOR SUMMARY JUDGMENT ON GASTROPARESIS CLAIMS was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ Diana M. Watral*

Diana M. Watral, P.C.