# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) | **CIVIL ACTION** <br><br> **MDL No. 3094** <br> **2:24-md-03094-KSM** |
| **THIS DOCUMENT RELATES TO:** | ) ) | |
| *ALL ACTIONS / ALL CASES* | ) ) | **HON. KAREN SPENCER MARSTON** |

<br><br>

## MEMORANDUM IN SUPPORT OF DEFENDANTS ELI LILLY AND COMPANY AND ELI LILLY LLC, USA'S MOTION FOR SUMMARY JUDGMENT ON GALLBLADDER CLAIMS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    A.    Potential Gallbladder Risks Are Only "Hypothetical." .......................................... 3

    B.    Lilly's Warnings For Gallbladder Injuries ............................................................. 4

    C.    FDA Has Closely Monitored Potential Gallbladder Risks. ................................... 5

ARGUMENT ........................................................................................................................... 6

I.      The Court Should Grant Summary Judgment On All Gallbladder Claims Because There Is No Genuine Issue Of Material Fact On General Causation. ........... 7

    A.    Dr. Lang's Causation Opinions Are Inadmissible. .................................................. 7

    B.    Even If Admitted, Dr. Lang's Causation Opinions Are Insufficient. ..................... 8

II.    The Court Should Grant Summary Judgment On All Gallbladder Claims Because Plaintiffs Lack Evidence That The Gallbladder Warnings Were Inadequate. ..................................................................................................................... 10

    A.    There Is No Triable Warning Adequacy Issue for Any Mounjaro Or Zepbound Claims (Or for Any Trulicity Claims Outside the December 2017-June 2022 Window) .............................................................................. 10

           1.    The Claims Lack Required Expert Support. ............................................. 11

           2.    The Warnings Are Adequate As A Matter Of Law. ................................. 12

    B.    There Is No Triable Warning Adequacy Issue for Trulicity Claims in the December 2017-June 2022 Timeframe Either. ....................................................... 13

           1.    The Claims Lack Required Expert Support Because Dr. Ross's Opinions Are Inadmissible. ...................................................................... 13

           2.    Even If Admitted, Dr. Ross's Trulicity Opinions Are Insufficient to Create a Genuine Issue of Material Fact ............................................. 14

                a.    No Duty-To-Warn (December 2017 to February 2020) ............... 14

                b.    No Warning Inadequacy (February 2020 to June 2022) ............... 16

i

**TABLE OF CONTENTS (CONT'D.)**

**Page**

III.    **The Court Should Grant Summary Judgment On All Gallbladder Claims Because They Are Preempted.** ........................................................................ **18**

      A.    December 2017-June 2022 Trulicity Gallbladder Claims Are Preempted. .......... 18

            1.    December 2017-February 2020 Labeling Claims Are Preempted............ 19

                a.    No "Newly Acquired Information." ............................................ 19

                b.    "Clear Evidence" FDA Would Have Rejected New Warning....................................................................................... 21

            2.    Post-February 2020 Claims Are Preempted (No Newly Acquired Information). ........................................................................................ 23

      B.    Post-June 2022 Trulicity Claims and All Mounjaro and Zepbound Claims (For Any Time) Are Preempted. ........................................................... 24

**CONCLUSION** ........................................................................................................ **24**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Wyeth*,
2010 WL 653984 (W.D. Pa. Feb. 19, 2010) ...................................................................12, 13, 14

*Begley v. Bristol-Myers Squibb Co.*,
2013 WL 144177 (D.N.J. Jan. 11, 2013) ........................................................................17

*Bloom v. Med. Depot, Inc.*,
2025 WL 2803913 (E.D. Pa. Sept. 30, 2025) (Marston, J.)........................................11

*Bueno v. Merck & Co.*,
746 F. Supp. 3d 853 (S.D. Cal. 2024)......................................................................17, 21

*Carr-Davis v. Bristol-Myers Squibb Co.*,
2013 WL 322616 (D.N.J. Jan 28, 2013) ........................................................................17

*Cohen v. Johnson & Johnson*,
634 F. Supp. 3d 216 (W.D. Pa. 2022)...........................................................................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab.
Litig.*,
2006 WL 1071545 (E.D. Pa. Apr. 21, 2006) .................................................2, 10, 17

*Dolin v. GlaxoSmithKline LLC*,
901 F.3d 803 (7th Cir. 2018) ................................................................................20, 24

*Doughtery v. C.R. Bard, Inc.*,
2012 WL 2940727 (E.D. Pa. July 18, 2012)................................................................14, 15

*Feit v. Great W. Life & Annuity Ins. Co.*,
271 F. App'x 246 (3d Cir. 2008) ...................................................................................7

*Feldman v. Lederle Lab'ys.*,
479 A.2d 374 (N.J. 1984).............................................................................................16

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
118 F. 4th 322 (3d Cir. 2024) ...............................................................................19, 23

*In re Gardasil Prods. Liab. Litig.*,
770 F. Supp. 3d 893 (W.D.N.C. 2025) ..................................................................16, 21, 24

*Gayle v. Pfizer Inc.*,
452 F. Supp. 3d 78 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 79 (2d Cir. 2021) ...................16, 21

**TABLE OF AUTHORITIES (CONT'D.)**

**Page(s)**

*Hahn v. Richter*,
    673 A.2d 888 (Pa. 1996) ......................................................................................................14

*Holley v. Gilead Scis., Inc.*,
    2023 WL 6390598 (N.D. Cal. Sept. 28, 2023) .....................................................................21

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
    524 F. Supp. 3d 1007 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595 (9th Cir.
    Mar. 28, 2022)..............................................................................................................20, 24

*Keen v. C.R. Bard, Inc.*,
    480 F. Supp. 3d 624 (E.D. Pa. 2020) (Pratter, J.) .................................................................11

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
    984 F.3d 329 (4th Cir. 2021) ........................................................................................20, 24

*Lance v. Wyeth*,
    85 A.3d 434 (Pa. 2014) .......................................................................................................10

*LaBarre v. Bristol-Myers Squibb Company*,
    544 F. App'x 120 (2013) .........................................................................................11, 12, 14

*Lexington Ins. Co. v. W. Pennsylvania Hosp.*,
    423 F.3d 318 (3d Cir. 2005)..............................................................................................9, 10

*Lynn ex rel. Lynn v. Yamaha Golf-Car Co.*,
    894 F. Supp. 2d 606 (W.D. Pa. 2012)...................................................................................11

*Merck Sharp & Dohme Corp. v. Albrecht*,
    587 U.S. 299 (2019)...............................................................................................2, 19, 23

*In re Meridia Prods. Liab. Litig.*,
    328 F. Supp. 2d 791 (N.D. Ohio 2004).................................................................................13

*In re Mirena IUD Prods. Liab. Litig.*,
    202 F. Supp. 3d 304 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017).........................7

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)....................................................................................................7

*Perry v. Novartis Pharms. Corp.*,
    564 F. Supp. 2d 452 (E.D. Pa. 2008) ..............................................................................1, 8, 9

*Rosen v. Ciba-Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996) ...................................................................................................1

iv

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*In re Roundup Prods. Liab. Litig.*,
 737 F. Supp. 3d 898 (N.D. Cal. 2024) ................................................................................8

*Rowland v. Novartis Pharms. Corp.*,
 34 F. Supp. 3d 556 (W.D. Pa. 2014) .......................................................................11, 12, 14

*Salvio v. Amgen*,
 2012 WL 517446 (W.D. Pa. 2012) ...................................................................................13

*Soufflas v. Zimmer, Inc.*,
 474 F. Supp. 2d 737 (E.D. Pa. 2007) ..........................................................................11, 17

*Speziale v. Bethlehem Area Sch. Dist.*,
 266 F. Supp. 2d 366 (E.D. Pa. 2003) ................................................................................10

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
 2020 WL 3487594 (E.D. La. June 1, 2020) ................................................................15, 16

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
 462 F. Supp. 3d 650 (E.D. La. 2020) .......................................................................12, 13, 17

*Wyeth v. Levine*,
 555 U.S. 555 (2009) ...................................................................................................18, 24

*In re Zofran (Ondansetron) Products Liability Litigation*,
 541 F. Supp. 3d 164 (D. Mass. June 1, 2021) ....................................................................22

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
 176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017).....................1, 7, 8, 9

*In re Zyprexa Prods. Liab. Litig.*,
 489 F. Supp. 2d 230 (E.D.N.Y. 2007) ...............................................................................15

**Statutes**

21 U.S.C. § 355.......................................................................................................................22

**Rules**

Fed. R. Evid. 702 .................................................................................................................2, 7, 13

**Other Authorities**

21 C.F.R. § 201 ..........................................................................................................18, 19, 22, 23

21 C.F.R. § 314 ..........................................................................................................18, 19, 23, 24

v

**INTRODUCTION**

Plaintiffs allege that Lilly's GLP-1 RA medicines failed to adequately warn of risks of acute gallbladder disease, specifically cholelithiasis (gallstones) and cholecystitis (gallbladder inflammation). But Plaintiffs have not raised triable issues of fact on general causation or warning inadequacy. Their failure-to-warn claims are also independently barred by federal preemption. The Court should grant summary judgment on all gallbladder claims.

*First*, Plaintiffs have not shown that any Lilly medicine can cause gallbladder disease. Their sole general causation expert, Dr. Lang, offers unreliable opinions that should be excluded, and without expert testimony, Plaintiffs cannot survive summary judgment. Even if admitted, Dr. Lang's opinions would not create a triable fact issue. Dr. Lang admits that, if he considered data for individual Lilly medicines (Trulicity, Mounjaro, Zepbound), he could ***not*** "reliably conclude that a cause-and-effect relationship exists." SUF ¶¶ 51-54. He further concedes that his opinions about GLP-1 RAs generally are untested, and that he has only a "hypothesis" that medicines without weight loss indications (like Trulicity and Mounjaro) could cause gallbladder disease. SUF ¶ 65. But "the courtroom is not the place for scientific guesswork, even of the inspired sort. ***Law lags science; it does not lead it***." *Perry v. Novartis Pharms. Corp.*, 564 F. Supp. 2d 452, 467–68 (E.D. Pa. 2008) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (emphasis added)). Absent "predicate proof of general causation," Plaintiffs cannot survive summary judgment. *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 491 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017).

*Second*, Plaintiffs cannot show Lilly's gallbladder warnings were inadequate at any time. Section 5 and 6 of Mounjaro's and Zepbound's labels have included warnings about gallbladder risks since approval, and no expert opines that these warnings were inadequate. As to Trulicity, Plaintiffs' sole gallbladder warnings expert, Dr. Ross, asserts inadequacies only between

December 2017 and June 2022—leaving Plaintiffs without expert support for any claim outside that window. Even within the 2017-2022 window, Dr. Ross's opinions are inadmissible because he ignored key contrary evidence and failed to address the February 2020 addition of gallbladder disease as an adverse reaction in the Trulicity label. His Trulicity opinions are also insufficient even if admitted because he identifies no information establishing Lilly had a duty to warn by December 2017 and fails to explain how the February 2020 warning was inadequate. Plaintiffs cannot proceed because they have not demonstrated the labels failed to reasonably warn physicians of gallbladder risks. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 2006 WL 1071545, at *1 (E.D. Pa. Apr. 21, 2006).

*Third*, federal law preempts all gallbladder claims. FDA has closely monitored potential gallbladder risks of GLP-1 RA medicines since before Trulicity's approval in September 2014. Plaintiffs identified no newly acquired information sufficient for Lilly to unilaterally add gallbladder disease to the Warnings & Precautions section by December 2017 (as Dr. Ross opines it should have) or prior to June 2022 (when Lilly did). Dr. Ross's opinions cannot help Plaintiffs— they are inadmissible, as explained in Lilly's Rule 702 motion, and regardless, preemption is a legal issue for this Court to decide. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 317-318 (2019). And any gallbladder warning claims for Mounjaro and Zepbound (at any time) or for Trulicity (after June 2022) are also preempted because there is no newly acquired information not previously available to FDA sufficient to support any additional gallbladder warnings.

Lilly respectfully requests summary judgment in its favor on all gallbladder claims.

## BACKGROUND

Plaintiffs allege Lilly failed to adequately warn of alleged risks of cholelithiasis (gallstones) and cholecystitis (gallbladder inflammation) (collectively "gallbladder disease"). SUF ¶¶ 48, 72. Lilly's GLP-1 medicines include (1) Trulicity (dulaglutide), first approved in September

2014 to treat type 2 diabetes; (2) Mounjaro (tirzepatide), first approved in May 2022 to treat type 2 diabetes; and (3) Zepbound (tirzepatide), first approved in November 2023 for chronic weight management. SUF ¶¶ 2, 9-10.

### A.    Potential Gallbladder Risks Are Only "Hypothetical."

Plaintiffs' gallbladder general causation expert, Dr. Gabriel Lang, opines that GLP-1 RAs "cause and/or significantly contribute to the development of gallbladder disorders and diseases." SUF ¶ 49. Dr. Lang explains that major gallbladder disease risk factors include obesity, rapid weight loss, diabetes, and being female. SUF ¶ 64. Because these risk factors include FDA-approved indications for treatment with GLP-1 RAs, many (if not most) GLP-1 RA patients likely already had at least one major gallbladder risk factor before using any GLP-1 RA medicine. There is no reliable evidence of a positive *causal* association between GLP-1 RA medicines generally and gallbladder disease, as the literature upon which Dr. Lang relies makes clear, *e.g.*:

- He 2022: "[W]hether increased risk of gallbladder-related events is a class effect of GLP-1 RAs **has not been established**."

- Niu 2025: "The observed findings should be interpreted as **associative rather than causal**."

- He (Long) 2025: "GLP-1 RAs as a **class do not** exhibit a disproportionate correlation with biliary diseases," and any signals in some molecules only "**suggest[s]** a **potential** risk."

SUF ¶¶ 94, 45, 43 (emphases added). Dr. Lang concedes that reported potential associations between GLP-1 medicines and gallbladder disease vary widely depending on, among other things, which individual medicine is used and for what indication. *See* SUF ¶¶ 59-63; *see also* SUF ¶ 42 He (Long) 2025 ("[F]actors such as drug specificity, dose, treatment duration, and use for weight loss should be considered to comprehensively understand [GLP-1 RAs] potential impact on biliary diseases.")). In fact, some studies suggest a *protective* association between GLP-1 RA medicines and gallbladder disease—in other words, a *decreased* risk of developing gallbladder disease. *See,*

3

*e.g.*, SUF ¶ 47 (Derington 2025, finding "a decreased risk for gallstones and acute cholecystitis with dulaglutide vs semaglutide (gallstones: HR, 0.72; 95% CI, 0.54-0.95; acute cholecystitis: HR, 0.62; 95% CI, 0.39-0.99).").

To this day, the biological mechanism by which any GLP-1 RA medicine could cause gallbladder disease is "unknown." SUF ¶ 67. Dr. Lang admits that whether GLP-1 RA medicines could pose gallbladder risks independent of weight loss is a "hypothesis"; "as of today, we don't know one way or another" whether there are mechanisms by which GLP-1 RAs (apart from rapid weight loss) could cause gallbladder disease. SUF ¶¶ 65-67. And he acknowledged "that the weight loss can differ depending on the medicine and the dosing." SUF ¶ 59. Yet his general causation opinion lumps Trulicity and Mounjaro, which are not indicated for weight loss, with medicines that are (like Wegovy), and he does not tailor his opinion for any individual Lilly medicine. He explained he is "not here to discuss individual medicines." SUF ¶¶ 8, 50, 55, 70.

Dr. Lang admits that, if he considered data for individual medicines (Trulicity, Mounjaro, Zepbound), he could *not* "reliably conclude that a cause-and-effect relationship exists between" any one of them and "gallbladder disorders or diseases." SUF ¶ 52.

### B.      Lilly's Warnings For Gallbladder Injuries.

*Trulicity*. In February 2020, at FDA's request following publication of the results of a long-term cardiovascular outcome trial ("REWIND"), Lilly added gallstones and gallbladder inflammation to Section 6 (Adverse Reactions) of the Trulicity label. SUF ¶¶ 16-20. In June 2022, also at FDA's request, Lilly added a gallbladder warning to Section 5 (Warnings & Precautions) of the Trulicity label, stating: "Acute events of gallbladder disease such as cholelithiasis or cholecystitis have been reported in GLP-1 receptor agonist trials and postmarketing." SUF ¶ 34. Since then, Trulicity's labels have included gallbladder disease in both Section 5 and Section 6. Plaintiffs' regulatory expert, Dr. David Ross, opines that Trulicity should have included a Section

5 warning by December 2017. SUF ¶ 73. No expert opines that Trulicity's gallbladder warnings before December 2017 or after June 2022 were inadequate. SUF ¶¶ 71, 76-77. Dr. Ross did not address the fact that Trulicity's label warned about gallbladder disease in the Adverse Reactions section starting in 2020; he admitted at his deposition that he did not even know that label change had occurred. SUF ¶¶ 21-22.

*Mounjaro/Zepbound*. Mounjaro and Zepbound labels have included gallbladder warnings in Section 5 and Section 6 since they were first approved in May 2022 and November 2023, respectively. SUF ¶¶ 9-10, 36-39. No expert opines that Mounjaro's or Zepbound's gallbladder warnings were inadequate at any time. SUF ¶ 71, 74-75.

### C.  FDA Has Closely Monitored Potential Gallbladder Risks.

Recognizing the prevalence of gallbladder risk factors in the GLP-1 RA patient population, FDA treated gallbladder diseases as adverse events of special interest in clinical trials well before approving Trulicity in September 2014. *See* SUF ¶ 11.[1] Indeed, on September 11, 2014—just one week before FDA first approved Trulicity on September 18, 2014— an FDA Advisory Committee specifically examined gallbladder-related events in connection with another GLP-1 RA medicine, Novo's Saxenda. SUF ¶¶ 2, 90-91. At that time, FDA did not treat gallbladder risks as a class effect. SUF ¶ 14. For example, FDA included a gallbladder warning for Saxenda, which had a weight loss indication, but it did not include one for Trulicity, which did not. SUF ¶¶ 2-3, 5, 12.

By February 2022, "FDA had not yet concluded that GLP-1s should have class labeling for gallbladder-related diseases." SUF ¶ 23. At that time, "whether increased risk of gallbladder-related diseases is a class effect of GLP-1 RAs ha[d] not been established." SUF ¶ 94. However,

---

[1] An adverse event of special interest can be a serious or non-serious adverse event that is "of scientific and medical concern specific to the sponsor's product or programme, for which ongoing monitoring and rapid communication by the investigator to the sponsor can be appropriate. Such an event might warrant further investigation to characterize and understand it." SUF ¶ 88.

in March 2022, after considering "new safety information" (including data not only from Lilly, but also from other GLP-1 RA manufacturers and other sources to which Lilly lacked access, SUF ¶¶ 24-28, 85-87, 96, FDA for the first time implemented class-wide gallbladder disease labeling "to achieve consistency across members of the class," SUF ¶ 28. Dr. Ross nonetheless primarily relies on labels from other medicines in the same class to argue that Lilly had sufficient "newly acquired information" to submit a changes being effected (CBE) supplement to add gallbladder risks to Trulicity's Section 5 "no later than December 2017"—*four years before* FDA determined class-wide gallbladder disease warnings were appropriate. SUF ¶¶ 28-29, 73. Dr. Ross's newly-acquired-information opinion applies only to Trulicity labels from December 2017 to June 10, 2022, and it does not account for the addition of gallbladder disease to the Adverse Reactions section in February 2020, of which Dr. Ross was entirely unaware. SUF ¶¶ 21-22, 73, 76-77. As noted above, he does not opine that Mounjaro's or Zepbound's labels were inadequate at any time. SUF ¶¶ 74-75.

## ARGUMENT

The Court should grant summary judgment on all gallbladder claims for at least three reasons. *First*, Plaintiffs cannot meet their burden to show general causation (*i.e.*, that Lilly's medicines can cause gallbladder disease). *Second*, there is no evidence that the Mounjaro or Zepbound labels were inadequate at any time. As for Trulicity, Plaintiffs' expert opines only that the label was inadequate from December 2017 to June 2022. And even the opinions for that limited window are inadmissible and insufficient to create a fact issue. *Third*, any Trulicity labeling inadequacy claims are also preempted. Plaintiffs have not met their burden to show that Lilly had sufficient newly acquired information to unilaterally change the label and there is clear evidence FDA would have rejected a different warning during the relevant period.

6

I.      **The Court Should Grant Summary Judgment On All Gallbladder Claims Because There Is No Genuine Issue Of Material Fact On General Causation.**

Plaintiffs have not met their burden to show Lilly medicines can cause gallbladder disease. *In re Zoloft*, 176 F. Supp. 3d at 491 (claims fail absent "predicate proof of general causation;" plaintiffs "must establish general causation before moving to specific causation"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 752 (3d Cir. 1994) (plaintiffs must show product "can cause the types of harm they suffered").

A.      **Dr. Lang's Causation Opinions Are Inadmissible.**

Dr. Lang is Plaintiffs' only gallbladder general causation expert. As explained in Novo and Lilly's joint Rule 702 motion to exclude general causation expert opinions, the Court should exclude Dr. Lang's opinions in their entirety because he is unqualified, employs an unreliable and unreproducible methodology that cherry-picks favorable data while ignoring contrary evidence, and fails to offer any reliable basis for concluding that the specific medicines at issue can cause gallbladder disease. Without admissible expert testimony on general causation, Plaintiffs cannot survive summary judgment. *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 252 (3d Cir. 2008) ("Generally, expert testimony is needed to prove causation of a medical condition."); *In re Zoloft*, 176 F. Supp. 3d at 501 (granting summary judgment after excluding general causation experts); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 310 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017) ("Generally, in products liability cases, 'to establish causation, [plaintiffs] must offer admissible expert testimony regarding both general causation ... and specific causation.'") (collecting cases; citations and quotations omitted)).

### B.    Even If Admitted, Dr. Lang's Causation Opinions Are Insufficient.

Dr. Lang's testimony does not create a triable fact issue on general causation, even if the Court were to consider it. It is instead "scientific guesswork" that is insufficient to defeat summary judgment. *Perry*, 564 F. Supp. 2d at 467–68.

*First*, while Dr. Lang purports to opine that there is a causal association between GLP-1 RAs and gallbladder disorders, his deposition testimony shows he is referring to only an association. Dr. Lang could not distinguish between association and causation and thus treated them as synonymous. SUF ¶ 56. In Dr. Lang's own words, all he can offer is an opinion about "a relationship between the drugs and [gallbladder disorders]." SUF ¶ 57. That is association, not causation, and association is not enough. *See In re Zoloft*, 176 F. Supp. 3d at 498-99 ("Taken together, Plaintiffs' potentially admissible evidence supports no more than an association between Zoloft and certain birth defects, and can only establish that much by ignoring the full universe of epidemiological evidence …. Causation must be based upon more than a possibility."); *In re Roundup Prods. Liab. Litig.*, 737 F. Supp. 3d 898, 905 (N.D. Cal. 2024) ("But [a study] saying there is a 'compelling link' or an 'association' isn't the same as saying that Roundup is capable of *causing* NHL in humans—which is what a plaintiff's general causation evidence must enable the jury to conclude.") (original emphasis).

*Second*, Dr. Lang does not offer an opinion that any specific Lilly medicine causes gallbladder disease. Dr. Lang testified he was opining on the entire GLP-1 RA class, not any specific medicine. *See* SUF ¶ 50.[2] And Dr. Lang conceded that, if he were limited to just data on Lilly's Trulicity, Mounjaro, and Zepbound, he could *not* "reliably conclude that a cause-and-effect

---

[2] He recognized there is "some variation" in the gallbladder outcomes for different GLP-1 RA medicines. *See* SUF ¶ 60; *see also* SUF ¶¶ 58, 69.

relationship exists between" any one of them and "gallbladder disorders or diseases." SUF ¶¶ 52-54. This admission reinforces the absence of reliable evidence that any of Lilly's GLP-1 medicines can cause gallbladder disease and dooms all gallbladder claims against Lilly. *See In re Zoloft*, 176 F. Supp. 3d at 491.

The published literature likewise shows that Plaintiffs cannot meet their burden to show that causation has been established. Peer reviewed articles emphasize that the evidence to date is insufficient to determine whether individual medicines may be associated with gallbladder disease. *See* SUF ¶¶ 40, 44, 46.

- Wang 2024: "[T]he findings of this study should be explained as *hypothesis-generating* but not definitive, and need to be confirmed by future studies."

- Dong 2022: "*More data are needed* to clarify whether the risk of biliary-related diseases varies by *individual GLP-1RA*."

- Nauck 2019: "[*M*]*ore evidence is needed regarding the relative effects of individual GLP-1RAs* on gallbladder events and the underlying mechanisms."

"[T]he non-existence of good data does not allow expert witnesses to speculate or base their conclusions on inadequate supporting science." *Perry*, 564 F. Supp. 2d at 467–68. "Speculation" about what the data may later show "does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (original emphasis; citation omitted).

Trulicity illustrates the problems with Dr. Lang's approach.[3] Trulicity is not indicated for weight loss and is not associated with substantial rapid weight loss. SUF ¶¶ 2-4. Dr. Lang testified that whether a GLP-1 RA medicine could have gallbladder effects independent of weight loss is a "hypothesis," and also agreed that "as of today, we don't know one way or another" whether there

---

[3] There is no triable fact issue on whether Mounjaro or Zepbound can cause gallbladder disease for similar reasons. Because no expert opines that tirzepatide gallbladder warnings (which have always been both Section 5 and Section 6) were inadequate, Lilly uses Trulicity in this example.

are mechanisms by which GLP-1 RAs (as distinguished from rapid weight loss) could cause gallbladder events. SUF ¶¶ 65, 67, 68. "Hypotheses, however, are not evidence." *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 375 (E.D. Pa. 2003). And speculation cannot defeat summary judgment. *Lexington Ins.*, 423 F.3d at 333 (citation omitted).

**II.     The Court Should Grant Summary Judgment On All Gallbladder Claims Because Plaintiffs Lack Evidence That The Gallbladder Warnings Were Inadequate.**

"The inadequacy of the warnings is an element of a failure to warn claim on which plaintiff has the burden of proof." *In re Diet Drugs*, 2006 WL 1071545, at \*1. Every state applies the learned intermediary doctrine, which "require[s] pharmaceutical manufacturers to direct warnings to physicians as prescribers." *Lance v. Wyeth*, 85 A.3d 434, 442 (Pa. 2014).[4]

Plaintiffs cannot show Lilly's labels failed to adequately warn prescribing physicians of gallbladder disease at any time. *First*, no expert opines that any Lilly medicine label was inadequate aside from the Trulicity label from December 2017 to June 2022, meaning Lilly is entitled to summary judgment for Mounjaro and Zepbound at all times and Trulicity outside that narrow window. *Second*, Plaintiffs' Trulicity claims also fail for the narrow window where they offer an expert because his opinion is inadmissible and insufficient to create a triable fact issue.

**A.     There Is No Triable Warning Adequacy Issue for Any Mounjaro Or Zepbound Claims (Or for Any Trulicity Claims Outside the December 2017- June 2022 Window).**

To start, the Court should grant summary judgment on all Mounjaro and Zepbound gallbladder claims, and all Trulicity gallbladder claims outside December 2017 to June 2022, because Plaintiffs lack expert support and because the warnings are adequate as a matter of law.

---

[4] *See also* Mot. #2 (Gastroparesis MSJ) § II.

### 1.    The Claims Lack Required Expert Support.

Expert testimony is required "to determine whether the drug manufacturer's warning to the medical community is adequate." *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 572 (W.D. Pa. 2014); *LaBarre v. Bristol-Myers Squibb Company*, 544 F. App'x 120, 125 ("To demonstrate inadequate warnings, a plaintiff must generally show through expert testimony that the warnings were not 'adequate to warn a physician of the possibility that [the drug] might be causing the condition experienced.'"); *see also Keen v. C.R. Bard, Inc.*, 480 F. Supp. 3d 624, 641 (E.D. Pa. 2020) (Pratter, J.); *Cohen v. Johnson & Johnson*, 634 F. Supp. 3d 216, 231 (W.D. Pa. 2022) ("Typically, in cases regarding prescription drugs, the adequacy of warnings requires medical expert testimony").

This is particularly true where, as here, determining whether additional warnings were necessary to apprise prescribing physicians "of the possibility that [the medicines] might be causing" the alleged injury is far outside the ken of laymen. *LaBarre*, 544 F. App'x at 125; *see Bloom v. Med. Depot, Inc.*, 2025 WL 2803913, at *20 n.17 (E.D. Pa. Sept. 30, 2025) (Marston, J.) (holding that expert testimony was not required in a failure-to-warn case involving a walker because "any layperson c[ould] understand the insufficiency of [that] warning," but recognizing courts have required expert testimony in cases involving more complicated warnings, such as "where the allegedly defective product is a prescription medical device") (citing *Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 751 (E.D. Pa. 2007)).[5]

Without an expert, the average juror would be left to impermissibly speculate as to why Lilly's labels at various times were allegedly inadequate or could have been improved. *Lynn ex*

---

[5] *See also* Mot. #2 (Gastroparesis MSJ) § II.B.1 (discussing cases).

*rel. Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 639-40 (W.D. Pa. 2012). Here, expert testimony is essential.

Dr. Ross is Plaintiffs' only gallbladder label expert, SUF ¶ 71,[6] but he offers warning opinions for just one Lilly medicine (Trulicity) and only for a limited time (December 2017 to June 2022), SUF ¶¶ 76-77. Because he confirmed he has no opinion regarding Mounjaro or Zepbound, SUF ¶¶ 74-75,[7] the Court should grant summary judgment on all Mounjaro and Zepbound gallbladder claims. Because his Trulicity opinions are limited to December 2017 to June 2022, SUF ¶¶ 76-77[8] the Court should grant summary judgment on all Trulicity gallbladder claims outside this window. *Rowland*, 34 F. Supp. 3d at 572; *LaBarre*, 544 F. App'x at 125; *Aaron v. Wyeth*, 2010 WL 653984, at *9 (W.D. Pa. Feb. 19, 2010).

## 2.    The Warnings Are Adequate As A Matter Of Law.

"In the MDL context, transferee courts have issued omnibus orders finding a drug label adequate as a matter of law." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 462 F. Supp. 3d 650, 652 (E.D. La. 2020). A label is adequate as a matter of law when it is "accurate, clear, consistent, and as a whole convey[s] an unmistakable meaning as to the consequences of ingesting the drug."

---

[6] Although Dr. Lang's report discussed certain labeling/warning issues, at deposition he confirmed multiple times that he would not be offering any labeling opinions and he was not qualified to do so. *Compare* SUF ¶ 48 *with* SUF ¶ 71 (Dr. Lang: "Q. And you're not offering opinions on FDA labeling and regulations. Correct? A. I am not qualified to do that. Q. Okay. So just to be clear, you're not offering any opinions as to the labels of GLP-1s. Correct? A. That is correct.").

[7] SUF ¶ 74 (Dr. Ross testifying: "Q. Okay. As of today, is it correct you're not planning to offer opinions on the labeling adequacy of Mounjaro? A. That is correct.); SUF ¶ 75 (Dr. Ross testifying: "Q. And is it also correct you're not going to be offering opinions on the labeling adequacy of Zepbound? A. That is correct.").

[8] SUF ¶ 76 (Dr. Ross testifying: "Q. – is it correct you're not offering an opinion that the Trulicity warnings were inadequate before December 2017? A. Correct."); SUF ¶ 77 (Dr. Ross testifying: "Q. Is it correct that you are not offering an opinion that the Trulicity labels were inadequately warned about gallbladder conditions after June 2022? A. That is correct.").

12

*Id.* at 652. While a label need not warn of a specific condition to be adequate as a matter of law,[9] there is no dispute that these labels did warn of the specific gallbladder conditions at issue.

Mounjaro and Zepbound labels have included gallbladder warnings in both Section 5 (Warnings & Precautions) and Section 6 (Adverse Reactions) since they were first approved in May 2022 and November 2023, respectively. SUF ¶¶ 9-10, 36-39. Trulicity labels have had the same warnings since June 2022. SUF ¶¶ 34-35. These warnings are legally sufficient to apprise physicians, who "are highly trained and able to make much better medical judgments than the consumer" of potential gallbladder risks. *In re Meridia*, 328 F. Supp. 2d at 812-13. The Court should grant summary judgment on all Mounjaro and Zepbound gallbladder claims and all Trulicity gallbladder claims for treatment after June 2022 for this additional reason. *In re Taxotere*, 462 F. Supp. 3d at 652 (granting summary judgment in nearly 200 cases where label "after December 2015 was adequate as a matter of law").

**B.      There Is No Triable Warning Adequacy Issue for Trulicity Claims in the December 2017-June 2022 Timeframe Either.**

The Court should also grant summary judgment as to the December 2017 to June 2022 window for Trulicity. Dr. Ross's opinions for this period are inadmissible and, even if admitted, are insufficient to create a triable fact issue.

**1.      The Claims Lack Required Expert Support Because Dr. Ross's Opinions Are Inadmissible.**

As explained in Lilly's Rule 702 motion on warning adequacy and federal preemption experts, Dr. Ross's opinions about Trulicity's label between December 2017 and June 2022 are inadmissible because they are not helpful, not based on sufficient data or any reliable methodology,

---

[9] *See Salvio v. Amgen*, 2012 WL 517446, *5 (W.D. Pa. 2012); *Aaron v. Wyeth*, 2010 WL 653984, at *7-11 (W.D. Pa. Feb. 19, 2010); *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 812-13 (N.D. Ohio 2004).

not reliably applied to the facts of this case, and constitute inadmissible legal conclusions and state-of-mind opinions. Because inadmissible expert testimony cannot create a triable issue on warning inadequacy, Lilly is entitled to summary judgment on all claims. *Rowland*, 34 F. Supp. 3d at 572; *LaBarre*, 544 F. App'x at 125; *Aaron v. Wyeth*, 2010 WL 653984, at *9 (W.D. Pa. Feb. 19, 2010).

### 2. Even If Admitted, Dr. Ross's Trulicity Opinions Are Insufficient to Create a Genuine Issue of Material Fact.

To survive summary judgment on gallbladder claims relating to treatment with Trulicity between December 2017 and June 2022, Plaintiffs must establish a triable issue that Lilly had a duty to warn. They must show the risk "was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time," *Doughtery v. C.R. Bard, Inc.*, 2012 WL 2940727, at *5 n.10 (E.D. Pa. July 18, 2012). Plaintiffs cannot do so, and the Court should thus grant summary judgment.

Plaintiffs treat December 2017 to June 2022 as one undifferentiated period for the purposes of Trulicity warning adequacy. However, the Trulicity label was changed in February 2020 to add gallbladder disease to Section 6 (Adverse Reactions). SUF ¶¶ 19-20. Lilly thus addresses the time before and after that label change—December 2017 to February 2020 and February 2020 to June 2022—separately below. Plaintiffs have failed to show a triable issue for either period.

### a. No Duty-To-Warn (December 2017 to February 2020)

Plaintiffs cannot defeat summary judgment for December 2017 to February 2020 claims. Even if admitted, Dr. Ross's testimony is insufficient to create a triable issue on a duty to warn by 2017. A pharmaceutical manufacturer has a duty to "warn of risks … of which he *has or reasonably should have knowledge*." *Hahn v. Richter*, 673 A.2d 888, 890 (Pa. 1996). Lilly is not required to warn of every risk which might be remotely suggested but rather only those risks that were "known or knowable in light of the generally recognized and prevailing best scientific and

14

medical knowledge available at the time of manufacture and distribution." *Doughtery*, 2012 WL 2940727, at *5 n.10.[10]

Dr. Ross admits there was no study or published data reporting a statistically significant association between gallbladder disease and Trulicity by December 2017. SUF ¶ 82. *Taxotere* is instructive. There, the *Taxotere* MDL court held there was no duty to warn until researchers identified "a statistically significant association between Taxotere and permanent alopecia." 2020 WL 3487594, at *2-3 (E.D. La. June 1, 2020). Before that point, the court could not "say that a reasonably prudent manufacturer should have drawn certain conclusions … and effectively acquired knowledge that Taxotere [was] causing permanent [alopecia]." *Id.* at *4. As in *Taxotere*, here Dr. Ross identifies no information sufficient to raise a genuine fact issue on a duty to warn during this period.

*First,* Dr. Ross relies on Saxenda's December 2014 warning label and an observational study by Faillie (2016), SUF ¶¶ 78, 84,[11] which reported an association between gallbladder disease and exenatide (Byetta) and liraglutide (Saxenda)—neither of which are Lilly GLP-1 RA medicines at issue in this MDL. SUF ¶ 41.

*Second*, Dr. Ross's citation to *Novo's* confidential FDA submissions cannot support a duty. Dr. Ross concedes that he "would not have expected" Lilly to have access to those confidential Novo materials. SUF ¶ 86. Information can trigger a duty to warn only if it is "readily ascertainable" to the drug manufacturer. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp.

---

[10] The scope of the duty to warn may vary by state. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2020 WL 3487594, at *2 (E.D. La. June 1, 2020) (citing ECF No. 8977-4 (50-state survey attached as Exhibit B to the motion for summary judgment)). However, the vast majority of states follow the rule articulated in *Daugherty*. *See* Case No. 2:16-md-02740, ECF 8977-4 (Jan. 7, 2020).

[11] The 2016 study by Faillie et al. addressed whether GLP-1 RAs or other medicines "may be associated with an increased risk of bile duct and gallbladder disease." SUF ¶ 41. While a 2022 study by Faillie et al. also assessed GLP-1 RAs and other medicines, the study analyzed risk of intestinal obstruction, not gallbladder conditions.

15

2d 230, 268 (E.D.N.Y. 2007) (applying Pennsylvania law and holding that a duty to warn is limited to information that is "readily ascertainable" to the drug manufacturer); *accord Feldman v. Lederle Lab'ys.*, 479 A.2d 374, 389 (N.J. 1984) (under New Jersey law a drug manufacturer has a duty to warn based only on "reasonably obtainable and available reliable information").

*Third*, a handful of adverse event reports cannot trigger a duty to warn either. In his report, Dr. Ross identified only five reports of suspected Trulicity-related cholecystitis before 2021 in the FAERS database—one in 2016, two in 2017, one in 2018, and one in 2019. SUF ¶ 83. Courts have held far greater numbers of adverse event reports insufficient to create a duty to warn. *Taxotere*, 2020 WL 3487594, at *5 ("[T]he Court cannot make such a leap to say that these fifteen reports should have led Sanofi to conclude that Taxotere was causing permanent hair loss."); *In re Gardasil Prods. Liab. Litig.*, 770 F. Supp. 3d 893, 912 (W.D.N.C. 2025) (20 adverse event reports insufficient); *Gayle v. Pfizer Inc.*, 452 F. Supp. 3d 78, 88 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 79 (2d Cir. 2021) (6,000 adverse event reports insufficient).

### b.      No Warning Inadequacy (February 2020 to June 2022)

In February 2020, acute gallbladder disease warnings were added to Section 6 (Adverse Reactions) of the Trulicity label. SUF ¶ 20. Dr. Ross not only fails to explain how the Section 6 warning was inadequate; he admits *he did not even know it existed* until shown it during his deposition. SUF ¶¶ 21-22[12].

Because Dr. Ross was not even aware of the Section 6 language, he necessarily did not evaluate its adequacy in formulating his opinion. Dr. Ross's total failure to "address the adequacies of the warnings given by" Lilly on the Trulicity label between February 2020 and June 2022 is

---

[12] SUF ¶ 22 (Dr. Ross testifying: "Q. [Y]ou didn't know this [Section 6 label change] even existed until this deposition, correct? A. Correct.").

16

fatal to Plaintiffs' gallbladder claims in that period. *See, e.g., Soufflas v. Zimmer Inc.*, 474 F. Supp. 2d 737, 751 (E.D. Pa. 2007) (granting summary judgment where expert did not discuss the label language); *Begley v. Bristol-Myers Squibb Co.*, 2013 WL 144177, at *8 (D.N.J. Jan. 11, 2013) (granting summary judgment where "notably absent from [the expert's] report [was] any language addressing how a prescribing physician at the time of Plaintiff's injury would have interpreted the warning label or any other medical information available at that time").

Plaintiffs bear the burden of showing that the Section 6 warning was not adequate. *In re Diet Drugs*, 2006 WL 1071545, at *1. Dr. Ross argues that an update to the Warnings and Precautions Section would have been included in both the Recent Major Changes and Highlights of Prescribing Information subsections—which he says are more prominent and featured twice. SUF ¶ 97. But he does not explain why that means that physicians would not be adequately informed by a Section 6 warning. *Id.* Indeed, the gallbladder warning added to Section 5 in June 2022 repeats, verbatim, much of the text already included in Section 6. SUF ¶¶ 20, 34-35. By failing to "adduc[e] evidence to show that the [Trulicity] warning label [was] somehow inadequate or inaccurate," Plaintiffs cannot "establish the first prong of [their] failure-to-warn claim" and Lilly is entitled to summary judgment on gallbladder claims from February 2020 to June 2022. *Carr-Davis v. Bristol-Myers Squibb Co.,* 2013 WL 322616, at *7 (D.N.J. Jan 28, 2013); *accord Bueno v. Merck & Co.*, 746 F. Supp. 3d 853, 870–72 (S.D. Cal. 2024).[13]

---

[13] As Dr. Kessler explains, regardless of whether a warning is in Section 5 or Section 6, "once you warn … you've warned." SUF ¶ 98. In the *Taxotere* MDL, Dr. Kessler similarly testified that "there are different sections of the label"; "There is a warning section. It's called Section 5. There is an adverse event section called Section 6. I think in either section, as long as it was clearly and prominently warned of permanent hair loss, that's what I care about." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 462 F. Supp. 3d 650, 653–54 (E.D. La. 2020).

III.    **The Court Should Grant Summary Judgment On All Gallbladder Claims Because They Are Preempted.**

A.    **December 2017-June 2022 Trulicity Gallbladder Claims Are Preempted.**

Plaintiffs' Trulicity gallbladder claims during the 2017-2022 window independently fail because they are preempted by federal law. Preemption may be established in two ways. *First*, failure-to-warn claims are preempted if there is not sufficient "newly acquired information" regarding a causal association that would have justified adding a warning without prior FDA approval. Generally, pharmaceutical manufacturers may not unilaterally modify an FDA-approved label. However, a manufacturer may "make certain changes to its label before receiving the agency's approval" under the "changes being effected" (CBE) regulation. *Wyeth v. Levine*, 555 U.S. 555, 568 (2009). Through the CBE process, a manufacturer may "add or strengthen a contraindication, warning, precaution, or adverse reaction" upon the filing of a supplemental application, without waiting for FDA's decision, when there is "newly acquired information" to justify the change. 21 C.F.R. § 314.70(c)(6)(iii)(A). FDA defines "newly acquired information" as "data, analyses, or other information not previously submitted to the Agency" that "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." *Id*. § 314.3(b).

A change through the CBE process must still meet the requirements for including information in a particular label section. 21 C.F.R. § 314.70(c)(6)(iii)(A) (requiring a label change to "satisf[y] the standard for inclusion in the labeling under § 201.57(c)"). Plaintiffs contend that Lilly should have added a warning to Section 5 of Lilly's label. Section 5, called "Warnings and Precautions," "describe[s] clinically significant adverse reactions" and "other potential safety hazards." 21 C.F.R. § 201.57(6)(i). Per FDA regulation, a safety risk is identified in the Warnings & Precautions section when "there is reasonable evidence of a causal association with a drug."

18

*Id.*[14] Section 6, titled "Adverse Reactions," "describe[s] the overall adverse reaction profile of the drug," *id*. § 201.57(7), and includes "adverse events for which there is *some basis* to believe there is a causal relationship [with] the drug." *Id*. (emphasis added).

*Second*, even if Plaintiffs identify newly acquired information, claims are still preempted if there is "clear evidence" that FDA would have rejected the warning had the manufacturer tried to add it on its own initiative. To prove "clear evidence" of FDA rejection, a manufacturer must show that FDA (1) was "fully informed" of the relevant risks, and (2) took action "carrying the force of law" making clear it would not have approved any alternative warning that complied with plaintiffs' putative state law duty.

The Supreme Court has made clear that preemption is a "'legal [question] for the judge, not a jury' because '[t]he question often involves the use of legal skills to determine whether agency disapproval fits facts that are not in dispute.'" *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 118 F. 4th 322, 340, 353 (3d Cir. 2024) (quoting *Albrecht*, 587 U.S. at 316).[15]

### 1.    December 2017-February 2020 Labeling Claims Are Preempted.

### a.    No "Newly Acquired Information."

Newly acquired information must (1) constitute "reasonable evidence of causal association" (the standard for Section 5, 21 C.F.R. § 201.57(6)(i)) *and* (2) "reveal risks of different type or greater severity or frequency" (21 C.F.R. § 314.3(b)) than previously submitted to FDA. Plaintiffs' expert, Dr. Ross, identified several categories of information he contends constitute newly acquired information sufficient to support a CBE submission for Section 5 by December

---

[14] SUF ¶ 95 (admitting that even adding a warning in Section 5 of the label "does not mean necessarily that there's a causal relationship").

[15] While expert testimony is not necessarily required on preemption issues, Plaintiffs nonetheless proffer Dr. Ross as an expert to opine that Lilly could and should have added gallbladder disease warnings to Section 5 of the Trulicity label by December 2017. Dr. Ross's testimony (even if admitted) cannot overcome preemption here.

19

2017. But courts have consistently held that the types of materials that Dr. Ross relies upon do not qualify as newly acquired information.

*First*, Dr. Ross's reliance on Saxenda's December 2014 gallbladder warnings (SUF ¶ 84) fails as a matter of law. Courts have consistently held that information is not "newly acquired" when FDA already possessed it. *See Knight v. Boehringer Ingelheim Pharms., Inc.*, 984 F.3d 329, 340 (4th Cir. 2021); *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 815–16 (7th Cir. 2018); *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1023 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595 (9th Cir. Mar. 28, 2022). *Accord* SUF ¶ 92 (agreeing newly acquired information must be information FDA not previously submitted to FDA). At his deposition, Dr. Ross conceded that FDA would have had access to additional Saxenda submission materials unavailable to Lilly. SUF ¶ 87. And he conceded FDA knew, at the time it first approved Trulicity, that Trulicity and Saxenda were in the same class. SUF ¶ 89.

*Second*, Dr. Ross claims that a February 2013 internal Lilly draft clinical safety summary ("CSS") constitutes newly acquired information. SUF ¶ 79. It does not. Preliminary drafts cannot qualify as newly acquired information. *Knight*, 984 F.3d at 340 (holding that preliminary thoughts and drafts are not "reasonable evidence of a causal association" and "cannot, without more, reveal" newly acquired information). Dr. Ross's own testimony confirms the CSS draft fails to meet this standard. Dr. Ross acknowledged the document was "rough" and preliminary— created seven months before the final clinical safety summary was submitted to SUF ¶¶ 80, 81. The rough thoughts in that internal Lilly email are not newly acquired information. *See Knight*, 984 F.3d at 341 (preliminary drafts generally are not newly acquired information); *In re Incretin-Based Therapies*, 524 F. Supp. 3d at 1022 (foreign regulatory assessment was not newly acquired

20

information because "the publication was a preliminary assessment and did not rely on information different to that already considered by the FDA's comprehensive review").

*Third*, Dr. Ross points to Novo's confidential Periodic Safety Update Reports ("PSURs") and Periodic Benefit-Risk Evaluation Reports, but Lilly never had access to them. In fact, Dr. Ross admitted he "would not have expected" Lilly would have had access to that Novo information. SUF ¶ 86. Because "[p]reemption must be judged on the information actually available to the manufacturer at the relevant time which was 'not submitted' to the FDA," *In re Gardasil*, 770 F. Supp. 3d at 916, the Novo materials unavailable to Lilly cannot constitute newly acquired information.

*Fourth*, Dr. Ross argues that Lilly should have created newly acquired information by "connecting the dots" through a CBE tying old information together. SUF ¶ 92. But this legal conclusion is not only inadmissible; it is incorrect. "[A]sserting that a manufacturer could or should have done more studies—i.e., that a manufacturer should have created the 'newly acquired information'—is insufficient to avoid preemption under the CBE regulation." *Bueno*, 746 F. Supp. 3d at 878 (quoting *Holley v. Gilead Scis., Inc.*, 2023 WL 6390598, at *8 (N.D. Cal. Sept. 28, 2023)). *See also Gayle*, 452 F. Supp. 3d at 88 (claim "manufacturer should have created the "newly acquired information'" is insufficient); *In re Gardasil,* 770 F. Supp. 3d at 913 n.22 ("Plaintiffs [cannot] simply say that Merck should have somehow reached the same conclusion as their litigation experts."). Alleged newly acquired information based on "connecting the dots" cannot create a triable issue.

> **b.** **"Clear Evidence" FDA Would Have Rejected New Warning.**

Dr. Ross opines that Lilly should have added gallbladder disease warnings to Trulicity's label in Section 5 in December 2017. But FDA monitored the evidence of the relationship between

GLP-1RAs and gallbladder disease, and there is clear evidence FDA would have rejected such warnings at the time.

### i.    FDA Was Fully Informed.

FDA's decision to add gallbladder disease to Section 6 (Adverse Events) of the Trulicity label in January 2020 satisfies the first prong of the clear evidence standard because FDA had full knowledge of gallbladder-related adverse events from Lilly's dulaglutide clinical trials and postmarketing reports. SUF ¶ 17. Lilly discussed the existing clinical-trial results in the November 2017 PSUR it submitted to FDA, and Lilly provided FDA with the complete results from the REWIND trial when they became available in April 2019. SUF ¶¶ 15, 16 (LLY-GLPMDL-01003997; LLY-GLPMDL-08148449). FDA also had access to all adverse-event reports submitted to the FAERS database, SUF ¶ 13, and was obligated to evaluate those reports regularly pursuant to its duties under 21 U.S.C. § 355(k)(5)(A).

### ii.    FDA Would Have Rejected A Section 5 Warning.

FDA's decision to add gallbladder disease to Section 6 establishes that it would have rejected any discussion of gallbladder disease in Section 5 at that time. FDA's action clearly carried the force of law, because the Agency required Lilly to add gallbladder disease as potential adverse reactions (even over Lilly's objection). SUF ¶¶ 31-34. And by adding gallbladder disease to Section 6, FDA necessarily concluded that Section 5's warning standard was *not* met. If FDA believed that the robust evidentiary record it reviewed was "reasonable evidence of a causal association," 21 C.F.R. § 201.57(6)(i), then it had a statutory duty under 21 U.S.C. § 355(o)(4)(A) to propose a Section 5 warning. *See* 21 U.S.C. § 355(o)(4); *In re Zofran (Ondansetron) Products Liability Litigation,* 541 F. Supp. 3d 164, 202 (D. Mass. June 1, 2021) (noting it was "unlikely that the FDA intended to leave open the possibility that enhanced pregnancy warnings would be appropriate in a different section of the label."). Instead, FDA chose to add gallbladder warnings

to Section 6 only, which requires only "some basis" to believe an association is causal. 21 C.F.R § 201.57(7). FDA was fully informed of the relevant data, it "received *and considered*" that data, and it made a judgment about where on the label the alleged risks should be discussed. *Fosamax*, 118 F.4th at 358 (quoting *Albrecht*, 587 U.S. at 324 (Alito, J., dissenting)). That decision preempts any attempt to second-guess the Agency's judgment through a state-law tort suit.[16]

### 2.    Post-February 2020 Claims Are Preempted (No Newly Acquired Information).

After FDA decided to add cholelithiasis and cholecystitis to Trulicity's Section 6 in 2020, Lilly would have needed "newly acquired information" that "reveal[ed] risks of a different type or greater severity or frequency than previously included in submissions to FDA," *id*. § 314.3(b), to add a gallbladder warning to Section 5. Plaintiffs have not identified any post-February-2020 information regarding Trulicity that was qualitatively different than the data FDA has already considered.  Although FDA informed Lilly it was investigating a "newly identified safety signal" regarding GLP-1RAs and gallbladder disease in August 2021, SUF ¶ 24, that investigation (which culminated in a label change in June 2022) was prompted by class-wide adverse-event data, much of which concerned other manufacturers' products and in many cases was unavailable to Lilly at the time, SUF ¶ 30.

In sum, all Trulicity gallbladder claims from December 2017-June 2022 are preempted because Plaintiffs have not identified any newly acquired information demonstrating reasonable evidence of a causal association between Trulicity and gallbladder disease, much less evidence that would have permitted Lilly to overrule FDA's 2020 judgment that gallbladder warnings belonged in Section 6 of the Trulicity label, rather than in Section 5.

---

[16] As discussed in Section II.B.2.b, above, until shown at his deposition, Dr. Ross was unaware that FDA had determined the information belonged in the Adverse Reactions section in 2020.

**B.    Post-June 2022 Trulicity Claims and All Mounjaro and Zepbound Claims (For Any Time) Are Preempted.**

All post-June 2022 Trulicity labels and all Mounjaro and Zepbound labels since they were first approved in May 2022 and November 2023 have included gallbladder disease warnings in both Section 5 and Section 6. Since then, there has been no newly acquired information not previously available to FDA that would have allowed Lilly to change the gallbladder warnings without prior FDA approval. 21 C.F.R. §§ 314.70(c)(6)(iii)(A), 314.3(b). Thus, any gallbladder claims for all Mounjaro and Zepbound claims and all post-June 2022 Trulicity claims are also preempted. *See Wyeth*, 555 U.S. at 568; *In re Gardasil*, 770 F. Supp. 3d at 916; *Dolin*, 901 F.3d at 815–16; *Knight*, 984 F.3d at 340; *In re Incretin-Based Therapies*, 524 F. Supp. 3d at 1023.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Lilly's favor on all gallbladder claims.

24

Dated: May 19, 2026

Respectfully submitted,

*/s/ Diana M. Watral*

Diana M. Watral, P.C. (admitted *pro hac vice*)
Mark Premo-Hopkins, P.C. (admitted *pro hac vice*)
Renee D. Smith (admitted *pro hac vice*)
**Kirkland & Ellis LLP**
333 W. Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
diana.watral@kirkland.com
mark.premohopkins@kirkland.com
renee.smith@kirkland.com

Samuel W. Silver (PA Bar No. 56596)
Catherine M. Recker (PA Bar No. 56813)
Bruce P. Merenstein (PA Bar No. 82609)
Abigail T. Burton (PA Bar No. 334450)
**Welsh & Recker, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
Facsimile: (985) 617-1021
ssilver@welshrecker.com
cmrecker@welshrecker.com
bmerenstein@welshrecker.com
aburton@welshrecker.com

*Attorneys for Defendants Eli Lilly and Company
and Lilly USA, LLC*

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS ELI LILLY AND COMPANY AND ELI LILLY LLC, USA'S MOTION FOR SUMMARY JUDGMENT ON GALLBLADDER CLAIMS was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ Diana M. Watral*
Diana M. Watral, P.C.