# EXHIBIT 271D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:
GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS GLP-1 RAS
PRODUCTS LIABILITY
24-MD-3094

_____

                              FEBRUARY 10, 2026
                              COURTROOM 16B
                              PHILADELPHIA, PA 19106

_____
      BEFORE THE HONORABLE KAREN S. MARSTON, J.

_____

                IN-PERSON STATUS CONFERENCE

APPEARANCES:

JONATHAN D. ORENT, ESQUIRE
MOTLEY RICE LLC
40 WESTMINSTER STREET, 5TH FLOOR
PROVIDENCE, R.I. 02903

COUNSEL FOR THE PLAINTIFF



                 **LYNN GLIGOR, RMR**
                **OFFICIAL COURT REPORTER**
            **ROOM 2609 U.S. COURTHOUSE**
                **601 MARKET STREET**
             **PHILADELPHIA, PA 19106**
                 **(856)649-4774**


**Proceedings recorded by Stenotype-computer,
transcript produced by computer-aided transcription**

CONTINUED APPEARANCES:


PAUL PENNOCK, ESQUIRE
JONATHAN SEDGH, ESQUIRE
MORGAN & MORGAN
350 5TH AVE, SUITE 6705
NEW YORK, NY 10118

COUNSEL FOR THE PLAINTIFF


CALEB SEELEY, ESQUIRE
SEEGER WEISS LLP
55 CHALLENGER ROAD
RIDGEFIELD PARK, NJ 07660

COUNSEL FOR THE PLAINTIFF


SARAH S. RUANE, ESQUIRE
WAGSTAFF & CARTMELL LLP
4740 GRAND AVENUE, SUITE
300 KANSAS CITY, MO 64112

COUNSEL FOR THE PLAINTIFF


LOREN H. BROWN, ESQUIRE
DLA PIPER LLP
1251 AVENUE OF THE AMERICAS, 27TH FLOOR
NEW YORK, NY 10020

COUNSEL FOR THE DEFENDANT - NOVO


RAYMOND M. WILLIAMS, ESQUIRE
KATIE INSOGNA, ESQUIRE
JENNIFER FELDMAN, ESQUIRE - VIA TEAMS
DLA PIPER LLP
1650 MARKET STREET, SUITE 5000
PHILADELPHIA, PA 19103

COUNSEL FOR THE DEFENDANT - NOVO

CONTINUED APPEARANCES:

MARK PREMO-HOPKINS, ESQUIRE
CAROLINE POWER, ESQUIRE
KIRKLAND & ELLIS LLP
333 WEST WOLF POINT PLAZA
CHICAGO, IL 60654

COUNSEL FOR THE DEFENDANT - ELI LILLY


JONATHAN M. REDGRAVE, ESQUIRE
REDGRAVE LLP
4800 WESTFIELDS BOULEVARD
SUITE 250
CHANTILLY, VA 20151

COUNSEL FOR THE DEFENDANT - ELI LILLY

4

(CLERK OPENS COURT.)

THE COURT:  ALL RIGHT.  GOOD AFTERNOON, EVERYONE.

ALL COUNSEL:  GOOD AFTERNOON, YOUR HONOR.

THE COURT:  PLEASE STATE YOUR NAMES FOR THE RECORD.

MR. ORENT:  GOOD AFTERNOON, AGAIN, YOUR HONOR.  JONATHAN ORENT FOR THE PLAINTIFFS.

MR. SEELEY:  CALEB SEELEY FOR THE PLAINTIFFS.

MR. PENNOCK:  PAUL PENNOCK FOR THE PLAINTIFFS, YOUR HONOR.  GOOD AFTERNOON.

MS. RUANE:  SARAH RUANE FOR THE PLAINTIFFS.

THE COURT:  ALL RIGHT.  GOOD TO SEE ALL OF YOU.

MR. BROWN:  LOREN BROWN FOR NOVO, YOUR HONOR.

MS. INSOGNA:  GOOD AFTERNOON, YOUR HONOR.  KATIE INSOGNA FOR NOVO.

MR. WILLIAMS:  GOOD AFTERNOON, YOUR HONOR.  RAY WILLIAMS FOR NOVO.

THE COURT:  GOOD TO SEE YOU.

MR. PREMO-HOPKINS:  GOOD AFTERNOON, YOUR HONOR.  MARK PREMO-HOPKINS FOR LILLY.

MS. POWER:  GOOD AFTERNOON, YOUR HONOR. CAROLINE POWER FOR LILLY.

MR. REDGRAVE:  GOOD AFTERNOON, YOUR HONOR.  JONATHAN REDGRAVE FOR LILLY.

THE COURT:  GOOD TO HAVE ALL OF YOU.

ALL RIGHT.  REAL QUICK, A HOUSEKEEPING MATTER FROM THIS MORNING THAT I FORGOT TO ADDRESS.  I DON'T KNOW HOW I MISSED IT.

WHAT WE ARE WAITING FOR RELATED TO NUMBER ONE, THE REDESIGNATION, IS A PARALEGAL, I THINK, REACHED OUT FROM DLA PIPER ABOUT THE TWO CASES AND ASKED WHETHER WE WANTED TO FILE A MOTION TO REDESIGNATE THEM.  THESE ARE TWO THAT ARE NOT MIXED INJURY THAT ARE IN 3094 THAT NEED TO GET OVER TO 3163.

IT'S SHERBURN, 25-6467, AND FLAHERTY, F-L-A-H-E-R-T-Y, 25-5 -- I THINK IT'S 994.

SO WE JUST NEED THE PROPOSED ORDER, AND I CAN GET THOSE MOVED.  OUR CLERK'S OFFICE NEEDS TO GET IT MOVED FROM ONE TO THE OTHER.

MS. INSOGNA:  NO PROBLEM, YOUR HONOR.  I HAVE SEEN THE DRAFTS, SO I AM SURPRISED IT HAS NOT --

THE COURT:  WE DIDN'T KNOW IF IT GOT SENT AND SOMEHOW IT JUST DIDN'T GET TO US, OR WHAT.  BUT WE DON'T HAVE IT.

MS. INSOGNA:  I WILL FOLLOW UP.

THE COURT:  IT MAY JUST BE THAT IT GOT STUCK IN SPAM, I DON'T KNOW.

THE ONLY REASON WE ARE REALLY -- IS THE ATTORNEY ON BEHALF OF ONE OF THESE PLAINTIFFS, I DON'T KNOW WHICH ONE, HAS BEEN CALLING AND HE WANTS TO GET HIS NOTICE OF APPEARANCE ON, BUT IT DOES MAKE MORE SENSE TO DO IT ONCE IT GETS ONTO THE RIGHT DOCKET.

MS. INSOGNA:  I BELIEVE THAT'S THE SHERBURN CASE.

YES, THANK YOU, YOUR HONOR.

MR. MEENAN:  YOUR HONOR, I AM ON THE MEETING THIS MORNING.  AND I HAVE FILED MY NOTICE OF APPEARANCE ALREADY.  BUT I AM STILL WAITING FOR THE TRANSFER.  THANK YOU.

KEVIN MEENAN SPEAKING.

THE COURT:  YES, THANK YOU, SIR.

AND I APOLOGIZE, I SHOULD HAVE DEALT WITH THAT THIS MORNING AND I DIDN'T.  I HAVE TAKEN CARE OF IT.  I THINK WE WILL HAVE THAT DONE HOPEFULLY WITHIN THE NEXT 24 HOURS.

MR. MEENAN:  THANK YOU.

THE COURT:  THANK YOU.

ALL RIGHT.  SO MOVING ON TO THIS AGENDA, WE WILL START WITH THE MDL.

AGAIN, I AM TOLD BY MY DEPUTY THERE

CONTINUES TO BE SOME ISSUES.  SO I JUST WANT EVERYONE TO BE AWARE, THERE ARE TWO DIFFERENT LINKS WHEN WE DO THE IN-PERSON STATUS AS -- I DON'T KNOW, I WILL SEE IF MAYBE THERE IS A WAY WE CAN DO THIS, BUT RIGHT NOW YOU HAVE TO GET THE LINK CORRECT FOR THE RIGHT MDL NUMBER.  WE STILL HAVE PEOPLE GOING ON TO THE 11 O'CLOCK LINK AND EVERYONE SHOULD BE HERE ON THE 1 O'CLOCK LINK.

SO I APOLOGIZE FOR ANY CONFUSION, BUT JUST MAKE SURE WHATEVER MDL CASE NUMBER YOU ARE TRYING TO GET ON VIA A TEAMS LINK, YOU HAVE TO GET THE RIGHT LINK.

OF COURSE I AM TALKING TO EVERYBODY THAT DOES HAVE THE RIGHT LINK, SO MAYBE I SHOULD GET ON THE OTHER ONE.

LET'S START WITH THE DOCKET OVERVIEW.

MS. INSOGNA:  GOOD AFTERNOON, YOUR HONOR.  KATIE INSOGNA FOR NOVO.  I CAN PROVIDE AN UPDATE TO THE COURT.

AS OF LAST WEEK, THE PARTIES ARE TRACKING 3,148 CASES PENDING IN 3094.

THE COURT:  OKAY.

MS. INSOGNA:  OF THOSE, 1,900 ARE NOVO ONLY.  I'M SORRY, 901 ARE NOVO ONLY; 724 ARE NOVO AND LILLY COMBINED; 523 ARE LILLY ONLY CASES.

THE COURT:  I THINK SOMEBODY ON OUR TEAMS

LINK IS NOT MUTED.  IF YOU CAN MUTE YOURSELF, WE ARE JUST HEARING SOME BACKGROUND NOISE HERE.

THANK YOU.

MS. INSOGNA:  BASED ON THE ALLEGATIONS IN THE COMPLAINT, 2,344 PLAINTIFFS ARE ALLEGING GASTROPARESIS.

I WILL GO THROUGH THE REST OF THE ALLEGED INJURIES, BUT THE NEXT ONE THAT I JUST WANT TO FLAG IS NEW TO THE LIST, WE INTRODUCED IT AT THE LAST HEARING. THERE ARE NOW 835 PLAINTIFFS WHO ARE ALLEGING EITHER IMPAIRED GASTRIC EMPTYING OR IMPAIRMENT OF GASTRIC EMPTYING OR DELAYED GASTRIC EMPTYING SYMPTOMS.

I KNOW IT'S LATER ON IN THE AGENDA, SO WE WILL PROVIDE MORE DETAILS ON THAT.  BUT SOME OF THOSE ARE PLED IN THE ALTERNATIVE FOR GASTROPARESIS AND SOME ARE SUBSTITUTING IN FOR GASTROPARESIS.  THAT'S ABOUT 50/50.

THE COURT:  OKAY.

MS. INSOGNA:  NEXT THE MOST ALLEGED INJURY IS INTESTINAL OBSTRUCTION, 613 PLAINTIFFS.  410 CLAIMS OF ILEUS; 221 GALLBLADDER CASES.

THE COURT:  HOW MANY?

MS. INSOGNA:  221.

AND WE HAVE ALREADY TALKED ABOUT THIS, THERE ARE THREE GI AND NAION CASES HERE, FIVE TOTAL

ACROSS THE TWO.

THE COURT:  OKAY.

MS. INSOGNA:  MOVING ON TO THE SHORT FORM COMPLAINTS.  AS THE COURT IS AWARE, PLAINTIFFS WITH EXISTING CASES ON FILE HAD UNTIL EITHER DECEMBER OR JANUARY TO FILE SHORT FORM COMPLAINTS.  TO DATE, WE HAVE RECEIVED 2,673 AMENDED SHORT FORM COMPLAINTS.  WE HAVE ALSO RECEIVED AN ADDITIONAL 319 NEW CASES FILED SINCE THE SHORT FORM COMPLAINT WAS AVAILABLE USING THAT TEMPLATE.

THERE ARE APPROXIMATELY 21 CASES FOR WHICH WE ARE EXPECTING SHORT FORM COMPLAINTS THAT ARE OVERDUE.  WE HAVE BEEN IN TOUCH WITH ALL OF THE PLAINTIFFS' COUNSEL ON THOSE, AND WE EXPECT -- WE HOPE THAT THEY WILL EITHER FILE THE SHORT FORM COMPLAINT OR DISMISS THE CASE.

THE COURT:  OKAY.

MS. INSOGNA:  AS I PREVIEWED THE LAST TIME, WE HAVE SEEN SOME CHANGES COMPARING THE PREVIOUS LONG FORM COMPLAINTS TO THE SHORT FORM COMPLAINTS.  ABOUT 400 CASES HAVE CHANGED THE MEDICINES ALLEGED. AND --

THE COURT:  HOW MANY CHANGED?

MS. INSOGNA:  400.  419 TO BE PRECISE. AND JUST SHY OF --

THE COURT:  BUT WITHIN THE SAME DEFENDANT?

MS. INSOGNA:  I WOULD ASSUME SO, BUT IT'S POSSIBLE THAT THERE ARE CHANGES ACROSS THE DEFENDANTS, WHICH WOULD REFLECT LARGER CHANGES, OBVIOUSLY THEY WOULD --

THE COURT:  RIGHT --

MS. INSOGNA:  -- HAVE NAMED.

THE COURT:  YOU WOULD HAVE TO CHANGE THE CAPTION.

MS. INSOGNA:  RIGHT.

AND THEN THERE HAVE BEEN CLOSE TO 900 CASES, 891, THAT HAVE CHANGED IN SOME WAY THE INJURIES THAT ARE BEING ALLEGED.  AND AS I MENTIONED, A LARGE NUMBER OF THOSE ARE MADE UP OF THESE IMPAIRED GASTRIC EMPTYING CASES.

MOVING ON TO THE PLAINTIFF FACT SHEETS. SPEAKING ONLY FOR THE NOVO CASES NOW.  WE HAVE RECEIVED PLAINTIFF FACT SHEETS IN 2,215 CASES.  WE ARE TRACKING ABOUT 22 PFSS THAT ARE OVERDUE, AND WE HAVE BEEN IN TOUCH WITH PLAINTIFFS ON NOTICES OF DEFICIENCY PURSUANT TO CMO 12 ON THIS.

FOCUSING ON THE INJURY ALLEGATIONS IN THOSE PFSS.  70 PERCENT OF THE CASES, OR 1,539, PLAINTIFFS ARE ALLEGING GASTROPARESIS IN THEIR VERIFIED

PLAINTIFF FACT SHEET.  AND WITHIN THAT UNIVERSE, MORE THAN THREE QUARTERS OF THE PLAINTIFFS ALLEGE PERSISTENT GASTROPARESIS.

AND YOUR HONOR HAD ASKED LAST TIME ABOUT THE PLAINTIFFS ALLEGING CONTINUED USE OF THE GLP-1, AND SO WE INVESTIGATED THAT.  I WILL CAVEAT THAT IT'S POSSIBLE THAT THESE WERE POTENTIALLY ERRORS IN THE PFS. I CAN'T SPEAK FOR IT, BUT WE HAVE TRACKED ABOUT 100 CASES WHERE PLAINTIFF IS ALLEGING THAT -- HAS CHECKED OFF THE BOX "YES" TO CONTINUING TO USE A GLP-1 AT THE TIME OF COMPLETING THEIR PFS.

THE COURT:  AND YOU ARE ASSUMING THEY ARE ALLEGING THAT THEY ARE CONTINUING TO USE WHATEVER IT IS THAT THEY ARE SAYING THEY ARE ON, OR DO YOU THINK THEY SWITCHED?

MS. INSOGNA:  ARE YOU ASKING WHETHER THEY ARE USING THE SAME ONE ABOUT WHICH THEY ARE SUING?

THE COURT:  RIGHT.

MS. INSOGNA:  I THINK MANY OF THEM ARE.

THE COURT:  OKAY.

MS. INSOGNA:  IT'S A MESSY SPREADSHEET THAT I'VE GOT AND TO TRY TO DO THAT ANALYSIS --

THE COURT:  THAT'S YOUR -- I MEAN THERE IS NOTHING TO SAY, OR AT LEAST, YOU KNOW, SUING ON THIS DRUG BUT SWITCHED TO THIS DRUG.

MS. INSOGNA:  YES.  THAT'S ALL.  IT WAS A PECULIAR FINDING THAT WE IDENTIFIED.  I WAS NOT EXPECTING 100, BUT THAT'S WHAT WE HAVE RIGHT NOW.

THE COURT:  OKAY.

MS. INSOGNA:  AND THAT'S IT FOR NUMBER ONE.

I CAN PROVIDE A STATE COURT UPDATE, TOO.

THE COURT:  SURE.

MS. INSOGNA:  OKAY.  STARTING WITH NEW JERSEY, WE HAVE GOT 1,048 CASES PENDING IN NEW JERSEY STATE COURT ALLEGING GI INJURY.  OF THOSE, 95 PERCENT, OR 997, ARE BROUGHT BY NON NEW JERSEY RESIDENTS.  ONLY FIVE PERCENT OF THAT DOCKET ARE NEW JERSEY PLAINTIFFS.  AND MORGAN & MORGAN HAS THE -- ALMOST 1,000 CASES OF THAT DOCKET IN NEW JERSEY.  48 NEW JERSEY PLAINTIFFS; 949 NON NEW JERSEY PLAINTIFFS.

AND THE STATUS UPDATE I PROVIDED EARLIER TODAY APPLIES EQUALLY WITH RESPECT TO THOSE CASES.  THEY ARE CONTINUING TO BE TRANSFERRED FROM MIDDLESEX TO BERGEN COUNTY, AND WE HAVE NOT HAD AN INITIAL STATUS CONFERENCE SET YET WITH JUDGE PADOVANO.

THERE'S SILL SIX CASES PENDING IN DELAWARE STATE COURT.  THERE HAS BEEN NO CHANGE TO THE STATUS OF THOSE CASES SINCE LAST TIME WE UPDATED THE COURT.

THE MOTIONS TO DISMISS ARE FULLY BRIEFED AND THE MOTION ON THE OVERALL CASE STRUCTURE IS BRIEFED. DEFENDANTS PUT FORWARD A PROPOSAL THAT WOULD TRACK THE MDL; AND PLAINTIFFS PUT FORWARD A SCHEDULE THAT WOULD INVOLVE CASE WORK-UP AND MARKETING DISCOVERY.

THE COURT:  OKAY.

MS. INSOGNA:  AND THEN THE LAST STATE IS INDIANA.  LILLY CAN CONFIRM THESE STATISTICS, BUT I BELIEVE THAT THERE ARE 96 CASES AS OF LAST WEEK PENDING IN INDIANA STATE COURT.  OF THOSE, NOVO IS A DEFENDANT IN 28 OF THOSE.

THE DEFENDANTS FILED A MOTION TO DISMISS MANY OF THOSE CASES, IT WAS AN OMNIBUS MOTION, YESTERDAY.  AND THE STATUS CONFERENCE IS SCHEDULED FOR MARCH 6TH WITH JUDGE OAKES.

THE COURT:  OKAY.  THANK YOU.

MS. INSOGNA:  THANK YOU.

THE COURT:  DOES LILLY HAVE ANY ADDITIONS TO THAT UPDATE?

MR. PREMO-HOPKINS:  JUST BRIEFLY, YOUR HONOR.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  YOUR HONOR, INITIALLY WITH REGARD TO THE PLAINTIFF FACT SHEETS IN THE MDL, THE DOCKET UPDATE THERE.  YOUR HONOR, WE ARE -- JUST FOR

CONTEXT, LILLY IS NAMED IN 1,253 CASES THAT WE ARE

TRACKING RIGHT NOW IN THE MDL.

THE COURT:  THIS IS PLAINTIFF FACT

SHEETS, RIGHT?

MR. PREMO-HOPKINS:  I'M SORRY.  I'M GOING

TO SHIFT TO PLAINTIFF FACT SHEETS, BUT 1,253 COMPLAINTS.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  OF THOSE 1,253

COMPLAINTS, AND I THINK GIVEN SOME OF THE ISSUES THAT

MS. INSOGNA RAISED, WE HAVE BEEN TRACKING AN INJURY MORE

SPECIFICALLY THROUGH THE FACT SHEETS AS THEY COME IN.

WE RECEIVED 1,019 VERIFIED FACT SHEETS.  JUST A HANDFUL

ARE OVERDUE, AND WE ARE FOLLOWING UP WITH PLAINTIFFS'

COUNSEL WITH THOSE.  THE REST WILL BE COMING IN IN THE

NEXT 30 DAYS.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  AND OF THOSE 1,019

FACT SHEETS, 735 ALLEGE GASTROPARESIS.  SO ABOUT

73 PERCENT.

AND, YOUR HONOR, WE HAVE REPORTED

PREVIOUSLY THAT WITH THE FACT SHEETS COMES THE MEDICAL

RECORD AUTHORIZATIONS.  AND WE HAVE BEEN ABLE TO FOLLOW

UP.  OF THOSE 1,019 THAT WE HAVE BEEN ABLE TO ANALYZE,

WE SEE A MEDICAL RECORD REPORT REFLECTING DELAYED

EMPTYING ON A GASTRIC EMPTYING STUDY IN 285 OF THOSE,

ROUGHLY 38 PERCENT OF THE GASTROPARESIS ALLEGATIONS.

THE COURT:  YOU SEE --

MR. PREMO-HOPKINS:  WE SEE A MEDICAL RECORD REPORT OF A GASTRIC EMPTYING STUDY THAT ACTUALLY REFLECTS OR STATES ON THE FACE OF THE REPORT THAT THERE IS SOME EVIDENCE OF DELAYED GASTRIC EMPTYING.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  THE INJURY COUNTS ARE RELATIVELY SIMILAR FOR LILLY AS WITH NOVO IN TERMS OF A SHARE OF THE OVERALL TOTAL.

YOUR HONOR, I AM HAPPY TO ADDRESS IT NOW, BUT I DID WANT TO MAKE SURE WE TALKED ABOUT THE IMPAIRED GASTRIC EMPTYING AND THE DELAYED GASTRIC EMPTYING ALLEGATIONS IN THE MDL.  I CAN ADDRESS THAT AT THE LATER AGENDA ITEM.

THE COURT:  GO AHEAD.

MR. PREMO-HOPKINS:  YOUR HONOR, WE WANTED TO UPDATE YOUR HONOR BECAUSE WE WERE SEEING, AS THE SHORT FORM COMPLAINTS CAME IN, PARTICULARLY IN JANUARY, THAT AT LEAST FOR LILLY RIGHT NOW THERE ARE 183 CASES THAT HAVE SHIFTED FROM A GASTROPARESIS ALLEGATION TO AN ALLEGATION OF IMPAIRED GASTRIC EMPTYING OR DELAYED GASTRIC EMPTYING WITH GI SYMPTOMS.

AS WE MENTIONED TO YOUR HONOR, WE WANTED TO MAKE SURE THAT WE UNDERSTOOD WHAT THAT MEANT IN THE

CONTEXT OF THE PHASING THAT YOUR HONOR HAD ANTICIPATED AND ORDERED, AND WE MET AND CONFERRED WITH THE PLAINTIFFS LAST WEEK.

THE SHORT VERSION IS THAT MY UNDERSTANDING, AND FOR LILLY, THIS IS NOT A SEPARATE INJURY.  THIS IS NOT A DIFFERENT OR SEPARATE INJURY FROM THE INJURY THAT WAS ADDRESSED BY DR. RAINES AND DR. SIEGEL.  WE WANTED TO MAKE SURE THAT WAS THE CASE AS WE MOVED INTO THE MOTIONS PRACTICE ON ISSUE 2 AND ISSUE 3.

THIS, AS WE UNDERSTAND IT, IS A TOOL FOR THE PLAINTIFFS TO PRESERVE ISSUES FOR APPEAL AND TO INCLUDE IN THEIR SHORT FORM COMPLAINTS THE INJURY THEY ARE ALLEGING EVEN WHERE THEY DON'T HAVE A GASTRIC EMPTYING STUDY NECESSARILY.

SO THAT'S WHAT WAS REPORTED TO US.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  AS I UNDERSTAND IT, THE PLAINTIFFS DON'T INTEND TO RELITIGATE ANY ISSUES AROUND DIAGNOSTIC REQUIREMENTS OR ANYTHING LIKE THAT.

AND WE, ON BEHALF OF LILLY, CERTAINLY ANTICIPATE THAT OUR MOTIONS -- THE MOTIONS PRACTICE IN ISSUES 2 AND 3, WILL BE COVERING THESE INJURIES LIKE THEY WOULD GASTROPARESIS.  SO WE EXPECT TO HAVE LABELING AND PREEMPTION MOTIONS AS WELL AS GENERAL CAUSATION MOTIONS THAT WILL ADDRESS GASTROPARESIS.  BECAUSE WE --

EXCUSE ME.  IMPAIRED GASTRIC EMPTYING OR DELAYED GASTRIC EMPTYING IN THE SAME WAY THAT THEY WOULD ADDRESS GASTROPARESIS.

SO WE DON'T SEE THAT AS A SEPARATE INJURY, AND WE JUST WANTED TO MAKE SURE THAT WE CLOSED THAT LOOP FOR YOUR HONOR AFTER HAVING MET AND CONFERRED WITH THE PLAINTIFFS TO MAKE SURE THAT WE WERE GOING TO BE ABLE TO PRESENT TO YOUR HONOR MOTIONS THAT FULLY AND COMPLETELY DEALT WITH THE INJURIES ALLEGED.

THE COURT:  SO IN EITHER LABELING, PRESUMPTION OR CAUSATION, YOU WERE GOING TO DEAL WITH THE IMPAIRED GASTRIC EMPTYING, DELAYED GASTRIC EMPTYING?

MR. PREMO-HOPKINS:  YES, YOUR HONOR.  I THINK FROM OUR PERSPECTIVE, GIVING WHAT IS ALLEGED, IT'S REALLY AN ISSUE OF NOMENCLATURE AS OPPOSED TO THE ACTUAL INJURY, AT LEAST IS MY UNDERSTANDING AFTER TALKING WITH THE PLAINTIFFS.

IT'S NOT A SEPARATE INJURY THAT IS ACTUALLY BEING ALLEGED, IT'S JUST AN ISSUE OF WHAT THE ATTORNEYS FEEL COMFORTABLE ALLEGING AFTER HAVING YOUR HONOR'S RULING ON ISSUE 1.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  SO, YOUR HONOR, THAT IS WHAT I WANTED TO ADDRESS WITH REGARD TO THE MDL DOCKET NUMBERS AND THE INJURIES THERE.

WITH REGARD TO THE STATE COURT FILINGS -- ITEM 2, DOES YOUR HONOR HAVE ANY QUESTIONS ON THAT?

THE COURT:  NO.

MR. PREMO-HOPKINS:  WITH REGARD TO THE STATE COURT FILINGS, I JUST HAVE A BRIEF UPDATE ON INDIANA.  BECAUSE, YOUR HONOR, THERE -- MY NUMBERS MATCH MS. INSOGNA'S 96 CASES CURRENTLY IN INDIANA.  OF THOSE 96 CASES, 70 ALLEGED GASTROPARESIS AS THE INJURY.  AND IN INDIANA, WE HAVE A HIGHER PERCENTAGE OF IN-STATE RESIDENTS, ROUGHLY 50 PERCENT OF THE PLAINTIFFS IN INDIANA ARE INDIANA RESIDENTS, AND 50 PERCENT ARE NOT.

AS MS. INSOGNA REPORTED, WE HAVE THE CASE MANAGEMENT CONFERENCE SET WITH JUDGE OAKES IN BOTH THE NAION AND THE GLP-1 ON MARCH 6TH.  AND THE PARTIES, UNDER HIS ORDER, WERE ASKED TO SUBMIT LETTER BRIEFING OR PROPOSALS ON CASE MANAGEMENT A WEEK BEFORE.

THE COURT:  OKAY.

MR. PREMO-HOPKINS:  YOUR HONOR, THAT'S ALL I HAD ON BEHALF OF LILLY FOR ITEMS 1 AND 2 ON THE AGENDA.

THE COURT:  OKAY.  THANK YOU.

PLAINTIFFS.

MR. PENNOCK:  YOUR HONOR, I DON'T THINK PLAINTIFFS HAVE ANY DISAGREEMENT WITH WHAT MR. PREMO-HOPKINS JUST RELATED TO THE COURT ON THESE

DIFFERENT ISSUES THAT WE DISCUSSED LAST WEEK.

THE COURT:  OR NOVO'S?

MR. PENNOCK:  NO, WE DON'T HAVE ANY ISSUES WITH THEIR REPORT.

THE COURT:  OKAY.  GREAT.  THANK YOU.

ALL RIGHT.  I GUESS WE SORT OF DEALT WITH THE MIXED INJURY THIS MORNING; IS THAT CORRECT?  ANYBODY THINK WE NEED TO RE-GO THERE?

MS. INSOGNA:  NO.

THE COURT:  MOTION TO CONVERT DISMISSAL.

MS. INSOGNA:  GOOD AFTERNOON, YOUR HONOR, AGAIN.  KATIE INSOGNA FOR NOVO.

THIS IS A FULLY BRIEFED MOTION TO CONVERT THE DAIGLE DISMISSAL WITHOUT PREJUDICE TO A DISMISSAL WITH PREJUDICE PURSUANT TO CMO 12.

AS YOU MAY RECALL, THE COURT GRANTED THE MOTION TO DISMISS WITHOUT PREJUDICE ON DECEMBER 8TH. AND UNDER CMO 12, THE PLAINTIFF HAD ANOTHER 30-DAY GRACE PERIOD TO COME FORWARD WITH THE PFS AND MATERIALS THAT HAD NOT BEEN SERVED PURSUANT TO CMO 12.  DURING THAT TIME PERIOD THAT TIME LAPSED.

NOVO FILED THE MOTION TO DISMISS -- MOTION TO CONVERT, I'M SORRY, ON JANUARY 21ST. PLAINTIFFS HAD UNTIL FEBRUARY 4TH TO COME FORWARD.  AND TO OUR KNOWLEDGE, THEY HAVE NOT.

AND SO DEFENDANTS RESPECTFULLY REQUEST THAT THAT MOTION BE GRANTED.

THE COURT:  OKAY.  ANY UPDATE ON THE PLAINTIFFS' SIDE RELATED TO THIS?

MS. RUANE:  NO UPDATE, YOUR HONOR.

THE COURT:  OKAY.

MR. ELMER:  YOUR HONOR, WESLEY ELMER HERE ON BEHALF OF CATHERINE DAIGLE.

THE COURT:  OKAY.

MR. ELMER:  I HAVE NOT HAD ANY ADDITIONAL CONTACT WITH THE CLIENT, SO I COULD NOT FILE ANY RESPONSE THERETO.

THE COURT:  OKAY.  YOU JUST DON'T HAVE ANY IDEA WHERE THE CLIENT IS?

MR. ELMER:  THAT IS CORRECT, YOUR HONOR.

THE COURT:  OKAY.  THANK YOU, SIR.

MS. INSOGNA:  IT'S NOT ON THE AGENDA, BUT I DO WANT TO FLAG FOR YOUR HONOR THAT THERE HAVE BEEN A COUPLE OF MOTIONS TO WITHDRAW ALSO FILED THAT I BELIEVE ARE RELATED TO A SIMILAR ISSUE WHERE THE PLAINTIFF SERVED -- OR PLAINTIFF SHOULD HAVE SERVED THEIR PFS.

WE FOLLOWED UP THROUGH THE DEFICIENCY PROCESS.

THE COURT:  ALL RIGHT.

MS. INSOGNA:  AND WE ARE KIND OF ON THE

CUSP OF FILING A MOTION TO DISMISS, AND NOW PLAINTIFFS ARE FILING, INSTEAD, A MOTION TO WITHDRAW.

THE COURT:  OKAY.

MS. INSOGNA:  I WILL SAY SPEAKING SOLELY FOR NOVO AT THIS POINT, WE ARE THINKING ABOUT HOW CMO 12 DID NOT CONTEMPLATE THAT AS A STEP --

THE COURT:  RIGHT.

MS. INSOGNA:  -- IN THIS PROCESS.  SO WE ARE THINKING WHETHER THERE IS SOME OPPORTUNITY FOR, AS PART OF THE WITHDRAW PROCESS, TO BE ALSO A DISMISSAL. AND THEN WE PICK UP WHERE CMO LEFT OFF, CMO 12 LEFT OFF. AND THEN WE CAN DO THAT MOTION TO CONVERT GRACE PERIOD.

THE COURT:  THIS IS A LESSON LEARNED FOR OTHER MDLS.  WE NEED TO TWEAK THIS ASPECT OF CMO 12, I GUESS.

SO YOU ARE THINKING ABOUT THAT OR IS THAT YOUR PLAN?

MS. INSOGNA:  THAT'S WHAT WE WOULD SUGGEST, MAYBE AN EFFICIENT APPROACH HERE.  BECAUSE AS PART OF THE MOTION TO WITHDRAW PROCESS, YOU WOULD BE CONSIDERING THE POULIS FACTORS, WHICH IS WHAT WOULD GUIDE THAT DECISION WITH RESPECT TO A MOTION TO DISMISS.

AND SO WE COULD --

THE COURT:  SO THESE ARE PENDING?

MS. INSOGNA:  THE TWO MOTIONS TO WITHDRAW

ARE PENDING, AND WE UNDERSTAND A THIRD IS FORTHCOMING FROM ANOTHER FIRM.

THE COURT:  OKAY.  SO THEN RUN THAT BY ME AGAIN.  WHAT ARE YOU PROPOSING HOW WE --

MS. INSOGNA:  ONE SUGGESTION WOULD BE THAT IN CONNECTION WITH THE ORDER ON THE MOTION TO WITHDRAW, AS YOU DID IN THE FENTRESS CASE WHERE YOU GRANTED THE MOTION TO WITHDRAW AND SET A TIMEFRAME FOR COMPLIANCE.  AND AT THAT POINT IF COMPLIANCE IS NOT MET, THAT WOULD LEAD TO A DISMISSAL AT THAT STAGE INSTEAD OF THEN FILING THE MOTION TO DISMISS --

THE COURT:  OKAY.

MS. INSOGNA:  -- PURSUANT TO CMO 12.

THE COURT:  AND THEN THERE WOULD BE A MOTION FOR IT?

MR. BROWN:  YES.

THE COURT:  OKAY.  SO WE ARE JUST GOING TO HAVE TO KEEP TABS, THOUGH, ON THOSE AS WELL, OKAY?

MS. INSOGNA:  YES.

THE COURT:  ALL RIGHT.  ANYTHING ELSE RELATED TO THAT ISSUE?  DO PLAINTIFFS HAVE ANY THOUGHT RELATED TO THAT?  ANYBODY ON THE CALL?

MR. ORENT:  YOUR HONOR, I WAS JUST GOING TO SAY, WE WOULD BE HAPPY TO WORK WITH THE DEFENDANTS ON AN ORDER THAT MAKES SENSE FOR EVERYBODY ON THIS, AND

REVISIT IT WITH THE COURT.

THE COURT:  I THINK IT'S GOING TO BE VERY SIMILAR TO WHAT I ALREADY DID.  IF YOU WANT TO LOOK AT IT, THAT'S FINE.  BUT OTHERWISE I WILL PROBABLY DO SOMETHING SIMILAR.

MR. ORENT:  I WAS GOING TO SUGGEST THE CMO VERSUS --

THE COURT:  FOR THE CMO, YES.

MR. ORENT:  RIGHT, AS OPPOSED TO A CASE-BY-CASE BASIS SO THAT PEOPLE HAVE GUIDANCE GOING FORWARD --

THE COURT:  YOU MEAN DO A NEW CMO SPECIFICALLY TO ADDRESS THIS?

MR. ORENT:  YES.

THE COURT:  I DIDN'T THINK OF IT.

MR. PREMO-HOPKINS:  YOUR HONOR, THE OTHER OPTION WE AMEND CMO 12.

THE COURT:  I WAS GOING TO SAY WE AMEND CMO 12.  WHY DON'T WE DO THAT.  WORK ON THAT, AND THEN THAT WILL ACTUALLY PUT US RIGHT -- WE WILL KNOW WHAT WE ARE DOING AS WE MOVE ON.

MR. PREMO-HOPKINS:  YOUR HONOR, I JUST WANTED TO CLARIFY ONE PIECE ONE OF MY COLLEAGUES RAISED FOR ME WITH REGARD TO THE POINT I RAISED.

I MENTIONED WITH REGARD TO THE IMPAIRED

GASTRIC EMPTYING, DELAYED GASTRIC EMPTYING AND GASTROPARESIS. WE ARE NOT -- LILLY IS NOT, BASED ON WHAT PLAINTIFFS HAVE TOLD US, INTENDING TO ADDRESS THOSE AS SEPARATE INJURIES. THOSE ARE THE SAME INJURIES, AS WE UNDERSTAND IT.

THE COURT: I UNDERSTAND THAT.

OKAY. SHORT FORM COMPLAINTS. VOLUNTARY DISMISSALS. WE HAVE ALREADY DEALT WITH THE OTHER ISSUE.

DO WE HAVE ANY ADDITIONAL ISSUES HERE?

MR. PREMO-HOPKINS: YOUR HONOR, MARK PREMO-HOPKINS ON BEHALF OF LILLY.

WE WERE ABLE TO MEET AND CONFER WITH THE PLAINTIFFS ON VOLUNTARY DISMISSALS. AND THE ISSUE THAT AROSE WAS THE MASTER ANSWER HAD BEEN FILED AND SERVED.

THE COURT: RIGHT.

MR. PREMO-HOPKINS: AND GIVEN THE TIMING OF THE SHORT FORM COMPLAINT FILINGS, WE WERE SEEING SOME VOLUNTARY DISMISSALS AFTER THE FILING OF THAT MASTER ANSWER.

WE HAVE MET AND CONFERRED WITH THE PLAINTIFFS, AND OUR POSITION IS, GIVEN THAT ANSWER IS ON FILE, WE ARE, WHAT I WILL CALL A RULE 41 LAND. AND SO GOING FORWARD, THE PLAINTIFFS UNDERSTAND THAT THEY NEED TO REACH OUT TO US TO DISCUSS VOLUNTARY DISMISSAL AND THE CIRCUMSTANCES AND CONDITIONS OF THE VOLUNTARY

DISMISSALS.

THE COURT:  YOU GUYS SHOULD AGREE. THAT'S THE LAND WE ARE IN, ONCE THE ANSWER IS FILED.

MR. ORENT:  WE HAVE NO OBJECTION TO THAT, YOUR HONOR.

THE COURT:  OKAY.

OKAY.  ANYTHING FURTHER ON BEHALF OF ANYONE?

MS. INSOGNA:  NO.

MR. PREMO-HOPKINS:  NOTHING FOR LILLY.

THE COURT:  SHELBY, SINCE I KNOW YOU ARE ON THE LINE, I AM THINKING THERE IS NOTHING FURTHER THAT WE NEED TO ADDRESS.

I MISSED THE REDESIGNATION EARLIER, AND I WANT TO DOUBLE CHECK.

THE LAW CLERK:  NO, I THINK WE ARE GOOD TO GO, JUDGE.

THE COURT:  OKAY.  THANK YOU, EVERYBODY. I HOPE EVERYBODY HAS A GOOD LONG WEEKEND, AND I LOOK FORWARD TO CHATTING WITH YOU ALL FRIDAY THE 20TH, I THINK.  BECAUSE IT'S FRIDAY THE 13TH THIS WEEK.

ALL RIGHT, THANK YOU ALL.  SAFE TRAVELS.

(COURT ADJOURNED.)

          I CERTIFY THAT THE FOREGOING IS A

CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

ABOVE-ENTITLED MATTER.


DATE                          OFFICIAL COURT REPORTER

                              LYNN GLIGOR, RMR